

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

UNITED STATES,

       Plaintiff,

vs.

HOWARD LEVENTHAL,

       Defendant

Case No.: 13-cr-844

JUDGE ANDREA R. WOOD

## PETITION FOR EARLY TERMINATION OF PROBATION PURSUANT TO 18 U.S.C. § 3583(e)(2)(1)

NOW COMES the Defendant, Howard E. Leventhal, a non-attorney pro se (hereinafter "Leventhal" or "Defendant") respectfully submitting this Petition for Early Termination of Probation pursuant to 18 U.S.C. § 3583(e)(2)(1).

1.     Courts have tended to grant requests for early probation termination only in cases involving new or unforeseen circumstances, quoting *United States v. Khan*, No. 12-CR-88, at *2 (E.D. Wis. Oct. 20, 2014). See also *United States v. Schuster*, No. 01 CR. 67, 2002 WL 31098493 (S.D.N.Y. Sept. 19, 2002) (granting early termination of probation where the defendant completed a term of home confinement and <u>suffered significant collateral consequences as a result of his conviction</u>)." *United States v. Nelson*, No. 09-CR-108, at *6 (E.D. Wis. Aug. 16, 2012). Both prerequisites apply in this matter, abundantly.

2.     In this instant matter there are new and unforeseen circumstances involving both Mr. Leventhal and United States Probation. In the case of Probation, as a consequence of the unforeseen Covid-19 pandemic, compassionate release cases in this office have increased by

JUDGE ANDREA R. WOOD - 1

over-burdening probation officers with a caseload that is above normal while officers are required to operate from their homes, without access to the normal machinery of official facilities.

3.     In cases of those ex-offenders deemed highly prone to recidivism, these overcapacity circumstances represent an extraordinary public safety risk, particularly in the case of sex offenders, violent offenders, repeat offenders, drug offenders and youthful probationers unable to find work in the current environment. Mr. Leventhal fits none of these descriptions. At 63 years of age and without a single prior federal, state or local offense Mr. Leventhal receives retirement income, is under no extraordinary financial distress and is in the lowest measured range for likelihood of recidivism.

**UNWARRANTED DESTRUCTION OF FATHER/DAUGHTER RELATIONSHIP**

4.     Unforeseeable by the sentencing court and unbearable to the Defendant, are the significant and severe "collateral" consequences Mr. Leventhal has suffered as a result of his conviction, details of which are further set forth in <u>Defendant's Verified Memorandum Of Fact And Law In Support Of Petition For Early Probation Termination</u> [SEALED] accompanying this petition.

5.     Mr. Leventhal adopted an abandoned foundling daughter in the People's Republic of China in March 2002 under the Intercountry Adoption Act of 2000[1]. Since approximately six

---

[1] See Exhibit A, including copy of Home Study in advance of adoption. ALL **EXHIBITS TO THIS PETITION** ARE LOCATED AT THE END OF THE ATTACHED [SEALED] "DEFENDANT'S VERIFIED MEMORANDUM OF FACT AND LAW IN SUPPORT OF PETITION FOR EARLY PROBATION TERMINATION."

months after the adoption, Mr. Leventhal's ex-wife has used the child, now 19 years old, as an extortion weapon and punitive tool, to punish Mr. Leventhal for continuing financial support of his earlier spouse, who died horribly 5 days after Mr. Leventhal was remanded to prison, after a terrifying 25 year course of multiple sclerosis.

6.      While nothing excuses those lifetime-singular criminal acts Mr. Leventhal admitted to in this matter, the emotional punishment heaped upon him by his second wife[2] for supporting his dying first wife, contributed foundationally to the profound loss of moral compass driving his crimes.  Such undue punishment has continued through to today, since shortly after Mr. Leventhal was remanded to prison in 2015 and today involves protracted legal matters in Wisconsin[3] about which the probation environment creates a severe, onerous and unwarranted disadvantage to Mr. Leventhal.

7.      Shortly after remand, Leventhal's daughter was 15 years old and cut off entirely from him, in violation by his ex-wife of every meaningful in-force Illinois state court order promoting contact between father and daughter.  The Illinois court refused to conduct telephonic hearings with Mr. Leventhal, thereby foreclosing any possibility of remedy while he was in custody of the Bureau of Prisons.  There is not now nor has there ever been any court finding even tangientially suggesting that Mr. Leventhal is unfit as a father. Rather, the Exhibit A reference letters indicate quite the opposite.

8.      Now his daughter is 19 years old and Mr. Leventhal has been denied contact with her by among other things, poorly considered acts of the sentencing court.  To assert that Mr. Leventhal

---

[2] See psych evaluation, Exhibit L.
[3] See Exhibit G, Wisconsin Legal Matters.
JUDGE ANDREA R. WOOD - 3

is bereft and profoundly suffering from these "collateral effects," of sentencing, is to far understate the matter[4]. He is encumbered by the conditions of supervised release from pursuing any legal remedies (Exhibit B, Judgment of Conviction, Special Condition of Supervised Release #5). There is no legal avenue for him to re-establish contact with his daughter (see Defendant's Memorandum of Fact and Law attached) and there are no legal grounds for this in context of this federal matter. He has a constitutional right to society with his adult daughter just like every other rightful parent, ex-prisoners being no exception. Keeping him bound by the terms of supervised release in this matter violates those rights.

9.      The Supreme Court has recognized that the freedom to enter into and carry on certain intimate or private relationships is a fundamental element of liberty protected by the Bill of Rights. Such relationships may take various forms, including the most intimate. See *Board of Directors of Rotary Int'l v. Rotary Club*, 481 U.S. 537, 544, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987). The Court has accorded constitutional protection to marriage, see *Zablocki v. Redhail*, 434 U.S. 374, 383-386, 98 S.Ct. 673, 54 L.Ed.2d 618, (1978); the begetting and bearing of children, see *Carey v. Population Services International*, 431 U.S. 678, 684-686, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977); child rearing and education, see *Pierce v. Society of Sisters*, 268 U.S. 510, 534-535, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); and cohabitation with relatives, see *Moore v. City of East Cleveland*, 431 U.S. 494, 506, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977).

10.     There is no justification for this court or any other to continue the Government's actions as a barrier against the re-establishment of connection between father and daughter. Probation

---

[4] See psych report, Exhibit L.
JUDGE ANDREA R. WOOD - 4

finds no record and no record exists of improper conduct such as abuse of any description between Leventhal and his daughter – only of vindictive, malicious and deliberately injurious behavior by an ex-spouse jealous over monies spent long ago to buy diapers, medicines and urinary catheters for a terminally ill woman. For at least this cause alone, supervised release should be terminated immediately. There is however additional cause.

### DENIAL OF MEDICAL CARE FOR SERIOUS CONDITION WHILE IN CUSTODY

11.     As the Judgment of Conviction in this matter indicates on its page 2: *"The court makes the following recommendations to the Bureau of Prisons: The defendant be designated to either FCI-Oxford or a Correctional Medical Facility in Illinois. He is from Illinois, he has family in Illinois and he has a serious medical condition that may require rapid response."* In fact, there was not merely no "rapid response" whatsoever, no relevant specialized treatment whatsoever was delivered to Mr. Leventhal while he was in custody of the Bureau of Prisons[5].

12.     Mr. Leventhal was arrested in October 2013 and remanded to the Metropolitan Detention Center, Brooklyn, New York[6] on September 12, 2015, a lapse of nearly two years. The vast majority of this gap was consumed by the prosecutor fraudulently attempting to invalidate the presence of that serious medical condition referenced above. The effort partly failed as the judgment language reflects, however it succeeded on a *de facto* basis.

_____

[5] Defendant is in possession of an electronic copy of his entire BOP medical record (300 some odd pages of irrelevant, repetitive, useless blah-blah) which he has uploaded to the Internet and is downloadable according to instructions in Exhibit F attached.

[6] See "**Federal Judge Appalled by 'Third World' Brooklyn Prison**," https://patch.com/new-york/sunset-park/federal-judge-appalled-third-world-brooklyn-prison which refers to substandard medical care at the federal prison in which Leventhal was held for 14 months prior to sentencing.

JUDGE ANDREA R. WOOD - 5

13.     Mr. Leventhal was neither placed in a medical facility nor was he provided one moment of specialized care for the exotic abdominal conditions well documented in this matter. He was forced to endure constant rectal bleeding, constant involuntary release of bowel contents, constant urinary infections, multiple passage of kidney stones without treatment and the humiliation of all this taking place within the view of other inmates.  He was not sentenced to such treatment in prison and if he had been, such a sentence would be reversed as an 8th Amendment violation. On a *de facto* basis, 100% of the time Mr. Leventhal spent in prison constituted cruel and unusual punishment. For at least this cause alone, the interests of justice demand that supervised release is terminated early in this case.

## TIMING

14.     18 U.S.C. § 3583 (e) MODIFICATION OF CONDITIONS OR REVOCATION.-The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)-(1) terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

15.     The first exercise of supervision and jurisdiction of the Probation office over Mr. Leventhal by U.S. Probation Officer Ronald Jacobs took place on Monday June 10, 2019 at the Chicago Salvation Army RRC (see Exhibit R email message).  Mr. Leventhal was discharged from incarceration at FPC Duluth on April 23, 2019.  He was released to the community on May

JUDGE ANDREA R. WOOD - 6

13, 2019. Supervised release began on June 10, 2019 and one year afterward expires on June 10, 2020, the termination date sought hereunder.

### SUCCESSFUL ELEMENTS OF LEVENTHAL'S REINTEGRATION TO DATE

16.     Mr. Leventhal has found proper medical coverage outside of prison (Exhibit P) and recovered from the physical effects of receiving no meaningful care while incarcerated (Exhibit S, his FAA medical certification dated March 2020). He entered prison with significant self-medicating alcohol dependency and was at least 80 pounds overweight. He has lost 65 pounds and has nearly entirely abstained from alcohol consumption since returning to the community, save for a very few social and religious occasions.

17.     Mr. Leventhal was a licensed recreational aircraft pilot prior to entering prison. He was recertified by the Federal Aviation Administration in September 2019 and certified medically fit to fly by an FAA Airman Medical Examiner in March 2020 (Exhibit S). Subsequently, at age 63, with a federal felony and dismal academic record, he successfully applied for an educational Pell Grant, a Stafford loan and has been admitted to a college-level course of study leading to the FAA Certified Flight Instructor Instrument (CFII) rating (Exhibit N).

18.     He intends, after completing a two-year university program, to teach young future pilots of advanced, electrically-powered vertical takeoff and landing (eVTOL) aircraft. eVTOLs are a new field in which more than 130 companies including Uber are now investing heavily to develop new cutting edge, energy-sustainable, carbon emission-free aircraft expected to first fly in 2023, the year after Leventhal expects to complete his educational program, with perfect timing. This field of work is an entirely new mass employment category created by 21st century technological advance of the sort which has energized Mr. Leventhal since he was a small child.

JUDGE ANDREA R. WOOD - 7

19.     There are three Illinois universities certified by the FAA to provide the education sought by Mr. Leventhal and also qualified for financial aid.  One is in far downstate Carbondale, one is a private college in the Chicago area and the third – the most affordable and with highest likelihood of completion in this case – is in Central Illinois, outside of the Northern District. It will be problematic for NDIL Probation to supervise the Defendant if circumstances require that he attend the downstate school for the summer or fall 2020 semesters (depending of course on ongoing resolution of the Covid-19 epidemic).

20.     As to Mr. Leventhal's post-prison acceptance of his societal responsibilities, he has provided companionship, nearly 24/7/365 in-home personal care and meal preparation for his 95 year old mother for the year since his release to the community, foregoing other more conventional living accommodations offered to him.  In the event he moves downstate for education, his sister lives one mile away from his mother and is ready, willing and able to substitute for the Defendant, at least during the school week.

21.     Mr. Leventhal has paid more than the statutory minimum restitution, albeit a small amount.  He receives Social Security retirement income, which is legally inalienable, yet he has paid no less than 10% of such income to the sentencing court clerk (See Exhibit Q, evidence of one such remittance). Presently, the specialized employment field he intends to enter is in high demand.  He anticipates a six-figure income after graduating, which is the intended source of funds behind paragraph 2 of the accompanying proposed order.

22.     Since release to community Mr. Leventhal founded and published a specialized newsletter relating to his aviation sub-specialty, see VTOLView.com. He has 1,137 (non-paying) subscribers as of this writing, almost all professional aviation educators worldwide. Although this endeavor has not yet produced revenue, it also consumes *de minimus* expense. He intends to

keep publishing until revenue may be developed, another intended source of funds behind

paragraph 2 of the accompanying proposed order.

**NOW THEREFORE** for the causes stated above and in the accompanying

Defendant's Verified Memorandum of Fact and Law In Support of Petition for Early Probation

Termination, the undersigned respectfully moves this honorable court to enter the proposed order

terminating probation attached and also the proposed order regarding issuance of subpoenas

attached.

Respectfully submitted,
**DEFENDANT PRO SE**

_____ Date: May 7, 2020
Howard Leventhal
1205 Prairie Brook Dr D1
Palatine, IL 60074
Ph 262-997-8570
Email: HLEV3@AOL.COM

JUDGE ANDREA R. WOOD - 9