

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

UNITED STATES,

    Plaintiff,

vs.

HOWARD LEVENTHAL,

    Defendant

Case No.: 13-cr-844

JUDGE ANDREA R. WOOD

**MOTION FOR SANCTIONS AND TO VACATE JUDGMENT OR OTHER RELIEF**

NOW COMES DEFENDANT Howard E. Leventhal, a non-attorney acting *pro se*, hereby respectfully submitting this renewed and amended Motion for Sanctions[1] under the Court's inherent sanction power against the Department of Justice, United States Probation, Winston M. Paes, Christopher Delzotto, Mary Handeland, Michelle Espinosa, Steve Zissou, Noah Eernisse, Emmett Grissom, Adam Gerol, Jeffrey Sisley, Robert Olmr, Ronald Jacobs, Jay Nichols, Melinda Torres-Felix and Marcus Holmes.  In support of this motion, Defendant states as follows:

---

[1] Leventhal's first sanctions motion was dismissed without prejudice by this court on July 30, 2020, after Leventhal requested a stay of adjudication. This request was made after Sanctionees Nichols and Torres-Felix promised to make an attempt at reconnecting Leventhal and his daughter, prior to the July 30, 2020 proceeding. After this court dismissed the sanctions motion however, Nichols and Torres-Felix reneged on their promise.

JUDGE ANDREA R. WOOD - 1

# JURISDICTION

1. A district court has inherent power "to fashion an appropriate sanction for conduct which abuses the judicial process," see *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 111 S. Ct. 2123, 115 L.Ed.2d 27 (1991). Sanctions meted out pursuant to the court's inherent power are appropriate where the offender has willfully abused the judicial process or otherwise conducted litigation in bad faith. *Maynard v. Nygren*, 332 F.3d 462, 470-71 (7th Cir. 2003). "Though `particularly severe,' the sanction of dismissal is within the court's discretion." *Montano v. City of Chicago*, 535 F.3d 558, 563 (7th Cir. 2008) (quoting *Chambers*, 501 U.S. at 45, 111 S.Ct. 2123); accord *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). *Salmeron v. Ent. Rec. Sys. Inc.,* 579 F.3d 787, 793 (7th Cir. 2009).

2. Of all possible sanctions, dismissal is considered "draconian," and (the court) must be "vigilant" in (its) review. *Marrocco v. Gen. Motors Corp*., 966 F.2d 220, 223-24 (7th Cir. 1992). Because of its severity, (courts) have circumscribed the range of cases in which dismissal may be used as a sanction. Looking at the case law, we find two different standards for determining whether a case can properly be dismissed. Some of our cases have held that actions can be dismissed "when there is a clear record of delay or contumacious conduct, or when other less drastic sanctions have proven unavailing." *Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998); *Schilling v. Walworth County Park Planning Com'n,* 805 F.2d 272, 278 (7th Cir. 1986). This appears to be the standard used when cases are dismissed for want of prosecution or failure to comply with orders of the court, Fed.R.Civ.P. 41(b). A slightly different requirement — a finding of willfulness, bad faith or fault — comes into play when dismissals are used specifically as a discovery sanction under Fed.R.Civ.P. 37. *In re Golant*, 239 F.3d 931, 936 (7th Cir. 2001); Langley v. Union Elec. Co., 107 F.3d 510, 514 (7th Cir. 1997); cf. *In re Rimsat, Ltd.*,

JUDGE ANDREA R. WOOD - 2

212 F.3d 1039, 1046-47 (7th Cir. 2000) (requiring a finding of bad faith when a district court dismisses a case under the inherent powers of the court). That is, even without "a clear record of delay, contumacious conduct or prior failed sanctions," a court can apply the sanction of dismissal for Rule 37 violations with a finding of willfulness, bad faith or fault, as long as it first considers and explains why lesser sanctions would be inappropriate. See *Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000); *Schilling*, 805 F.2d at 278 ("When a clear record of delay, contumacious conduct, or prior failed sanctions does not exist, the exercise of judicial discretion requires that the district court consider and explain the inappropriateness of lesser sanctions."); *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1478-79 (D.C. Cir. 1995) (requiring that courts provide a "specific, reasoned explanation for rejecting lesser sanctions" and collecting cases requiring same).

3. Leventhal's contemporaneously filed Motion for Order to Show Cause[2], the record in this matter and in its companion case in the Eastern District of New York, *US v. Leventhal*, 13-cr-695(BMC) are replete with willful, predesigned institutional and individual conduct which could not be more contumacious, egregious, done in bad faith, extrajudicial, done for the express purpose of demonstrating Paes' remarkable skill at making judges into fools (among other foul motives), abusive of the judicial process as well as abusive of the powers provisionally granted to the Government and its elected and appointed officials by the framers of the Constitution and People of the United States. Such sanctionable conduct by the Sanctionees began almost immediately upon Leventhal's guilty plea in December 2013 and continues through and

---

[2] Incorporated herewith by reference as to its factual allegations.

JUDGE ANDREA R. WOOD - 3

including today. This herd of reprehensible jackasses – the Sanctionees -will continue in the same conduct unless they are now stopped, once and for all.

4.      Howard Leventhal committed serious criminal acts and merited serious punishment[3]. To assert that such punishment has now been so outlandishly overdelivered, far in excess of any rightful or due punishment on a *de facto* basis, far understates the issue. Draconian, extreme and extraordinary remedies are required in the form of the sanctions orders prayed-for here.

**SANCTIONEES**

1.      Sanctionee Winston M. Paes was the EDNY prosecutor in this matter, is now a partner in the private New York law firm of Debevoise and Plimpton[4]. Paes is and was the "brains of the operation," who designed all or most of the sanctionable harms done to Defendant in this matter – a role which in no way diminishes that of the other Sanctionees.  Paes stands out also among the other sanctionees by shopping for a Chicago doctor agreeable to producing an "expert witness" report regarding Leventhal's medical conditions, which Paes himself later falsified, edited and then filed with the EDNY court. Allowing the Judgment of Conviction in this matter to stand allows Paes to make use of it, as he intended and designed it, to promote wrongfully amplified cash incomes to his employer and himself.

2.      Christopher Delzotto was the principal investigating agent for the FBI in this matter. His office is in New York City.  Delzotto committed perjury on the witness stand during the bail

---

[3] Disregarding that the money Leventhal produced from these criminal acts was used to support essential needs of disabled and helpless loved-ones.

[4] A "Big Law" enterprise with approximately $1 billion in 2019 revenues according to published reports. While reprehensible, it is no surprise that Paes committed the acts complained-of here to secure his position.

JUDGE ANDREA R. WOOD - 4

revocation hearing which took place in the EDNY case, on Sept 11-12, 2015 and submitted to the court several falsified items of "evidence" simultaneously. The remand order which followed produced the oppression engine devised by Paes to perpetrate many of the outrageous harms against Leventhal complained-of herein.

3. Mary Handeland is the 2nd ex-wife of the Defendant, who was paid and otherwise meaningfully compensated by Paes, Delzotto and Espinosa to perjure herself repeatedly during the sentencing phase of this matter in the EDNY.

4. Michelle Espinosa was assigned by Paes and EDNY Probation to falsify a series of amended PSRs in this matter. It is unknown to Defendant as to whether she remains an employee of US Probation. She may be using a pseudonym because nothing about her under this name appears in public record databases.

5. Steve Zissou was the court-appointed, CJA panel "defense" attorney for Defendant in those proceedings in this matter which took place in the Eastern District of New York, Case No. 13-cr-695 (BMC). Zissou among many other outrageous acts, knowingly brought a "bugged" laptop computer provided to him by the Paes and Delzotto to confidential attorney/client privileged meetings in Chicago and fed audio of same to Paes and Delzotto. Zissou also solicited and received a kickback payment of federal monies from the writer of Leventhal's privately-authored supplemental PSR and then (because this was not egregious enough) edited the private PSR at direction of Sanctionee Paes, to further amplify Leventhal's ludicrous sentence.

6. Ronald Jacobs was the first US Probation officer assigned to the Defendant in the Northern District of Illinois. Jacobs, made abundantly aware of the obstruction of justice conspiracy which preceded his assignment in this matter, then knowingly forwarded same.

7. Marcus Holmes is the Chief US Probation Officer, Northern District of Illinois. Holmes, made abundantly aware of the obstruction of justice conspiracy which preceded his assignment in this matter, then knowingly forwarded same.

8. Noah Eernissee and Emmett Grissom are Grafton, WI police officers made abundantly aware of the obstruction of justice conspiracy which preceded their involvements in this matter, then knowingly forwarded same.

9. Adam Gerol and Jeffrey Sisley hold themselves out as Wisconsin-licensed attorneys and employees of the Wisconsin Attorney General. Both were made abundantly aware of the obstruction of justice conspiracy which preceded their involvements in this matter, then knowingly forwarded same.

10. Robert Olmr, who is a Wisconsin-licensed attorney, dually represented both Amelia Leventhal (a kidnapping victim) and Mary Handeland, the kidnapper who kidnapped Amelia, in the same Wisconsin legal proceeding conducted to perfect the kidnapping of Amelia, (Leventhal's daughter) - an outrageous, disbar-able conflict of interest. Olmr's website claims "criminal defense" law as a specialty, which provides a clear *mens rea* and consciousness of guilt to both Olmr and Handeland. Olmr was made abundantly aware of the obstruction of justice conspiracy which preceded his involvement in this matter, then knowingly forwarded same.

11. Jay Nichols and Melinda Torres-Felix were the most recent and final US Probation officers assigned to supervise Leventhal, after Leventhal set forth in writing all or most of Probation's participation in the obstruction of justice conspiracy at issue here now – in a series of mailed letters and email messages to Holmes. Both were made abundantly aware of the obstruction of justice conspiracy which preceded their involvement in this matter, then knowingly forwarded same, causing even further irreparable harm. Nichols made note to

JUDGE ANDREA R. WOOD - 6

Leventhal of Leventhal's inclination to "poke the bear," which was a veiled effort at frightening Leventhal off from filing or pursuing relief such as that brought here and now.

12. Sanctionee the United States Department of Justice operates under authority of the United States Attorney General. Sanctionee United States Probation is a division of the federal Judiciary and an arm of this court.

**CAUSES OF ACTION**

1. Leventhal's Motion for Order to Show Cause filed contemporaneously, sets forth nineteen counts of sanctionable behavior by these Sanctionees for their own pecuniary interests[5], including but not limited to: Criminal Conspiracy to Murder Judith Leventhal, Criminal Conspiracy to Kidnap Howard Leventhal, Criminal Conspiracy to Kidnap Amelia Leventhal, Criminal Conspiracy to Oppress, Criminal Conspiracy to Commit Theft by Deception, Criminal Conspiracy to Publish Anti-Semitic Hate Speech ("Sneaky Jew Leventhal"), Criminal Conspiracy to Intentionally Inflict Emotional Distress, Criminal Conspiracy to Maliciously Cause Physical Bodily Injury, Criminal Conspiracy to Defame, Criminal Conspiracy to Defraud Individuals, Criminal Conspiracy to Defraud the State of Illinois, Criminal Conspiracy to Defraud the State of Wisconsin, Criminal Conspiracy to Breach Contracts, Criminal Conspiracy to Defraud the United States, Criminal Conspiracy to Deprive Constitutional Rights, Criminal Conspiracy to Obstruct Justice, Criminal Conspiracy to Unjustly Enrich, Criminal Conspiracy to Commit Perjury and Tortious Interference with

---

[5] Rather than for carrying out their government-assigned duties.

Familial Relations. If the court holds even one of these 19 counts to be true, the sanctions sought here are justified. Doubtlessly though, the Sanctionees will attempt to characterize the Defendant as "emotionally disturbed," based upon the emotional disturbances they themselves inflicted upon Leventhal. Such an inevitable claim will be something like saying "The man was dead after I shot him, so stealing his sandwich was not a crime."

2. The Government was allowed more than six months to deny the allegations set forth here pursuant to Defendant's two motions before this court for early termination of supervised release – and the Government did not deny a single allegation. All of the said allegations are admitted by the Government, see Fed. R. Civ. P. 8(b)(1), (6), moreover:

3. Rule 12(b)(2) of the Federal Rules of Criminal Procedure establishes that "Failure to present any such defense or objection as herein provided constitutes a waiver thereof," see *United States v. Bohle*, 445 F.2d 54, 59 (7th Cir. 1971). There are no facts in dispute in this matter and summary judgment in favor of Leventhal is called-for, see for example: "if there are no genuine issues of material fact in dispute is summary judgment appropriate. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)." from *Mills v. Health Care Serv. Corp.,* 171 F.3d 450, 454 (7th Cir. 1999). The only question to be adjudicated pursuant to this sanctions motion, is an appropriate level of relief for Leventhal.

4. The Sanctionees' most recent acts, combined with those acts going back to December 2013 in this matter, require that these individuals be sanctioned to the fullest extent of the law for all of their offenses and that they, once and for all, stop harming Howard Leventhal to the ends of the Earth as they have.

JUDGE ANDREA R. WOOD - 8

# REQUESTED RELIEF

1. Leventhal requests as the first item of business, that his Judgment of Conviction in this matter is vacated on a *nunc pro tunc* basis. Although he has served (far overserved) his time, the conclusion is unavoidable based on recent events that providing Sanctionees with any sort of leverageable tool with which to further abuse Leventhal, that they will do so. Moreover, they are a pack of drooling, negligent idiots who are not only malicious while stealing taxpayer funds for their own consumption, but also grossly incompetent. For example:

2. In April 2017 Leventhal was served with a copy of the "terrorism" lien placed by the Sanctionees upon the rental house Leventhal was living in at the time of his arrest. While it might be argued that some discovery or investigation would have been appropriate as to the ownership of the house, simply encumbering it and asking questions later, was something out of a Dilbert cartoon[6].

3. Additionally, while Sanctionees Paes and Delzotto had Leventhal's pre-confinement medical record in their possession months before Leventhal's confinement, this record was not provided to the Bureau of Prisons until long, long after Leventhal's commitment. The result, among other things was not limited merely to Leventhal receiving no sufficient level of specialized care and thereby physically injured. Because of this particular manner and instance of gross deliberate negligence, Leventhal soiled his clothing no less than several times every week for the entire duration of his time in further abusive "care" of the Bureau of Prisons.

---

[6] *Dilbert* portrays corporate culture as a *Kafkaesque* world of bureaucracy for its own sake and office politics that stand in the way of productivity, where employees' skills and efforts are not rewarded, and busy work is praised. Much of the humor emerges as the audience sees the characters making obviously ridiculous decisions that are natural reactions to mismanagement.

4. What will these morons do next? Encumber the bank account containing Social Security payments to Leventhal's 95-year-old mother? File a "terrorism" lien on the rent-subsidized one-bedroom apartment in which Leventhal cares for his mother? Encumber her Medicare payments? These people do not merit or belong in any position under which they can exert any manner of further harm upon the Defendant. They should be shipped to Russia, China or outer space where they cannot inflict any further such harm upon anybody, especially Leventhal.

5. Moreover, Leventhal feels a duty and motivation to assist similarly situated ex-prisoners, particularly disconnected parents like himself, in the process of release. Such activity would include providing them with inexpensive cell phones, small amounts of "pocket money," transport to the Secretary of State to obtain drivers licenses and/or state ID cards and similar activities – all of which are generally quite inhibiting and frightening to new releasees. It will be problematic to attempt this with a remaining felony conviction.

6. Additionally, given that Leventhal has been deliberately deprived of the lifelong goal of parenthood by these Sanctionees, the Defendant wishes to become a foster parent. Doing so with a felony will be quite problematic. The cause of justice would be best served here to vacate Leventhal's J of C, *nunc pro tunc*, as the sanction requested here upon the Department of Justice.

7. Should the court not find sufficient cause to vacate Leventhal's Judgment of Conviction entirely, then his restitution order should be vacated. This order, while it remains in place, provides the Sanctionees with innumerable tools to use improperly to abuse Leventhal further, including but not limited to use as a negotiating tool to obstruct justice in the civil RICO lawsuit brought against them, see Exhibit A to the contemporaneous criminal contempt motion in this matter. Vacating said restitution order would moot most of the power to abuse Leventhal that the Sanctionees retain.

8. As to actual payment of restitution, an obligation which Leventhal freely accepts and acknowledges is rightfully due to the victims, Leventhal will take it upon himself to pay these individuals directly as he promised the court in his 2nd motion for early termination. Whatever the validity or credence of a promise from Leventhal might be, it is infinitely more reliable than any promise or statement offered to this court by any Sanctionee, a bunch of professional liars.

9. All of the Sanctionees should be forever barred and enjoined from any and all further acts which under any interpretation may be deemed extrajudicial, acts of harassment, infliction of emotional distress and interference with Leventhal's attempts to reconnect with his daughter – an effort never to be abandoned no matter how hard these reprehensible sanctionees try to force him to abandon it.

10. Leventhal requests that the Court consider fines against the following individual Sanctionees, expressed below in ascending dollar amounts and order of culpability, fused with Movant's assessment of their total incomes and assets based upon publicly accessible database information.

| Amount | Name |
|---|---|
| $ 500.00 | Jay Nichols |
| $ 500.00 | Melinda Torres-Felix |
| $ 25,000.00 | Christopher Delzotto |
| $ 25,000.00 | Noah Eernissee |
| $ 25,000.00 | Emmett Grissom |
| $ 50,000.00 | Adam Gerol |
| $ 50,000.00 | Jeffrey Sisley |
| $ 50,000.00 | Robert Olmr |
| $ 50,000.00 | Marcus Holmes |
| $ 100,000.00 | Ronald Jacobs |
| $ 250,000.00 | Mary Handeland |
| $ 250,000.00 | Michelle Espinosa |
| $ 500,000.00 | Winston M. Paes |
| $ 500,000.00 | Steve Zissou |

11. Should the Court order fines of any amount, Leventhal requests that such monies are directed to Chicago-area Residential Re-Entry Centers ("RRCs" also known as halfway houses) to set up a Salvation Army-controlled fund for parenthood-diminished re-entering ex-prisoners for the "pocket money" sort of needs described above and to empower reconnection to their children in whatever form or manner. Leventhal does not seek to receive or control such funds in any way.

12. Every Sanctionee who is a licensed attorney should be barred from practicing law in any federal court of the United States for a minimum of five years. Every one of these people is a menace and threat to the general public good and will remain so until they are held accountable with meaningful sanctions.

**PRAYER**

**NOW THEREFORE** Defendant Howard Leventhal respectfully requests orders as set forth above under "REQUESTED RELIEF" and any or all other relief that the court deems just and fit under the instant circumstances.

RESPECTFULLY SUBMITTED,

_____ Dated: December 25, 2020
Howard Leventhal
Defendant *pro se*,