UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>HOWARD LEVENTHAL | No. 13 CR 844<br><br>Judge Andrea R. Wood |

**GOVERNMENT'S MOTION TO RECONSIDER**
**EARLY TERMINATION OF SUPERVISED RELEASE**

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR., United States Attorney for the Northern District of Illinois, moves this court to reconsider its December 3, 2020 order granting defendant Howard Leventhal's second motion for early termination of his supervised release, and to reinstate that term of supervised release.

**I.     Introduction**

Howard Leventhal has at least a 12-year history of filing abusive and harassing lawsuits against those he considers his enemies. As a result, among other things, he was banned in 2015 from filing civil lawsuits in this district, and Judge Brian Cogan of the Eastern District of New York (EDNY) imposed a blanket ban on him filing civil suits anywhere in the country for the four-year period of his supervised release when he sentenced Leventhal in this case in December 2016. *See* Exhibit 1 at 5 (Judgment and Commitment Order, 13CR695-BMC, R. 166). Because Leventhal was prosecuted and sentenced in New York, and his supervised release transferred to this district in March 2020, the government representatives from the Probation Office and United States Attorney's Office (USAO) in this district who were assigned

to his case were unaware of Leventhal's abusive history when he submitted his second motion for early termination of his supervised release on November 4, 2020. R. 35. They therefore did not object, and this Court granted Leventhal's motion on December 3, 2020. R. 41.

The very next day, Leventhal began what can only be described as a deranged campaign against dozens of people, including filing a 134-page lawsuit in Cook County naming as defendants Judge Cogan's wife, the former Assistant U. S. Attorney (AUSA) who prosecuted him in the EDNY, the FBI agent who investigated that case, at least four U.S. Probation Officers (USPO) assigned to that case both in the EDNY and this district, his former wife, her sister, her mother, his former CJA-appointed lawyer and his wife, virtually the entire government of Ozaukee County, Wisconsin, and many, many others.

Based on this conduct, and Leventhal's abusive prior history, the government moves this Court to reconsider its December 3 order and reinstate Leventhal's supervised release conditions for the balance of the four-year term imposed by Judge Cogan, for the reasons set forth below.

### II. This Court Has The Authority To Reconsider and Reinstate Leventhal's Supervised Release

The first and most obvious question to be answered at this stage of the proceedings is whether this Court has the authority to grant the government's motion. Both the Supreme Court and the Seventh Circuit have made it clear that the answer is emphatically yes. In *United States v. Healy*, 376 U.S. 75, 84 S.Ct. 553 (1964), the Supreme Court held that a motion to reconsider a substantive ruling by a

district court in a criminal case is properly brought if filed within the permissible time for filing an appeal, and the Seventh Circuit definitively enforced this rule in *United States v. Rollins*, 606 F. 3d 500 (7th Cir. 2010):

> Rollins filed his motion to reconsider within the time available for appeal and sought a substantive modification of the judgment. The motion therefore suspended the finality of the district court's order. . . . *Healy* and the common law supply all the authority needed. Rollins filed an appeal within 10 (countable) days of the district court's order denying his motion for reconsideration, so his appeal is timely . . . .

*Id.* at 504; *see also United States v. Dieter*, 429 U.S. 6, 97 S. Ct. 18 (1976) (a district court can properly reconsider its substantive orders regarding both law and fact within the time for filing an appeal).

In computing the time available for the government to seek modification of the December 3 order, which was entered that same day on the docket, Federal Rule of Appellate Procedure 4(b)(1)(B)(i) provides that the government has 30 days from the entry of the order to file an appeal, while Federal Rule of Appellate Procedure 26(a)(1) provides that the day the order is entered is not counted in computing that 30-day period, while every other day is counted unless the final day falls on a Saturday, Sunday, or legal holiday, in which case the final day is the next business day. In this case, therefore, the allowable period for the government to move to reconsider this Court's December 3 order began on December 4, 2020 and ends on January 4, 2021. This motion is therefore timely and this Court has the authority to both consider and grant it.

### III. Leventhal's Supervised Release Should Be Reinstated

#### A. Background

On October 22, 2013, Howard Leventhal was arrested in Chicago on a warrant issued by the EDNY that charged him with wire fraud, in violation of 18 U.S.C. § 1343. R. 1. That same day, Leventhal appeared before Magistrate Judge Mason, was released on bond, and was ordered removed to the EDNY. R. 2, 3, 4, 5. On December 23, 2013, Leventhal was charged by information in the EDNY with wire fraud and aggravated identity theft, and entered a guilty plea that same day. R. 11 at 4. On December 6, 2016, Leventhal was sentenced by EDNY Judge Brian Cogan to 36 months on the wire fraud charge and a consecutive 24 months on the aggravated identity theft charge, for a total of 60 months' incarceration, to be followed by four years supervised release, and ordered to pay restitution of $1,350,819. *See* Exhibit 1 (Judgment and Commitment Order). One of the Special Conditions of Supervision imposed by Judge Cogan was that "The defendant cannot commence any civil litigation, nor seek to reopen any closed civil case, without the Court's permission, which will be granted if the Court determines that there is a colorable basis for the proposed claim." *Id.* at 5.

Leventhal was released from FPC Duluth on April 23, 2019 and reported to the Salvation Army halfway house in this district. Leventhal's performance at that facility was exceptionally poor, as reflected in his release evaluation:

> . . . [W]hile residing at the Salvation Army RRC and while on Direct Home Confinement . . . Mr. Leventhal had severe difficulty following instructions, not because he didn't understand them, but because he simply chose not to follow them. Mr. Leventhal had to be constantly

4

re-directed to follow the structure of his environment. Mr. Leventhal's attitude and adjustment to the structure of his environment and toward staff was arrogant, rude, argumentative, debative, insulting, self-centered, self-entitled, and borderline insolent.

Mr. Leventhal exudes an exaggerated sense of self-importance and competence. He perceives himself as special. Mr. Leventhal believes the conventional rules of living with others do not apply to him. Mr. Leventhal has problems with persons in authority. When confronted with the consequences of his actions, Mr. Leventhal has no concern about the social and personal consequences of his behavior. It is the opinion of this RCM (Phillip Schroeder) that Mr. Leventhal's future prognosis does not appear to be positive or optimistic unless he chooses to follow the structure of his environment and the laws of the community. *It is the opinion of this RCM that Mr. Leventhal will have severe difficulty in following the rules of supervised release and the directions of his Probation Officer. Mr. Leventhal will more than likely need increased supervision and constantly have to be re-directed to follow the structure of supervision. Mr. Leventhal will more than likely have difficulties following the directions of his Probation Officer, not because he doesn't understand them, but because he simply chooses not to follow them.*

Exhibit 2 at 9; emphasis added.

On December 12, 2019, Leventhal was released from the Salvation Army and began his four-year term of supervised release. *Id.* at 2. On March 4, 2020, Leventhal's supervision was transferred from the EDNY and assigned to this Court. R. 10, 11. Barely two months later, on May 6, 2011, USPO Nichols filed a Special Report regarding a violation of conditions of supervised release by Leventhal:

> On May 2, 2020, the undersigned was informed by the Grafton, Wisconsin, Police Department that the offender violated a Court Order by contacting his ex-wife via email and by mailing her a gift card. There is currently an active arrest warrant for the offender out of Ozaukee County, Wisconsin for Violation of a Restraining Order under docket number 2019 CM000312. The offender is aware of this Restraining Order and active warrant

5

> and does not intend to surrender.
>
> In response to the above listed information, a violation conference was held on May 6, 2020, via telephone conversation with this writer. Mr. Leventhal admitted to contacting his ex-wife via email. Mr. Leventhal understands that this type of behavior is not acceptable. Mr. Leventhal's current situation and the specific behavior described above were focused on in detail. In response to this violation, short-term and long-term consequences of engaging in this type of behavior were discussed and Mr. Leventhal appears to understand the importance of being more mindful in the future. In addition, Mr. Leventhal has agreed to participate in mental health counseling to help better cope with being unable to see his adult daughter due to a restraining order against him. Mr. Leventhal has been strongly encouraged to strategize with his treatment provider a better way to handle this current situation and to come up with a plan of action so this can be used in the future to prevent new violation behavior.

R. 12, 13. The next day, Officer Nichols filed a second Special Report that advised:

> On May 7, 2020, Mr. Leventhal stated he filed a pro se motion for early termination of his Supervised Release. Mr. Leventhal began his term of supervision on December 12, 2019. Under 18 U.S.C. section 3564(c) and 3583(e)(1), the court may terminate terms of supervised release or probation in felony cases after the expiration of one year of supervision if satisfied that such action is warranted by the conduct of an offender and is in the interest of justice. Based on the above related information, the Probation office objects to this motion as Mr. Leventhal has not completed a year of his supervised release. Furthermore, on May 6, 2020, a special report was sent to Your Honor reporting that the offender violated a court order in Wisconsin by contacting his ex-wife.

R. 14.

On May 11, 2020, Leventhal filed a *pro se* petition for early termination of his supervised release. R. 15. On May 13 this Court ordered the government to respond to Leventhal's petition. R. 17. On May 28 the government objected to his request based on the reasons set forth by USPO Nichols did in his May 7 Special Report—

that Leventhal had not completed a year of supervised release and had violated a court order in Wisconsin by contacting his former wife. R. 21.

On June 15, 2020, Leventhal filed a motion for sanctions against United States Attorney (USA) John Lausch, AUSA William Hogan, and USPOs Jay Nichols, Ronald Jacobs, and Michelle Espinosa. He claimed that "Defendant's submissions, . . . enumerate panoply ways (sic) in which he has been extraordinarily harmed by manifest injustices, egregious prosecutorial misconduct, 8th Amendment rights denial by design of the Government, 6th Amendment rights denial by design of the Government, gross disparity in sentencing and perhaps the most egregious conceivable form of "civil disability;" the Government's deliberate destruction of his relationship with his daughter—at barest minimum a denial of his 14th Amendment rights." R. 28 at 1-2. Leventhal continued for 11 more pages to list his grievances and demands for sanctions against the government personnel, concluding with a rant against the former AUSA who prosecuted his New York case and including as an exhibit what he claimed was a copy of a photo from Facebook showing the former AUSA and his family on vacation. *Id.* at Ex. B; *see also* R. 25 at 8-11; 21; 26 (photos of the former AUSA and FBI agent involved in Leventhal's prosecution).

This Court issued a minute order on July 22, 2020 denying Leventhal's motions for early termination of supervised release and for sanctions, and set the case for a telephonic status conference on July 30. R. 33. In that call the government expressed its concerns about Leventhal's mental health, including that he had failed to comply with directives by the Probation Office to obtain mental health treatment. It also

7

objected to the photos of the former AUSA, FBI agent, and others included in several of Leventhal's filings. This Court found these images were not relevant to any issues and were not appropriate for a public court docket, and therefore ordered those filings to be sealed. R. 34. The Court further agreed that Leventhal retained the right to renew his request for early termination at the end of a year, and set the matter for a further status call on December 4, 2020. *Id*.

On November 4, 2020, Leventhal filed a renewed early termination motion. R. 35. The next day, this Court directed the government to respond to the motion. R. 38. After consulting with USPO Nichols and determining that Leventhal had not violated any additional conditions of supervised release since the July telephone status, on November 16 the government advised that it did not oppose early termination on the one-year date of December 11, 2020. R. 39. On December 3, 2020 this Court therefore granted Leventhal's motion in a minute order that was docketed that same day. R. 41.

> **B.** **The Government Was Unaware of Leventhal's Lengthy Pattern of Abusive and Harassing Litigation When It Responded To His Early Termination Motion**

Because Leventhal had not been prosecuted in this district there was no Presentence Report (PSR) prepared here and none transmitted when his supervision was transferred. The government representatives in this district who were assigned to Leventhal's case when it was transferred therefore were not familiar with his background and history at the time this Court directed a response to his motion for early termination of supervised release. Specifically, neither the probation officer nor

8

government counsel were aware that Leventhal has a pattern of filing abusive, frivolous, and harassing litigation against his perceived enemies since at least 2008, including the former AUSA who prosecuted him in the EDNY, and the FBI agent and USPO who worked on that case. Nor were the government representatives aware that Leventhal had been sanctioned for that conduct multiple times by multiple courts, including by the Executive Committee in this district and Judge Cogan. Nor was the government aware of his years' long disturbing and relentless harassment of his former wife and daughter, including the resultant orders of protection they had been forced to obtain due to his threats and abusive conduct.

Thus, at the time the government responded to Leventhal's second early termination motion its representatives were unaware that he had been banned by the Executive Committee of this District in 2015 from filing civil lawsuits without prior permission because of his dozen years of abusive practices as a *pro se* litigant. *See* Exhibit 3 (Exec. Committee Order in 15 CV 352 barring Leventhal). Nor that Leventhal used an ex-wife named Malgorzata Kubiak to aid his pattern of abusive litigation and that she too had been barred by the Executive Committee the same day as Leventhal for the same reasons. *See* Exhibit 4 (Exec. Committee Order in 15 CV 353 barring his ex-wife Kubiak).[1] Nor that because of this abusive history Judge

---

[1] As Judge Adelman of the Eastern District of Wisconsin noted, Kubiak too "[i]n recent years … has been initiating frivolous legal proceedings in the United States District Court for the Northern District of Illinois. On January 15, 2015, the Executive Committee of that court noted her history of filing frivolous actions and added her to its list of restricted filers, meaning that she cannot institute new civil actions in that district without the executive committee's permission. *See In re Malgorzata Kubiak*, N.D. Ill. Case No. 15-CV-0353. No longer able to file frivolous suits in federal court in the Northern District of Illinois, Kubiak turned to the Eastern District of Wisconsin." *See Kubiak v. Shannon, etal*, 15-C-813 (E.D.WI.

9

Cogan on December 6, 2016 had forbidden Leventhal as a condition of his supervised release from filing *any* civil suits anywhere without Judge Cogan's explicit prior permission. Exhibit 1 at 5. Nor that while a prisoner at FCI Pekin in 2017, Leventhal filed a civil suit against the former AUSA who prosecuted him, the FBI agent who investigated that case, former Attorney General Loretta Lynch, his former wife Mary Handeland, her mother, her sister, and others, that Judge Cogan found was "a transparent attempt to harass a wide variety of people, including individuals who have had to defend against Leventhal's abuse of the legal process in the past, including his ex-wife." S*ee* Exhibit 4.

Nor were they aware that Ms. Handeland had been forced to obtain orders of protection against Leventhal and his relentless and abusive behavior from the Circuit Court of Ozaukee County, Wisconsin, for which multiple arrest warrants have been issued and are still outstanding. The affidavit attached as Exhibit 6 by Ms. Handeland, Leventhal's former wife and the mother of their adoptive daughter, recounts much of this history, including Leventhal's clear threat while he was still incarcerated at FPC Duluth in August 2017 that because of his unshakable and compulsive belief that Ms. Handeland is responsible for keeping their daughter away from him, "I will irrevocably initiate a litigation campaign in federal and state court

---

2015). Judge Adelman further recognized that "Leventhal is Kubiak's ex-husband. He, like Kubiak, has a history of filing frivolous suits and is barred from filing civil cases in the Northern District of Illinois without permission from that court's Executive Committee. *See In re Howard Leventhal*, N.D. Ill. Case No. 15-CV-0352." *Id*. at 4 n. 4.

against Mary Handeland and all who support her inhumane actions in this matter. Such a campaign, if commences will commence on 8/30/17 and it will never end while I am alive." *Id.* at Ex. H.

Nor were they aware that Leventhal's daughter too had been forced to seek an order of protection against him on June 21, 2019, soon after his release to the Salvation Army halfway house and while his first motion for early termination of supervised release was pending before this Court, directing that he "avoid contact that harasses or intimidates (her). *Contact includes: contact at petitioner's home, work, school, public places, in person, by phone, in writing, by electronic communication or device, or in any other manner*," and "to avoid . . . causing any person other than a party's attorney or law enforcement officer to contact the petitioner unless the petitioner consents in writing" because Leventhal "has used excessive litigation to harass and for no legitimate purpose." *See* Exhibit 7 at 2-3; emphasis in original.

Had the government been aware of these facts it would have vigorously opposed the motion for early termination of supervised release—and it is unlikely it would have been granted by this Court. However, the government representatives have only become aware of these matters in the aftermath of the December 3 order removing the prohibition on filing civil lawsuits. Virtually the minute that prohibition was lifted, Leventhal launched a fusillade of unhinged attacks in a Cook County civil lawsuit against dozens of people, including his former wife, Judge Cogan's wife, the former EDNY AUSA, and three USPOs in this district, as well as filing a flurry of

11

pleadings in this Court on December 24, 25, and 30 attacking many of these same people, including "doxxing" USA John Lausch and AUSAs William Hogan and Scott Heffron by publishing their home addresses in his December 30 notice of filing. As set forth below, this clearly deranged behavior brought Leventhal's prior history to the government's attention and warrants the reinstatement of his supervised release.

### C. Leventhal's Renewed And Continued Pattern Of Abusive And Harassing Litigation Justifies Reinstatement of His Supervised Release

That Leventhal renewed his abusive conduct the moment his supervised release was terminated demonstrates exactly why Judge Cogan imposed the condition that barred him from filing any civil suits without Judge Cogan's specific permission. Only one day after the December 3 order, Leventhal used ex-wife (and barred frivolous filer) Malgorzata Kubiak to violate his daughter's Wisconsin order of protection by contacting her by email at her college. *See* Exhibit 5. The email attached a copy of the December 3 minute order and "urged in the strongest possible terms" his daughter to "immediately . . . Read the yellow-highlighted portions of the attached court order." *Id.* It further urged her to meet for coffee before Christmas, threatening that "[t]he choices you make in response to this message will have profound effects upon you and those close to you, for a very, very long time." *Id*. This ominous warning constitutes a clear new threat to both Leventhal's daughter and her mother, Ms. Handeland.

Next, gloating that he was free of the restriction against filing civil lawsuits without prior approval by Judge Cogan,[2] on December 15 Leventhal filed what was obviously a long-planned meritless, vexatious, and harassing 134-page civil suit in Cook County against Ms. Handeland, her mother, her sister, her employer, EDNY Judge Cogan's wife, the former EDNY AUSA, the FBI agent who investigated that case, his former CJA-appointed criminal defense attorney and that attorney's wife, three U.S. Probation Officers in this District and one in the EDNY, the District Attorney of Ozaukee County, Wisconsin, four members of the Ozaukee County Board, several Ozaukee County Judges and Commissioners, the Ozaukee County Clerk of Court, an attorney who represented Ms. Handeland and her daughter in their successful efforts at obtaining and enforcing orders of protection in Wisconsin, a Sargent on the Grafton, Wisconsin, police department, and others, including the couple who purchased Leventhal and Ms. Handeland's former home. *See* R. 42 at Ex. A (copy of the 134-page lawsuit Leventhal filed in Cook County Circuit Court on December 15, 2020). The suit alleged 19 different criminal conspiracies purportedly engaged in by the 31 persons named. Leventhal emailed the lawsuit to Ms.

---

[2] Leventhal described Judge Cogan and his wife as follows in his filing:
> Defendant Robin Keller coerced her husband, US District Judge the spineless, odious and honorless Brian M. Cogan of the Eastern District of New York, a corpulent, flatulent Republican Jackass gasbag appointed by bloviating Republican Jackass President George W. Bush - to enter language in the Judgment of Conviction (Exhibit C) oppressing, depressing, priorly restraining and limiting Leventhal's First Amendment right to seek redress of the issues presented in this matter until Leventhal's period of supervised release was ended. The federal court in Chicago, recognizing the egregious cruelty of the harms set forth in this complaint, ended Leventhal's period of supervised release two years early on December 3, 2020, see order, Exhibit D hereto.

13

Handeland's sister the day before he filed it, and tried to email copies to dozens of Ms. Handeland's employers and fellow employees.

In addition to this malicious and demented behavior, on December 24 Leventhal filed in this case what he called a Motion For Order To Show Cause, Criminal Contempt And For Order Of Protection against the former AUSA, the FBI agent, his former lawyer, an EDNY USPO, and two USPOs in this district. R. 42. The motion attached a copy of the Cook County lawsuit and alleged that the day after it was filed the USAO in this district had issued two subpoenas to his bank in retaliation. *Id.* at ¶ 2. The next day, December 25, Leventhal filed what he called a Motion For Sanctions And To Vacate Judgment Or Other Relief, in which he sought sanctions against the same people he had named in his Order To Show Cause motion, and demanded that his conviction in this matter be vacated so he could become a foster parent. R. 43.

When Leventhal's supervised release was transferred to this district in March 2020, the responsibility to collect his $1.35 million restitution judgment was also transferred to the Financial Litigation Unit (FLU) of the Chicago USAO. On December 16, 2020, the FLU issued routine subpoenas to Wells Fargo Bank and Credit One Bank seeking financial information regarding Leventhal's ability to pay that judgment. The subpoenas went out over the signature of AUSA Scott Heffron and without any involvement by the AUSA assigned to Leventhal's criminal case, AUSA William Hogan, as is routine in such a situation, and the banks notified Leventhal by letter of their receipt of the subpoenas, as is also routine. *See* R. 44, Ex.

A (copies of the subpoenas and letters from the banks to Leventhal). Apparently in response to the notices he received from his banks about the subpoenas, on December 26 Leventhal sent AUSA Hogan an email captioned "Social Security garnishment" and threatening: "Be advised, if so much as $1 in social security funds, medicare or any related funds vanish from my account or my mother's, the very next person sued personally will be you." *See* Exhibit 9. And on December 30, Leventhal filed what he called a Motion To Quash Subpoenas And For Injunctive Relief regarding the subpoenas served on his banks. R. 44. On the Notice Of Filing for that motion Leventhal included the home addresses of USA John Lausch and AUSAs William Hogan and Scott Heffron, thus doxxing all three government representatives, R. 44-1, and, not incidentally, causing security concerns to be raised by the United States Marshals Judicial Security Team.

Finally, on January 1, 2021, Leventhal once again violated his daughter's order of protection by sending or causing to be sent to her a second email urging her to talk with him and threatening: "If you can find some way to spend a little time with him, the outcome might well be that your mother's life gets a lot less complicated and yours gets a lot more promising." *See* Exhibit 10. Understandably, this threatening email greatly upset Ms. Handeland and her daughter.

### IV. Conclusion

It is clear that Howard Leventhal is a seriously disturbed person with severe mental health issues. He has essentially terrorized his former wife and engaged in frivolous and harassing litigation against anyone he chooses for years. If the

15

government had known of his conduct it would have strong opposed early termination of his supervised release. And it is difficult to believe this Court would have granted his motion if it had known Leventhal's actual history.

Leventhal has been the unintended beneficiary of the fact that his offense and conviction took place in New York and therefore his actual history and conduct was unknown in this district. That was an unintentional oversight this Court can and should remedy by reinstating his supervised release for the balance of the time ordered by Judge Cogan.

For the foregoing reasons, the government respectfully requests this Court to reconsider its December 3, 2020 order and to reinstate defendant Leventhal's supervised release. It further requests that this Court seal the Notice Of Filing for Leventhal's December 30, 2020 Motion To Quash, R. 44-1.

    Respectfully submitted,

    JOHN R. LAUSCH, JR.
    United States Attorney

By:   */s/ William R. Hogan, Jr.*
    WILLIAM R. HOGAN, JR.
    Assistant United States Attorney
    219 South Dearborn Street, Room 500
    Chicago, Illinois 60604

# CERTIFICATE OF SERVICE

The undersigned Assistant United States Attorney hereby certifies that in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document: **GOVERNMENT'S MOTION TO RECONSIDER EARLY TERMINATION OF SUPERVISED RELEASE and EXHIBITS** were served pursuant to the district court's ECF system as to ECF filers, if any, and were sent by U.S. mail on January 4, 2021, to the following non-ECF filers:

Howard Leventhal
1205 E Prairie Brook Dr D1
Palatine, IL 60074
email: HLEV3@AOL.COM

        Respectfully submitted,

        JOHN R. LAUSCH, JR.
        United States Attorney

By:   */s/ William R. Hogan, Jr.*
        WILLIAM R. HOGAN, JR.
        Assistant United States Attorney
        219 South Dearborn Street, Room 500
        Chicago, Illinois 60604

Dated: January 7, 2021