# GOVERNMENT
# EXHIBIT 1

AO 245B (Rev. 11/16)    Judgment in a Criminal Case
                        Sheet 1

# UNITED STATES DISTRICT COURT

Eastern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| Howard Leventhal | Case Number:  13cr00695-BMC |
| | USM Number:  46376-424 |
| | Steve Zissou, Esq. |
| | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    Counts 1 and 2 of the Information

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☐ was found guilty on count(s) _____
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. § 1343; | Wire Fraud | 10/22/2013 | 1 |
| 18 U.S.C. § 1028A(a)(1) | Aggravated Identity Theft | 10/22/2013 | 2 |

The defendant is sentenced as provided in pages 2 through ___8___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____  ☐ is  ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

12/6/2016
Date of Imposition of Judgment

## Digitally signed by Brian M. Cogan

Signature of Judge

BRIAN M. COGAN  U.S.D.J.
Name and Title of Judge

12/15/2016
Date

AO 245B (Rev. 11/16)  Judgment in Criminal Case
Sheet 2 — Imprisonment

DEFENDANT: Howard Leventhal
CASE NUMBER: 13cr00695-BMC

Judgment — Page __2__ of __8__

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

Count 1: 36 months custody
Count 2: 24 months custody to be imposed consecutive to count 1 for a total of 60 months imprisonment.

☑ The court makes the following recommendations to the Bureau of Prisons:

The defendant be designated to either FCI- Oxford or  a Correctional Medical Facility in Illinois.  He is from Illinois, he has family in Illinois, and he has a serious medical condition that may require rapid response.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m.   on _____ .

    ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐ before 2 p.m. on _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 11/16)  Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page __3__ of __8__

DEFENDANT:  Howard Leventhal
CASE NUMBER:  13cr00695-BMC

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :  4 Years

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☐ The above drug testing condition is suspended, based on the court's determination that you
pose a low risk of future substance abuse. *(check if applicable)*

4. ☐ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
5. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
6. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (Rev. 11/16)    Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page    4    of    8

DEFENDANT:  Howard Leventhal
CASE NUMBER:  13cr00695-BMC

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

AO 245B(Rev. 11/16)   Judgment in a Criminal Case
                      Sheet 3D — Supervised Release

Judgment—Page   5   of   8

DEFENDANT: Howard Leventhal
CASE NUMBER: 13cr00695-BMC

## SPECIAL CONDITIONS OF SUPERVISION

1) The defendant shall comply with the restitution and forfeiture orders.

2) The defendant shall make full financial disclosure to the Probation Department.

3) The defendant shall not incur any new bank accounts or lines of credit, and shall not secure investments from individuals or businesses, without the permission of the Court or the Probation Department.

4) The defendant shall participate in a mental health treatment program as approved by the Probation Department. The defendant shall contribute to the cost of such services rendered and/or any psychotropic medications prescribed to the degree he is reasonably able, and shall cooperate in securing any applicable third-party payment. The defendant shall disclose all financial information and documents to the Probation Department to assess his ability to pay.

5. The defendant can not commence any civil litigation, nor seek to reopen any closed civil case, without the Court's permission, which will be granted if the Court determines that there is a colorable basis for the proposed claim.

6. The defendant shall have no contact in any form, whether in person, by mail, telephone, email, or other electronic means, with any victim of the offense conduct or relevant conduct, as defined by a list with which the Probation Department will provide him, without prior permission of the Probation Department.

AO 245B (Rev. 11/16)   Judgment in a Criminal Case
       Sheet 5 — Criminal Monetary Penalties

Judgment — Page   6   of   8

DEFENDANT: Howard Leventhal
CASE NUMBER: 13cr00695-BMC

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | JVTA Assessment* | Fine | Restitution |
|---|---|---|---|---|
| **TOTALS** | $ 200.00 | $ | $ | $ 1,350,819.78 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Paragon Financial Group | $800,000.00 | $800,000.00 | |
| CVA Partners | $175,819.78 | $175,819.78 | |
| Vincent Hseieh | $50,000.00 | $50,000.00 | |
| David Spector | $25,000.00 | $25,000.00 | |
| Can Capital Asset Services | $300,000.00 | $300,000.00 | |

*Payees info known to the govt.

| TOTALS | $ _____ | $ _____ |
|---|---|---|

☑ Restitution amount ordered pursuant to plea agreement  S  1,350,819.78

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☑ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☑ the interest requirement is waived for the   ☐ fine   ☑ restitution.

    ☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (Rev. 11/16)  Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page __7__ of __8__

DEFENDANT: Howard Leventhal
CASE NUMBER: 13cr00695-BMC

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ☑ Lump sum payment of $ __200.00__ due immediately, balance due

    ☐ not later than _____ , or
    ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

C ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after the date of this judgment; or

D ☐ Payment in equal _____ (e.g., weekly, monthly, quarterly) installments of $ _____ over a period of _____ (e.g., months or years), to commence _____ (e.g., 30 or 60 days) after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within _____ (e.g., 30 or 60 days) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☑ Special instructions regarding the payment of criminal monetary penalties:

    Restitution in the amount of 1,350,819.78, due immediately and payable at a rate of $25 per quarter while in custody, and at a rate of 10% of his gross income per month while on supervised release. Contact information for payees known to the Government.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

    Defendant and Co-Defendant Names and Case Numbers (including defendant number), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

AO 245B (Rev. 11/16)   Judgment in a Criminal Case
Sheet 6B — Schedule of Payments

DEFENDANT: Howard Leventhal
CASE NUMBER: 13cr00695-BMC.

Judgment—Page __8__ of __8__

# ADDITIONAL FORFEITED PROPERTY

1. Forfeiture Order attached to judgment.

SLR:LDM:CSK
F.#2013R01251

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

    -against-

HOWARD LEVENTHAL,

         Defendant.

- - - - - - - - - - - - - - - - - - - -X

ORDER OF
FORFEITURE

13-CR-0695 (BMC)

WHEREAS, on or about December 23, 2013, the defendant, Howard Leventhal,

entered a plea of guilty to the above-captioned Information, charging violations of 18 U.S.C. §§

1343 and 1028A(a)(1); and

WHEREAS, the defendant consents to the entry of a forfeiture money judgment

in the amount of one million, fifty thousand, eight hundred nineteen dollars and seventy-eight

cents ($1,050,819.78) (the "Forfeiture Money Judgment"), pursuant to 18 U.S.C. § 981(a)(1)(C)

and 28 U.S.C. § 2461(c), as property which constitutes or is derived from proceeds traceable to a

violation of 18 U.S.C. § 1343, and/or pursuant to 21 U.S.C. § 853(p), as a substitute asset.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, on consent, by and

between the United States and the defendant as follows:

    1.      The defendant shall forfeit to the United States the full amount of the

Forfeiture Money Judgment, pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 21

U.S.C. § 853(p).

    2.      If the defendant fails to pay the Forfeiture Money Judgment interest will

accrue at the statutory post-judgment rate of interest, as set forth in 18 U.S.C. § 3612(f)(2), and

Case: 1:13-cr-00695, Document: 166, Filed: 12-19-2016, Page 2 of 4
Case 1:13-cr-00695-BMC Document 151 Filed 01/20/14 Page 2 of 4 PageID #: 553

2

the United States may, among other things, execute on any substitute assets up to the unpaid

portion of the Forfeiture Money Judgment pursuant to 21 U.S.C. § 853(p), the Federal Debt

Collection Procedures Act, or any other applicable law.

        3.      The defendant shall fully assist the Government in effectuating the

payment of the Forfeiture Money Judgment. The failure of the defendant to forfeit any monies

and/or properties as required under this agreement, including the failure of the defendant to

execute any document to accomplish same on timely notice to do so, may constitute a material

breach of this agreement. The defendant shall not file or interpose any claim or assist others in

filing or interposing any claim to any property against which the Government seeks to execute

the Forfeiture Money Judgment in any administrative or judicial proceeding. The defendant

agrees that the entry and payment of the Forfeiture Money Judgment shall not be considered a

payment of a fine, penalty, restitution loss amount, or payment on any income taxes that may be

due, and shall survive bankruptcy.

        4.      The defendant represents that he has disclosed all of his assets to the

United States on a financial statement dated December 22, 2013 and entitled "United States

Department of Justice Financial Statement" (the "Financial Statement"). The defendant agrees

that a failure to disclose assets on the Financial Statement constitutes a material breach of his

plea. In addition, the defendant consents to the forfeiture to the United States of all assets in

which he has an interest but failed to disclose on the Financial Statement, if any.

        5.      The defendant knowingly and voluntarily waives his right to any required

notice concerning the forfeiture of the monies and/or properties forfeited hereunder, including

notice set forth in an indictment or information. In addition, the defendant knowingly and

voluntarily waives his right, if any, to a jury trial on the forfeiture of said monies and/or

Case: 1:13-cr-00695, Document: 166, Filed: 12-19-2016, Page 3 of 4
Case 1:13-cr-00695-BMC Document 145 Filed 01/12/14 Page 3 of 4 PageID #: 584

3

properties, and waives all constitutional, legal and equitable defenses to the forfeiture of said

monies and/or properties, including but not limited to, any defenses based on principles of

double jeopardy, the Ex Post Facto clause of the Constitution, the statute of limitations, venue, or

any defense under the Eighth Amendment, including a claim of excessive fines.

6.      Pursuant to Fed. R. Crim. P. 32.2(b)(4)(A), this Order shall become final

as to the defendant at the time of sentencing and shall be made part of the sentence and included

in the Judgment of Conviction.  This order shall become the Final Order of Forfeiture, as

provided by Fed. R. Crim. P. 32.2(c)(2).

7.      The terms contained herein shall be final and binding only upon the

Court's "so ordering" of this Order.

8.      The Court shall retain jurisdiction over this action to enforce compliance

with terms of the Order, and to amend it as necessary, pursuant to Fed. R. Crim. P. 32.2(e).

9.      The Forfeiture Money Judgment shall be paid in the form of certified or

bank check(s), payable to the "United States Marshals Service", and all said checks shall be sent

by overnight mail to Assistant United States Attorney Claire S. Kedeshian, United States

Attorney's Office, Eastern District of New York, 271 Cadman Plaza East, Brooklyn, New York

11201, with the criminal docket number noted on the face of the check.

10.    The Clerk of Court shall forward three certified copies of this order to the

U.S. Attorney's Office, Eastern District of New York, 271 Cadman Plaza East, 7th Floor,

Brooklyn, New York 11201, Att: FSA Supervisory Paralegal Dionne Gill.

Date:   Brooklyn, New York
        January 29        , 2014

                              SO ORDERED:

                              Digitally signed by Brian M.
                              Cogan
                              _____
                              HONORABLE BRIAN M. COGAN
                              UNITED STATES DISTRICT JUDGE

# GOVERNMENT
# EXHIBIT 2

**BP-XXXX.XXX**
**June 2014**
**TERMINAL REPORT**

| **RRC Office** | **Last Modified Date** | **Last Modified By** |
|---|---|---|
| 5SA - The Salvation Army | 12/11/2019 20:05 | Schroeder, Phillip (phillip.schroede |

| **Reg No.** | **Arrive Date** | **Case Type** |
|---|---|---|
| 46376-424 | 04/23/2019 | Direct Home Confinement |
| **Inmate Name** | **Release Date** | **Component** |
| LEVENTHAL, HOWARD | 12/12/2019 | Pre-release |

## Facility Adjustment

## Program Plans

Mr. Leventhal was convicted of:

Count One (1): Wire Fraud
Count Two (2): Aggravated Identity Theft

in which he was sentenced to thirty-six (36) months of incarceration on Count One (1) and twenty-four (24) months of incarceration on Count Two (2) to run consecutive for a total term of Sixty (60) months of incarceration followed by a total term of three (3) years of supervised release under the supervision of UPSO Jay Nichols.

Mr. Leventhal entered the Salvation Army Pathway Forward RRC on 4/23/19 as an individual with a Pre-Release / Community Corrections / Direct Home Confinement designation / referral from FPC-Duluth, MN with a projected release date (Good Conduct Time) on 12/12/19. Upon Mr. Leventhal's admission, he was placed into 'Direct Home Confinement Orientation'. During this period, Mr. Leventhal was oriented to the Salvation Army Pathway Forward RRC rules and regulations. Mr. Leventhal was seen by Karen Kinte, Re-Entry Case Manager on 4/25/19 for an initial medical intake assessment. At that time, Mr. Leventhal was informed that he would be required to participate in all random breathalyzer and U/A screens while residing at the SARRC and Home Confinement. On 4/23/19, Mr. Leventhal completed Part I: Initial PREA Screening with the Intake Department. On 6/18/19, Mr. Leventhal completed Part II: 30-day PREA Re-Screening with Karen Kinte, Re-Entry Case Manager. On 9/11/19, Mr. Leventhal's case was transferred from Karen Kinte, Re-Entry Case Manager to this Re-Entry Case Manager (Phillip Schroeder) due to Mr. Leventhal's inability to work with Ms Kinte effectively. In case of an emergency, the Salvation Army RRC was to contact Lila Leventhal (Mother) Ph # 224-567-3579 or Meg Kubiak (Ex-Wife) Ph # 847-533-3782.

On 5/06/19, the CAIS (Correctional Assessment and Inventory System) was completed by Karen Kinte, Re-Entry Case Manager. Mr. Leventhal scored a '70' in the 'Selective Intervention-Transitional (SI-T)' category. According to the CAIS results, Offenders in this group generally have the most pro-social value systems. If the current offense is not the first, the offense history will be minimal. They tend to be in pursuit of the same goals as the non-criminal population: career, family, and community ties. They generally seek out non-criminal associates. These offenders will be the most likely to work over 90% of the time, to stay with jobs, to have a stable residence, and to support themselves and their dependents. Their family backgrounds tend to be less chaotic than most offenders'. They are usually fairly stable emotionally and are usually free of chemical addictions. These offenders will be the most likely to have academic and vocational skills. They also have better problem-solving and social skills than most offenders. Their offenses can usually be viewed as a temporary lapse or suspension of an otherwise normally functioning values system. This lapse is often brought about by a temporary and unusually stressful circumstance, crisis, or temptation. Even with minimal intervention from the caseworker, these offenders are the least likely to re-offend.

On 5/03/19, Mr. Leventhal completed an Individualized Program Plan (IPP) with Karen Kinte, Re-Entry Case Manager. The IPP consisted of, but was not limited to, such goals as:

1. Avoiding contact with former associates and other negative persons in the community.
2. Identifying pro-social peers, mentors and groups as supports to successful re-entry.
3. Utilizing pro-social thinking / decision making skills to avoid relapse into criminal thinking.
4. Remaining in contact with supportive family members.
5. Submitting random U/A and breathalyzer screens upon RRC staff request.
6. Attending all required meetings with Re-Entry Case Managers
7. Acquiring and maintaining programming (work, school, training, etc.).
8. Reporting all earnings and paying all subsistence on time and in full.
9. Maintaining good behavior by not acquiring any incident reports.
10. Following the directions of Salvation Army Pathway Forward RRC Staff Members

Mr. Leventhal completed goals 1, 4, 5, and 6. Mr. Leventhal failed and / or chose not to complete goals 2, 3, 7, 9, and 10 (See 'Disciplinary Actions' and 'Summary' below). Mr. Leventhal did not complete goal #8 because he acquired employment after he entered Home Confinement. Current procedures indicate residents are not required to pay subsistence while on Home Confinement.

## Summary/Comments

Mr. Leventhal's overall evaluation while residing at the Salvation Army RRC and while on Direct Home Confinement was considered poor. Mr. Leventhal received a disciplinary incident report for being late from a pass. Mr. Leventhal had severe difficulty following instructions, not because he didn't understand them, but because he simply chose not to follow them. Mr. Leventhal had to be constantly re-directed to follow the structure of his environment. Mr. Leventhal's attitude and adjustment to the structure of his environment and toward staff was arrogant, rude, argumentative, debative, insulting, self-centered, self-entitled, and borderline insolent.

Mr. Leventhal exudes an exaggerated sense of self-importance and competence. He perceives himself as special. Mr. Leventhal believes the conventional rules of living with others do not apply to him. Mr. Leventhal has problems with persons in authority. When confronted with the consequences of his actions, Mr. Leventhal has no concern about the social and personal consequences of his behavior. It is the opinion of this RCM (Phillip Schroeder) that Mr. Leventhal's future prognosis does not appear to be positive or optimistic unless he chooses to follow the structure of his environment and the laws of the community. It is the opinion of this RCM that Mr. Leventhal will have severe difficulty in following the rules of supervised release and the directions of his Probation Officer. Mr. Leventhal will more than likely need increased supervision and constantly have to be re-directed to the follow the structure of supervision. Mr. Leventhal will more than likely have difficulties following the directions of his Probation Officer, not because he doesn't understand them, but because he simply chooses not to follow them. 'Good Conduct Time' release of Mr. Leventhal from the BOP was effected on Thursday, 12/12/19. Mr. Leventhal is aware that he is to meet directly with his Probation Officer (Jay Nichols) within 72 hours of his release.

## Release Planning

### Release Address

1205 East Prairie Brook Dr.. Apt. D-1
Palatine, IL 60074

### Release Employment

None

### Release Resources

Mr. Leventhal may seek out the resources of his Probation Officer (Jay Nichols). Mr. Leventhal may seek out resources and assistance agencies in the community such as the Safer Foundation, Greater West Town, West Side Health Authority, Chicago Urban League, Michael Barlow Center, Safe Haven, CARA, etc.

**Inmate's Signature (file copy only)**          **RRC Staff's Signature (file copy only)**

*Phillip Schroeder*

**RRC Staff's Signature (file copy only)**

**Distribution:**
**(This form may be replicated via WP)**

# GOVERNMENT
# EXHIBIT 3

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | Civil Action No. 15 C 0352 |
| Howard E. Leventhal | ) | |
| | ) | |
| | ) | |

## EXECUTIVE COMMITTEE ORDER

Pro se litigant Howard E. Leventhal has been a party in at least 17 cases in the Northern District of Illinois.

It is the judgment of the Executive Committee that reasonable and necessary restraints must be imposed upon Mr. Leventhal's ability to file new civil cases in this District *pro se*. Cases in existence prior to the entry of this order are not affected by this order and shall proceed as usual.

**IT IS HEREBY ORDERED BY THE EXECUTIVE COMMITTEE** in its capacity as the supervisor of the assignment of cases, that ------

1) Mr. Howard E. Leventhal, or anyone acting on his behalf, is enjoined from filing any new civil action or proceeding in the United States District Court for the Northern District of Illinois without first obtaining leave by way of the following procedures:

    a) Any materials Mr. Leventhal, or anyone acting on his behalf, wishes to submit for filing shall be delivered to Room 2050, Office of the Clerk at the Courthouse in Chicago. Only the Clerk or deputies specifically designated by the Clerk may accept such documents.

    b) Where the document submitted is a complaint, it shall be accompanied by a motion captioned "Motion Seeking Leave to File Pursuant to Order of Executive Committee." That motion shall, in addition to requesting leave to file the complaint, include a sworn statement certifying that the claims raised by or on behalf of Mr. Leventhal in the complaint are new claims never before raised in any federal court.

    c) Whenever Mr. Leventhal submits a document for filing, the clerk or designated deputy shall accept the papers, stamp them received, docket them, and forward them to the Executive Committee.

2) The Executive Committee will examine any complaints submitted by or on behalf of Mr. Leventhal to determine whether they should be filed.

3) If Mr. Leventhal seeks leave to proceed *in forma pauperis*, the Committee will also determine if such leave should be granted. The Committee will deny leave to file any complaints if they are legally frivolous or are merely duplicative of matters already litigated. The Committee may deny leave to file any complaints not filed in conformity with this order.

4) If the Executive Committee enters an order denying leave to file the materials, the clerk shall retain the order in a miscellaneous file with the title "In the matter of Howard E. Leventhal" and cause a copy of the order to be mailed to Mr. Leventhal. The submitted documents shall be returned to Mr. Leventhal.

5) If the Executive Committee enters an order granting leave to file the materials, the clerk will cause the materials to be stamped filed as of the date received and shall cause the case to be assigned to a judge in accordance with the rules. The clerk shall also cause a copy of the order to be mailed to Mr. Leventhal.

6) Mr. Leventhal's failure to comply with this order may, within the discretion of the Executive Committee, result in his being held in contempt of court and punished accordingly.

7) Nothing in this order shall be construed -----

    a) to affect Mr. Leventhal's ability to defend himself in any criminal action,

    b) to deny Mr. Leventhal access to the federal courts through the filing of a petition for a writ of habeas corpus or other extraordinary writ, or

    c) to deny Mr. Leventhal access to the United States Court of Appeals or the United States Supreme Court.

**IT IS FURTHER ORDERED** That any password issued to Howard E. Leventhal for access to the electronic filing system shall be disabled.

**IT IS FURTHER ORDERED** That the Clerk shall cause to be created and maintained a miscellaneous file with the title "In the matter of Howard E. Leventhal " and case number 14 C 5021. The miscellaneous file shall serve as the repository of this order and any order or minute order entered pursuant to this order. The Clerk will also maintain a miscellaneous docket associated with the file. All orders retained in the file will be entered on that docket following standard docketing procedures. A brief entry will be made on the docket indicating the receipt of any materials from Mr. Leventhal.

**IT IS FURTHER ORDERED** That the Clerk shall cause a copy of this order to be mailed to Mr. Leventhal at 21720 W. Long Grove Rd., C330, Deer Park, Illinois 60010, the address given by Mr. Leventhal in documents received on October 16, 2014. Such mailing shall be by certified or registered mail, return receipt requested.

**ENTER:**
**FOR THE EXECUTIVE COMMITTEE**

_____
Chief Judge

Dated at Chicago, Illinois this 15th day of January, 2015

# GOVERNMENT EXHIBIT 4

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

In the Matter of      )
                        )     Civil Action No.
Malgorzata J. Kubiak     )     15 C 0353
                        )
                        )

## EXECUTIVE COMMITTEE ORDER

Malgorzata J. Kubiak has filed the following cases in the Northern District of Illinois:

| CAPTION | DATE FILED | JUDGE |
|---|---|---|
| 09 C 8030 Leventhal et al v. Battaglia et al | 12/29/09 | Gottschall |
| 12 C 6849 Kubiak v. Meltzer et al | 08/27/12 | Dow |
| 14 C 6691 Kubiak v. Peterson | 08/29/14 | Shadur |

All of the cases have been terminated due to the frivolous nature of the complaint, failure to state a claim, or remand to the Circuit Court of Lake County.

It is the judgment of the Executive Committee that reasonable and necessary restraints must be imposed upon Ms. Kubiak's ability to file new civil cases in this District *pro se*. Cases in existence prior to the entry of this order are not affected by this order and shall proceed as usual.

**IT IS HEREBY ORDERED BY THE EXECUTIVE COMMITTEE** in its capacity as the supervisor of the assignment of cases, that ------

1)    Ms. Malgorzata J. Kubiak, or anyone acting on her behalf, is enjoined from filing any new civil action or proceeding in the United States District Court for the Northern District of Illinois without first obtaining leave by way of the following procedures:

     a)    Any materials Ms. Kubiak, or anyone acting on her behalf, wishes to submit for filing shall be delivered to Room 2050, Office of the Clerk at the Courthouse in Chicago. Only the Clerk or deputies specifically designated by the Clerk may accept such documents.

     b)    Where the document submitted is a complaint, it shall be accompanied by a motion captioned "Motion Seeking Leave to File Pursuant to Order of

Executive Committee." That motion shall, in addition to requesting leave to file the complaint, include a sworn statement certifying that the claims raised by or on behalf of Ms. Kubiak in the complaint are new claims never before raised in any federal court.

c)   Whenever Ms. Kubiak submits a document for filing, the clerk or designated deputy shall accept the papers, stamp them received, docket them, and forward them to the Executive Committee.

2)   The Executive Committee will examine any complaints submitted by or on behalf of Ms. Kubiak to determine whether they should be filed.

3)   If Ms. Kubiak seeks leave to proceed *in forma pauperis*, the Committee will also determine if such leave should be granted. The Committee will deny leave to file any complaints if they are legally frivolous or are merely duplicative of matters already litigated. The Committee may deny leave to file any complaints not filed in conformity with this order.

4)   If the Executive Committee enters an order denying leave to file the materials, the clerk shall retain the order in a miscellaneous file with the title "In the matter of Malgorzata J. Kubiak" and cause a copy of the order to be mailed to Ms. Kubiak. The submitted documents shall be returned to Ms. Kubiak.

5)   If the Executive Committee enters an order granting leave to file the materials, the clerk will cause the materials to be stamped filed as of the date received and shall cause the case to be assigned to a judge in accordance with the rules. The clerk shall also cause a copy of the order to be mailed to Ms. Kubiak.

6)   Ms. Kubiak's failure to comply with this order may, within the discretion of the Executive Committee, result in her being held in contempt of court and punished accordingly.

7)   Nothing in this order shall be construed -----

a)   to affect Ms. Kubiak's ability to defend herself in any criminal action,

b)   to deny Ms. Kubiak access to the federal courts through the filing of a petition for a writ of habeas corpus or other extraordinary writ, or

c)   to deny Ms. Kubiak access to the United States Court of Appeals or the United States Supreme Court.

**IT IS FURTHER ORDERED** That any password issued to Malgorzata J. Kubiak for access to the electronic filing system shall be disabled.

**IT IS FURTHER ORDERED** That the Clerk shall cause to be created and maintained a miscellaneous file with the title "In the matter of Malgorzata J. Kubiak " and case number 15 C 0353. The miscellaneous file shall serve as the repository of this order and any order or minute order entered pursuant to this order. The Clerk will also maintain a miscellaneous docket associated with the file. All orders retained in the file will be entered on that docket following standard docketing procedures. A brief entry will be made on the docket indicating the receipt of any materials from Ms. Kubiak.

**IT IS FURTHER ORDERED** That the Clerk shall cause a copy of this order to be mailed to Ms. Kubiak at 21720 W. Long Grove Rd, C330, Deer Park, Illinois 60010, the address given by Ms. Kubiak in documents received on September 24, 2014. Such mailing shall be by certified or registered mail, return receipt requested.

**ENTER:**
**FOR THE EXECUTIVE COMMITTEE**

_____
Chief Judge

Dated at Chicago, Illinois this _15_ day of January, 2015

# GOVERNMENT

# EXHIBIT 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HOWARD E. LEVENTHAL,

                            Plaintiff,

-against-

WINSTON M. PAES, MARY A.
HANDELAND, LORETTA LYNCH,
CHRISTOPHER DELZOTTO, LORRAINE
MARX, CHRISTINE KLOTZ, JANE
PROBST, CHARLES COLODNY, GENE
SCHENBERG, AMG THE FAMILY
DOCTORS, and ADVOCATE MEDICAL
GROUP,

                            Defendants.

**<u>MEMORANDUM</u>**
**<u>DECISION AND ORDER</u>**

17 Civ. 2496 (BMC)

**COGAN**, District Judge.

       Plaintiff Howard Leventhal, currently incarcerated in the Federal Correctional Institute in Pekin, Illinois, brings this *pro se* action pursuant to "the Constitution of the United States, the Bill of Rights, the 1st, 5th, 8th and 14th Amendments,[1] the Parental Kidnapping Prevention Act and Uniform Child Custody Jurisdiction Act (28 U.S.C. [§] 1738A), 28 U.S.C. [§] 1367, the Intercountry Adoption Act (42 U.S.C. [§] 14901), <u>Bivens v. Six Unknown Named Agents [of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971)], Illinois State Law, Common Law of Torts[,] and other applicable law." The Court grants plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 for the purpose of this Order and dismisses the complaint for the following reasons.

---

[1] Although Leventhal does not list 42 U.S.C. § 1983 by statute, his constitutional claims necessarily implicate § 1983 as it is the vehicle by which litigants vindicate their constitutional claims.

## BACKGROUND

In October 2013, the United States Attorney for the Eastern District of New York, acting through Assistant U.S. Attorney ("AUSA") Winston Paes, the first-named defendant in this action, unsealed a criminal complaint against Leventhal, charging him with wire fraud, in violation of 18 U.S.C. § 1343, and aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1), 1028A(b), and 1028(c)(5).

The complaint alleged that Leventhal, as the president or managing officer of several entities, including mHealth Technologies Corp., formerly named Neovision USA, Inc. and Heltheo, Inc., entered into certain financing agreements with investors on the basis of false information, namely that his company had entered into a lucrative agreement with Health Canada, the department of the Canadian government with responsibility for national public health. To further his fraud, Leventhal provided the investors with a fraudulent agreement between his company and Health Canada and fabricated bank statements showing millions of dollars in transactions and payments from Health Canada.

In December 2013, Leventhal pleaded guilty to both counts. Leventhal was released on bail and subject to supervision in Chicago. On further investigation by the Government and after a hearing in September 2015, the Court revoked Leventhal's bail. The Government established at the hearing that Leventhal, while out on bail and through an alias, had created a purported non-profit entity, altered letters from elected officials, and used those letters to induce an investor to invest tens of thousands of dollars, much of which were used for personal expenses.

For a host of reasons, including the bail revocation and Leventhal's decisions to proceed counseled at times and *pro se* at others, Leventhal was not sentenced until December 2016, at which time the Court sentenced him to a total of five years in federal custody. Now as a federal

prisoner, he brings this lawsuit, principally against the AUSA that prosecuted him, in addition to several other defendants, alleging a mass of charges.

## DISCUSSION

The Prison Litigation Reform Act (the "PLRA") requires a district court to screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint, or any portion of the complaint, if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915A(b)(1); see also Liner v. Goord, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (noting that, under the PLRA, *sua sponte* dismissal of frivolous prisoner complaints is not only permitted but in fact mandatory). Similarly, pursuant to the *in forma pauperis* statute, the Court must dismiss an action if it determines that it "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

A complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).  Thus, *pro se* complaints are "to be liberally construed," Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012), and interpreted "to raise the strongest arguments that they suggest," Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

Plaintiff brings this action pursuant to several statutes and laws, alleging (i) the unconstitutional denial of his right to intimate association with his adopted daughter; (ii) deliberate indifference to his health, life, and safety; (iii) denial of due process; (iv) denial of his right to privacy; (v) defamation; (vi) fraud; (vii) breach of contract; (viii) tortious interference; and (ix) intentional infliction of emotional distress. In addition to the AUSA who prosecuted him, Leventhal names as defendants the lead FBI agent who investigated him, the former Attorney General, Leventhal's ex-wife, his ex-wife's mother and sister, his former physician, and a band of characters who had the misfortune of knowing Leventhal and getting on his bad side during the course of the criminal prosecution.

Not only is the complaint frivolous on its face, but it is also a transparent attempt to harass a wide variety of people, including individuals who have had to defend against Leventhal's abuse of the legal process in the past, including his ex-wife. In essence, the complaint and Leventhal's affidavit allege that the AUSA, in conspiracy with the other defendants, orchestrated the above-named deprivations of Leventhal's rights. In addition, he seeks a court order modifying and enforcing his visitation rights with his adopted daughter.

The details underpinning his frivolous conspiracy legal theory is nothing more than Leventhal's petty and irrational fury at the federal prosecutor who convicted him. But such resentment cannot make up the basis of a claim alleging prosecutorial misconduct. It is well established that a prosecutor acting "within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983." Shmueli v. City of New York, 424 F.3d 231, 236 (2d Cir. 2005) (internal quotations omitted). "Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New

4

<u>York</u>, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations omitted).  "A prosecutor is . . . entitled to absolute immunity despite allegations of his knowing use of perjured testimony' and the 'deliberate withholding of exculpatory information," because "[a]lthough such conduct would be reprehensible, it does not make the prosecutor amenable to a civil suit for damages."  <u>Shmueli</u>, 424 F.3d at 237 (internal quotation marks omitted).  Further, absolute immunity for prosecutorial acts can be defeated only if the prosecutor is alleged to have acted in the complete absence of jurisdiction, which is not the case here.  <u>Shmueli</u>, 424 F.3d at 237.

The Supreme Court, in finding that prosecutorial immunity is absolute, reasoned that "suits against prosecutors for initiating and conducting prosecutions could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions."  <u>Burns v. Reed</u>, 500 U.S. 478, 485 (1991) (internal quotation marks omitted).  This is exactly what has happened here.  Leventhal has funneled his resentment at getting caught, prosecuted, and convicted against the AUSA, without regard to the facts that Leventhal pleaded guilty and even recognizes in his complaint (and at sentencing) that he broke the law.  Nowhere is Leventhal's resentment more clear than in his complaint where, in the same breath, he compares the massacre of indigenous Americans and slavery as national mistakes "competing for top billing" with the decisions permitting the AUSA to emigrate to the United States from South Asia, naturalize, get his law license, and become an AUSA.  The Court will not permit Leventhal to harass the prosecutor, the former Attorney General, and the FBI agent who simply did their jobs.  Prosecutorial immunity protects the first two and qualified immunity, at a minimum, protects the FBI agent.

Nor will the Court permit Leventhal to sue the witnesses against him, whether they bore witness through their sentencing submissions, affidavits to the Court, or during hearings.  <u>See</u>

<u>Rehberg v. Paulk</u>, 566 U.S. 356, 367 (2012) ("[A] trial witness has absolute immunity with respect to any claim based on the witness'[s] testimony.").

Once the Court excises those allegations relating to Leventhal's sprawling prosecutorial misconduct conspiracy, which are dismissed as baseless, frivolous, or barred by some form of immunity, the remainder of the complaint relates to his custody battle with his ex-wife, which is also dismissed.  No matter how many inapplicable statutes Leventhal can marshal that touch on adoption or children, the "domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees."  <u>Elk Grove Unified Sch. Dist. v. Newdow</u>, 542 U.S. 1, 12 (2004), <u>abrogated on other grounds by</u> <u>Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 134 S. Ct. 1377 (2014).  And while there may be "rare instances . . . in which it is necessary to answer a substantial federal question that transcends or exists apart from the family law issue," this is not one of those cases.  <u>Id.</u> at 13.  This case is just another attempt by Leventhal to re-litigate a child custody order, with Leventhal seeking a "permanent order enforcing and mandating the visitation and communication provisions under [the custody dispute action], modified to suit [Leventhal's] current status as a prison inmate," in addition to family counseling sessions with his daughter.  The Court will not do that.

## CONCLUSION

Accordingly, the complaint, filed *in forma pauperis*, is dismissed for failure to state a claim.  <u>See</u> 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).  The Court has considered whether to grant plaintiff further leave to amend his complaint and determines that amendment here would be futile.  <u>See, e.g.</u>, <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112 (2d Cir. 2000) (finding leave to replead futile where the complaint, even when read liberally, did not "suggest[] that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe").

The Clerk is directed to enter judgment, dismissing the complaint. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Digitally signed by Brian M. Cogan

_____
U.S.D.J.

Dated:  May 9, 2017
        Brooklyn, New York

GOVERNMENT
EXHIBIT 6

# Affidavit of Mary Handeland

Comes now the undersigned, Mary Handeland and states as follows:

1. I am over the age of 21 years and I reside in the State of Wisconsin.

2. I was married to Howard Leventhal in 1999. We divorced in 2008.

3. I am the adoptive mother of our daughter, Amelia J. Handeland.

4. On June 21, 2019, The State of Wisconsin, Circuit Court Ozaukee issued 2019-CV000220, an Injunction – Harassment on my behalf against Howard Leventhal. **Exhibit A**

5. Section 9, of the Harassment Injunction, 2019-CV000220, outlines the following prohibited conduct: *"The Respondent has used excessive litigation to harass and for no legitimate purpose. In Wisconsin the Respondent shall not commence litigation concerning the Petitioner without the consent of the Court. In other Jurisdictions the Respondent shall provide a copy of this Injunction to the Court at the time of commencement when the litigation concerns the Petitioner."*

6. On May 18, 2020, the State of Wisconsin filed 2019-CM-000172 and issued one count of violating the Harassment- Retraining Order pursuant to Wisconsin State Statute 813.127(7). **Exhibit B**

7. On September 13, 2019, the State of Wisconsin filed 2019-CM-000312 and issued two counts of violating the Harassment- Retraining Order pursuant to Wisconsin State Statute 813.127(7). **Exhibit C**

8. On August 29, 2019, the State of Wisconsin filed 2019-CM-00032 and issued five counts of violating the Harassment- Retraining Order pursuant to Wisconsin State Statute 813.127(7). **Exhibit D**

9. On July 30, 2019, Howard Leventhal moved to remove the decision of the Ozaukee County Circuit Court's issuance of the Injunction to the Eastern District of Wisconsin., 2:19-cv-01100-LA Leventhal v. Handeland et al. This case was dismissed and remanded to the Ozaukee County Circuit Court. On October 29, 2019, Howard Leventhal filed an Appeal (2019AP002072) which was subsequently dismissed pursuant (Wisconsin) rule 809.83(2) on December 18, 2019. **Exhibit E**

10. On February 2, 2018, Howard Leventhal filed a Federal complaint in the US District Court of Minnesota, later transferred to the Eastern District of Wisconsin, 2:2018-CV-00181, Leventhal v. Boline et al claiming damages of $5,324,400 and naming, my sister, my mother, my attorneys, an Ozaukee County Court Commissioner, Ozaukee County Judge, and other Ozaukee County Court officials and myself as defendants. On May 2, 2018, the Eastern District of Wisconsin issued an order dismissing the suit with prejudice as frivolous. **Exhibit F**

11. On April 18, 2019, Judge Brian M. Cogan, Eastern District of New York issued a Memorandum Decision and Order in case 1:13-cr-00695, stating in part, *"However, defendant has filed several other lawsuits – including one against the prosecutor in this case, see Leventhal v. Paes, No. 17-cv-2496 (E.D.N.Y) – and as was discussed in Paes and during defendant's sentencing, plaintiff uses frivolous litigation as a weapon to harass the people who upset him. As is demonstrated below, the instant motions do not have any merit, but instead, serve as the next round of defendant's relentless attempt to lash out at others through the judicial process."* **Exhibit G**

12. On August 18, 2017, Howard Leventhal sent a letter to Ozaukee County Court Commissioner, Barry Boline. This letter states in part, *"Set forth below is a set of*

*requirements and conditions that must be brought into effect by 7 pm 8/29. If these minimal*

*conditions are not brought into effect by agreed order or any other method by 7pm on 8/29*

*and not one minute later – I will irrevocably initiate a litigation campaign in federal and*

*state court against Mary Handeland and all who support her inhumane actions in this*

*matter. Such a campaign, if commences will commence on 8/30/17 and it will never end*

*while I am alive.*" **Exhibit H**

13. On August 25, 2015, Judge Goldgar, in The United States Bankruptcy Court of the
    Northern District of Illinois, 1:2014cv02770, entered Disciplinary Proceedings and issued
    an Order Imposing Restriction on Future filings in the Bankruptcy Court in this District.
    **Exhibit I**

14. On April 20, 2017, Howard Leventhal filed a complaint in the District Court of Central
    Illinois 17-1167.  On April 26, 2017, the case was transferred to the Eastern District of
    New York, 1:17-cv-02496-BMC-LB Leventhal v. Paes et al. and damages of
    $9,771.894.51. Named defendants include my mother, my sister, the former AUSA in the
    EDNY, former Attorney General Loretta Lynch, myself, and others. On May 16, 2017,
    Judge Brian M. Cogan issued an order and stated the following, *"Denied as frivolous. If*
    *defendant does not ceases filing frivolous motions, he is going to be enjoined from filing*
    *anything without leave of Court."* **Exhibit J**

15. On March 30, 2009, Howard Leventhal filed 09 C 1929, to remove our divorce case from
    the Circuit Court of the Nineteenth Judicial Circuit Lake County, 05-D-808 to the Northern
    District of Illinois. On April 3, 2009, the District Court entered a Memorandum Option and
    Order, *"...the district court lacks subject matter jurisdiction, and the case is ordered*
    *remanded to the state court system".* **Exhibit K**

16. On February 5, 2009, the Circuit Court of the Nineteenth Judicial Circuit Lake County Illinois granted a Preliminary Injunction in the divorce case, 05-D-808. The Preliminary Injunction states in part, *"...the Court finds that the actions of Howard Leventhal in threatening to sue Mary Handeland in all 22 judicial circuits of the state of Illinois was intended to intimidate and to harass Mary Handeland."* **Exhibit L**

17. On December 29, 2008, Howard Leventhal filed a complaint in the Northern District of Illinois, 1:08-cv-07374 Leventhal v. Handeland et al naming, my sister, my mother, my legal counsel, myself, and others as defendants. On January 20, 2009, the case was dismissed for lack of Jurisdiction. **Exhibit M**

Further affiant saith not.

I SWEAR OR AFFIRM THAT THE ABOVE AND FOREGOING REPRESENTATIONS ARE TRUE AND CORRECT TO THE BEST OF MY INFORMATION, KNOWLEDGE, AND BELIEF.

12/29/2020

Date

Mary Handeland

STATE OF WISCONSIN

COUNTY OF OZAUKEE

I, the undersigned Notary Public, do hereby affirm that John Doe personally appeared before me on the 29th day of December 2020, and signed the above Affidavit as his free and voluntary act and deed.

Notary Public

**FILED**
**06-21-2019**
**Ozaukee County, WI**
**Mary Lou Mueller CoCC**
**2019CV000220**

**BY THE COURT:**

**DATE SIGNED: June 21, 2019**

Electronically signed by John R. Storck
Circuit Court Judge

---

**STATE OF WISCONSIN, CIRCUIT COURT, <u>OZAUKEE</u>** _____ **COUNTY**

☐ Amended

# INJUNCTION – Harassment
## (Order of Protection - 30711)

Case No. **2019CV000220** _____

## PETITIONER (PERSON TO BE PROTECTED)

| **Name of Petitioner** *(First, Middle, Last)* | **Date of Birth of Petitioner** |
|---|---|
| Mary Handeland | 10/04/1954 |

**-VS-**

## RESPONDENT/DEFENDANT

**Name of Respondent/Defendant** *(First, Middle, Last)*
Howard Leventhal

| **SEX** | **RACE** | **DOB** | **HT** | **WT** |
|---|---|---|---|---|
| M | WH | 11/04/56 | 5'6" | 170 |

| **HAIR COLOR** | | **EYE COLOR** | |
|---|---|---|---|
| Grey | | Brown | |

Respondent's/Defendant's Street Address, City, State, Zip
825 N Christiana Ave
Chicago IL 60651

Please specify Petitioner's relationship(s) to Respondent/Defendant:

☐ spouse  ☐ cousin  ☐ adoptive parent
☒ former spouse  ☐ sibling  ☐ grandparent
☐ person in dating relationship  ☐ parent  ☐ child (biological/adoptive/step)
☐ current or former live-in  ☐ step parent
relationship
☐ Other: [Be specific] _____

**Respondent's/Defendant's Distinguishing Features**
(such as scars, marks or tattoos)

☐ None known.

| **CAUTION:** *(Check all that apply)* | ☐ Respondent/Defendant has access to weapon(s).  Type of weapon(s): _____ |
|---|---|
| | Location of weapon(s): _____ |
| | ☐ Weapon(s) were involved in an incident [past or present] involving the petitioner. |

## THE COURT FINDS:
Findings are on the following page(s) of this injunction.

## THE COURT ORDERS:
Orders are on the following page(s) of this injunction.

## THIS INJUNCTION SHALL BE EFFECTIVE UNTIL June 21, 2023
Not to exceed 4 years or 10 years under §813.125(4)(d), Wis. Stats.

## NOTIFICATIONS/WARNINGS TO RESPONDENT/DEFENDANT:

This order shall be enforced, even without registration, and is entitled to full faith and credit in every civil or criminal court of any state, the District of Columbia, any U.S. Territory, and may be enforced by Tribal Lands (18 U.S.C. Section 2265; Wis. Stats. 813.128). Crossing state, territorial, or tribal boundaries to violate this order may result in federal imprisonment (18 U.S.C. Section 2262).

Federal law provides penalties for, and you may be prohibited from possessing, transporting, shipping, receiving, or purchasing a firearm, including, but not limited to, a rifle, shotgun, pistol, revolver, or ammunition, pursuant to 18 U.S.C. Section 922(g)(8). Additional notifications/warnings are on the following page of this injunction.

Violation of this order shall result in immediate arrest and is punishable by imprisonment not to exceed 9 months or a fine not to exceed $10,000 or both, payment of filing and service fees, and an order for GPS tracking.

# Only the court can change this Order.

### THE COURT FINDS:

1. The petitioner or person on behalf of the petitioner filed a petition alleging harassment under §813.125, Wis. Stats.

2. This court has personal and subject matter jurisdiction. The respondent has been properly served and had an opportunity to be heard.

3. There are reasonable grounds to believe the respondent engaged in harassment with intent to harass or intimidate the petitioner as defined in §813.125, Wis. Stats., as stated in the court record.

\* ☐ 4. There ☐ is    ☒ is not    clear and convincing evidence that the respondent may use a firearm to cause physical harm to another or to endanger public safety.

☐ 5. There is a substantial risk the respondent may commit 1st degree intentional homicide under §940.01, Wis. Stats., 2nd degree intentional homicide under §940.05, Wis. Stats., 1st, 2nd, or 3rd degree sexual assault under §§940.225(1), (2) or (3), Wis. Stats., or 1st or 2nd degree sexual assault under §§948.02(1) or (2), Wis. Stats., against the petitioner resulting in an injunction order for not more than 10 years.

☐ 6. The respondent was present in court and personally served with a copy of this order.

☐ 7. The respondent was present in court and personally served with a copy of the Order to Surrender Firearms and Notice of Firearm Surrender Hearing (CV-803) form.

☐ 8. The petitioner has requested the wireless telephone service provider transfer to the petitioner each telephone number(s) he/she or a minor child in his/her custody uses.

### THE COURT ORDERS:

☒ 1. The respondent cease or avoid the harassment of the petitioner.

☒ 2. The respondent avoid the petitioner's residence and/or any premises temporarily occupied by the petitioner.

☒ 3. The respondent avoid contact that harasses or intimidates the petitioner. *Contact includes: contact at petitioner's home, work, school, public places, in person, by phone, in writing, by electronic communication or device, or in any other manner.*

☐ 4. The respondent refrain from removing, hiding, damaging, harming, or mistreating, or disposing of, a household pet.

☐ 5. The respondent allow the petitioner or a family member or household member of the petitioner acting on his/her behalf to retrieve a household pet.

☒ 6.  The respondent to avoid contacting the petitioner or causing any person other than a party's attorney or law enforcement officer to contact the petitioner unless the petitioner consents in writing.

☐ 7.  The sheriff to accompany the petitioner and assist in placing the petitioner in physical possession of his/her residence, if requested.

☐ 8.  The wireless telephone service provider to transfer, within 72 hours of receipt of the order, to the petitioner each telephone number(s) he/she or a minor child in his/her custody uses. **(See Wireless Telephone Service Transfer Order in Injunction Case (CV-437) form for more details.)**

☒ 9.  Other:  *[List specific prohibited conduct or conduct that is substantially similar to that noted in the Petition.]*
        The Respondent has used excessive litigtion to harrass and for no legitimate purpose. In Wisconsin the Respondent shall not commence litigation concerning the Petitioner without consent of the Court. In other jurisdictions the Respondent shall provide a copy of this Injunction to the Court at the time of commencement when the litigation concerns the Petitioner.

☐ **THE COURT FURTHER ORDERS:**

   *[This order only applies if finding #4 above has been checked and the court has found by clear and convincing evidence that the respondent may use a firearm to cause physical harm to another or to endanger public safety.]

   1.  The respondent is prohibited from possessing a firearm until the expiration of this injunction. Possession of a firearm is a Class G Felony punishable by a fine not to exceed $25,000 or imprisonment not to exceed 10 years, or both. The respondent shall immediately surrender any firearm(s) that he or she owns or has in his or her possession to
       ☐ the sheriff of this county.
       ☐ the sheriff of the county in which the respondent resides: _____.
       ☐ another person [Name and Address] _____.
       **Note:**  Court shall complete the Notice of Firearms Possession Penalties (CV-432) form.

   2.  The respondent shall surrender firearms pursuant to Order to Surrender Firearms and Notice of Firearm Surrender Hearing (CV-803) form.

   3.  The respondent was not present in court and shall be served a copy of Notice of Firearm Surrender Hearing (CV-802) form.

If a party wants a de novo review of a court commissioner's decision, file a Motion for De Novo Hearing on a Temporary Restraining Order or Injunction, (CV-503) form. Any order entered by a circuit court commissioner remains in effect until the judge in the de novo hearing issues a final order.

**THIS IS A FINAL ORDER FOR THE PURPOSE OF APPEAL IF SIGNED BY A CIRCUIT COURT JUDGE.**

DISTRIBUTION:
1.  Court
2.  Petitioner
3.  Person filing on behalf of the petitioner
4.  Respondent
5.  Law Enforcement
6.  Other: _____

# Ozaukee County Case Number 2020CM000172 State of Wisconsin vs. Howard E Leventhal

## Case summary

| | | Case status |
| --- | --- | --- |
| | | Filed Only - Arrest warrant issued |
| **Filing date** | **Case type** | 05-19-2020 Leventhal, Howard E |
| 05-18-2020 | Criminal | |
| | **Address** | |
| **Defendant date of birth** | 1205 Prairie Brook Drive Unit D1, Palatine, IL 60074 | **Branch ID** | **DA case number** |
| 11-04-1956 | | 2 | 2020OZ000687 |

## Charges

| | | **Prosecuting agency attorney** | Printable version |
| --- | --- | --- | --- |
| **Responsible official** | **Prosecuting agency** | | |
| Cain, Steven M. | District Attorney | Sisley, Jeffrey A | |

Defendant owes the court: $0.00

| Count no. | Statute | Description | Severity | Disposition |
| --- | --- | --- | --- | --- |
| 1 | 813.125(7) | Violate/Harassment Restraining Order | Misd. U | |

## Defendant

| **Defendant name** | **Date of birth** | **Sex** | **Race** |
| --- | --- | --- | --- |
| Leventhal, Howard E | 11-04-1956 | Male | Unknown |

| **Address (last updated 05-19-2020)** | | |
| --- | --- | --- |
| 1205 Prairie Brook Drive Unit D1, Palatine, IL 60074 | **JUSTIS ID** | **Fingerprint ID** |

## Court record

| Date | Event | Court official | Court reporter | Amount |
| --- | --- | --- | --- | --- |
| 05-19-2020 | Arrest warrant issued for Leventhal, Howard E | Cain, Steven M. | | |
| | **Additional text:** | | | |
| | Emailed to Ozaukee County Sheriff's Dispatch | | | |
| 05-19-2020 | Motion in limine | | | |

# Ozaukee County Case Number 2019CM000312 State of Wisconsin vs. Howard E Leventhal

## Case summary

| | | |
|---|---|---|
| | | **Case status** |
| | | Filed Only - Arrest warrant issued |
| **Filing date** | **Case type** | 09-16-2019 Leventhal, Howard E |
| 09-13-2019 | Criminal | |
| | **Address** | |
| | 1205 Prairie Brook Drive | |
| **Defendant date of birth** | Unit D1, Palatine, IL | **Branch ID** | **DA case number** |
| 11-04-1956 | 60074 | 2 | 2019OZ001532 |

**Case(s) cross-referenced with this case**
2019CM000302

## Charges

Printable version

| **Responsible official** | **Prosecuting agency** | **Prosecuting agency attorney** |
|---|---|---|
| Cain, Steven M. | District Attorney | Sisley, Jeffrey A |

Defendant owes the court: $0.00

| Count no. | Statute | Description | Severity | Disposition |
|---|---|---|---|---|
| 1 | 813.125(7) | Violate/Harassment Restraining Order | Misd. U | |
| 2 | 813.125(7) | Violate/Harassment Restraining Order | Misd. U | |

## Defendant

| Defendant name | Date of birth | Sex | Race |
|---|---|---|---|
| Leventhal, Howard E | 11-04-1956 | Male | Unknown |

**Address (last updated 09-13-2019)**

| 1205 Prairie Brook Drive Unit D1, Palatine, IL 60074 | **JUSTIS ID** | **Fingerprint ID** |
|---|---|---|

**Attorneys**

| Attorney name | Entered | Withdrawn |
|---|---|---|
| Jansen, Bradley J | 09-16-2019 | 01-08-2020 |

## Court record

| Date | Event | Court official | Court reporter | Amount |
|---|---|---|---|---|

# Ozaukee County Case Number 2019CM000302 State of Wisconsin vs. Howard E Leventhal

## Case summary

**Case status**
Filed Only - Arrest warrant issued
08-29-2019 Leventhal, Howard E

**Filing date**
08-29-2019

**Case type**
Criminal

**Defendant date of birth**
11-04-1956

**Address**
1205 Prairie Brook Drive Unit D1, Palatine, IL 60074

**Branch ID**
2

**DA case number**
2019OZ001269

**Case(s) cross-referenced with this case**
2019CM000312

## Charges

Printable version

**Responsible official**
Cain, Steven M.

**Prosecuting agency**
District Attorney

**Prosecuting agency attorney**
Sisley, Jeffrey A

Defendant owes the court: $0.00

| Count no. | Statute | Description | Severity | Disposition |
|-----------|---------|-------------|----------|-------------|
| 1 | 813.125(7) | Violate/Harassment Restraining Order | Misd. U | |
| 2 | 813.125(7) | Violate/Harassment Restraining Order | Misd. U | |
| 3 | 813.125(7) | Violate/Harassment Restraining Order | Misd. U | |
| 4 | 813.125(7) | Violate/Harassment Restraining Order | Misd. U | |
| 5 | 813.125(7) | Violate/Harassment Restraining Order | Misd. U | |

## Defendant

| Defendant name | Date of birth | Sex | Race |
|----------------|---------------|-----|------|
| Leventhal, Howard E | 11-04-1956 | Male | Unknown |

**Address (last updated 08-29-2019)**
1205 Prairie Brook Drive Unit D1, Palatine, IL 60074

**JUSTIS ID**

**Fingerprint ID**

### Attorneys

| Attorney name | Entered | Withdrawn |
|---------------|---------|-----------|
| Jansen, Bradley J | 09-16-2019 | 01-08-2020 |

## Court record

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**MARY HANDELAND**
**and AMELIA HANDELAND,**

        **Petitioners,**

   **v.**                          **Case No. 19-C-1100**

**HOWARD LEVENTHAL,**

        **Respondent.**

---

## DECISION AND ORDER

On July 30, 2019, Howard Leventhal, proceeding *pro se*,[1] filed a notice of removal in this case, a petition by Leventhal's ex-wife Mary Handeland and their daughter Amelia Handeland for a restraining order (harassment) against Leventhal in the Ozaukee County Circuit Court. ECF No. 1; ECF No. 6-2. The state court held a hearing on June 21, 2019 and issued a four-year injunction against Leventhal. ECF No. 6-2. In his notice of removal, Leventhal asserts that I have diversity jurisdiction because the parties are diverse in citizenship and the amount in controversy exceeds $75,000. ECF No. 1 at ¶ 3. Federal question jurisdiction under 28 U.S.C. § 1331, Leventhal argues, is also appropriate based on a federal parental kidnapping statute and violations of his federal due process and free speech rights resulting from a conspiracy between the state court and the Handeland's. *Id.* at ¶ 4. Mary and Amelia Handeland moved to remand on August 27, ECF No. 5, a motion that I grant for the reasons below.

---

[1] A document filed *pro se* is "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). I have done my best to give documents filed by Leventhal a liberal construction.

## I. DISCUSSION

The party invoking federal jurisdiction has the burden of establishing its existence. *Schmidt v. Waterstone Bank SSB*, 753 F. App'x 414, 416 (7th Cir. 2019) (citing *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 562 F.3d 798, 802–03 (7th Cir. 2009)). Courts also have their own "independent obligation" to determine whether subject matter jurisdiction exists. *Hertz Corp. v. Friend*, 559 U.S. 77, 94, 130 S. Ct. 1181, 1193, 175 L. Ed. 2d 1029 (2010) (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006)).

**I do not have jurisdiction of this matter on the basis of diversity jurisdiction.** The amount in controversy to establish diversity jurisdiction must be greater than $75,000. 28 U.S.C. § 1332(a). In his notice of removal, Leventhal says that diversity is satisfied because the amount in controversy "exceeds $75,001 based upon Leventhal's counterclaims against Mary Handeland." ECF No. 1 at ¶ 3. But the removal statute, 28 U.S.C. § 1441(a), "does not permit removal based on counterclaims at all, as a counterclaim is irrelevant to whether the district court had 'original jurisdiction' over the civil action." *Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1748, 204 L. Ed. 2d 34 (2019). By asserting that his proposed counterclaims establish the amount in controversy, Leventhal has failed to establish the existence of diversity jurisdiction.

**I do not have jurisdiction of this matter on the basis of federal question jurisdiction, either.** A defense based on the United States Constitution or federal law does not make the suit removable, and *neither does a counterclaim or other similar filing based on federal law. Shannon v. Shannon*, 965 F.2d 542, 545 (7th Cir. 1992) (citing *Louisville & Nashville Railroad v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed.

126 (1908)) (emphasis added). *See also Salton, Inc. v. Philips Domestic Appliances & Pers. Care B.V.*, 391 F.3d 871, 875 (7th Cir. 2004) ("claims in a counterclaim cannot confer federal jurisdiction over a case"). Thus, Leventhal cannot use his counterclaims, defenses, or objections to the state court's order, even if based on federal constitutional rights such as free speech under the First Amendment, as a jurisdictional hook. Nor has Leventhal shown that the claims presented in the initial state court filing otherwise "arise under" federal law or implicate federal jurisdiction. As I wrote in the dismissal order in a prior case that Leventhal brought before this court,[2] the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738B, cannot be enforced through a private cause of action. *See Thompson v. Thompson*, 484 U.S. 174, 183 (1988). So, even if such a claim was brought by the Handeland's in state court, it would not confer federal jurisdiction.

Leventhal also claims that the existence of a conspiracy between the state court and the Handeland's, one that violated his federal due process and free speech rights, establishes federal jurisdiction. As outlined above, even if Leventhal had brought this as a counterclaim pursuant to 42 U.S.C. § 1983, the vehicle for pleading the violation of constitutional rights that Leventhal alleges, this could not confer federal jurisdiction as a counterclaim. Further, no state official is even a party to this action and § 1983 claims cannot be brought against private parties where no facts are pled that suggest Leventhal's ex-wife and daughter actually entered into an agreement with the state court to deprive him of his rights. *See Leventhal*, 2018 WL 2063351 at *3 (merely using the word "conspiracy" is not enough to adequately plead conspiracy for § 1983 claim). Here, Leventhal alleges only that his ex-wife sought a restraining order, the court

---

[2] *See Leventhal v. Boline*, 2018 WL 2063351, at *2 (E.D. Wis. May 2, 2018).

granted such an order after a hearing, and that the state court is corrupt. ECF No. 1 at ¶¶ 5-21. This is not enough to conjure federal jurisdiction.

Finally, even if I had subject matter jurisdiction here, I would be precluded from exercising such jurisdiction by the *Rooker–Feldman* doctrine, which prevents district courts from exercising jurisdiction over cases that are essentially appeals from state court orders. *See Lennon v. City of Carmel, Ind.*, 865 F.3d 503, 506 (7th Cir. 2017). *Rooker–Feldman* applies to "cases brought by state–court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). Such is the case here. The state court held a hearing on the Handeland's request for a harassment restraining order on June 21, 2019 that ended with the court granting that request and issuing a four-year injunction order. ECF No. 6-2. Subsequent to that order, Leventhal filed a motion for reconsideration in the state court and then decided to file a notice of removal in this court. He now complains about injuries caused by the court's order, specifically the prohibition of contact with his daughter and publishing criticism of his ex-wife online. It is clear that he wants this court to review and reverse an adverse order like an appellate court would, even moving this court for an order for mandatory mediation. ECF No. 4; ECF No. 9. Even if the state court decision was incorrect, this case falls within the *Rooker–Feldman* doctrine which would preclude exercising jurisdiction. *See Lennon*, 865 F.3d at 507 (*Rooker–Feldman* applies where injuries for which an aggrieved party seeks redress resulted from a state judgment, even if the judgment was wrong, unconstitutional or void). *See also Young v.*

4

*Murphy*, 90 F.3d 1225, 1230 (7th Cir. 1996) ("litigants who feel a state proceeding has violated their constitutional rights must appeal that decision through their state courts and thence to the Supreme Court."). I do not have jurisdiction over this matter and must remand.

## II. CONCLUSION

**THEREFORE**, **IT IS ORDERED** that Mary and Amelia Handeland's motion to remand (ECF No. 5) is **GRANTED** and Leventhal's outstanding motions (ECF No. 4, ECF No. 8, ECF No. 9, ECF No. 10, ECF No. 11, ECF No.12) are **DENIED** as moot. This matter is **REMANDED** to the Ozaukee County Circuit Court.

Dated at Milwaukee, Wisconsin, this 18th day of September, 2019.

s/Lynn Adelman
LYNN ADELMAN
District Judge

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**RECEIVED BY MAIL**

Howard E. Leventhal;
        Plaintiff

NOV 1 5 2017

v.

**Clerk, U.S. District Court**
**Duluth, Minnesota**

Barry Boline; Mary Lou          )
Mueller; Paul Malloy;           )
Ozaukee County Chief            )
Executive, Board and            )    Civil Action
Corporation Counsel;            )    Case No. 17-cv- 5|22 JNE/LIB
Mary Handeland; Christine       )
Klotz; Lorraine Marx;           )
Jane Probst; Kristina           )
Ebbott and Elizabeth            )
Groeschel;                      )
        Defendants              )    Amount Claimed: $5,324,400

### COMPLAINT

NOW COMES PLAINTIFF Howard E. Leventhal, a non-attorney pro

se and prisoner in federal custody, hereby respectfully submitting

this complaint under 28 USC § 1331; U.S. Const. Art IV, § 1, the

Full Faith & Credit Clause; Art. VI Clause 2, Federal Supremacy

Clause; 42 USC § 1983; 1st Am. Petition Clause; 5th Am. Due Process

Clause; 8th Am. Cruel & Unusual Punishment prohibition; 14th Am.

Equal Protection & Due Process; Civil Rights Act of 1964; Inter-

Country Adoption Act, 42 USC § 14901(b)(2); 28 USC § 1915(e);

28 USC § 1738A, Parental kidnapping Prevention Act & Uniform Child

Custody Jurisdiction Act; Sherman v. Welch and other applicable law.

In support of this Complaint, Plaintiff states as follows:

### A. BASIS OF FEDERAL JURISDICTION

1)    This matter is brought under 28 USC § 1331 whereunder federal

courts have original subject matter jurisdiction over civil actions

Page 1 of 26
**SCANNED**

NOV 1 5 2017

U.S. DISTRICT COURT DULUTH

arising under the Federal Constitution, laws or treaties of the
United States, as this Complaint. Although this matter alleges acts
which occurred in a domestic relations setting, under Sheppard v.
Welch, the Domestic Relations Exception is inapplicable when federal
court has subject matter jurisdiction under § 1331, as it does here.

2)    Neither the Rooker-Feldman nor Younger Abstention doctrines
apply because this complaint does not seek to enjoin proceedings
in state court and also because there is no adequate remedy at law
in state court, see Younger v Harris. Jurisdiction is rightfully
and correctly foursquare within the boundaries of this court because
of the panoply of harms by the Defendants against Plaintiff and his
minor child, an adopted Chinese orphan, prohibited under the federal
Intercountry Adoption Act, 42 USC § 14901 et seq; acts which rise
to constitutional gravity, without remedy in any court except
this court.

3)    Moreover, the acts set forth herein are prohibited under 42
USC § 1983 because the Defendants are a combination of individuals
acting under color of authority of state law to bring about const-
itutional deprivations against Plaintiff and his minor child - along
with private citizens acting in conspiracy with said state actors
(see Brokaw v. Mercer County). For at least the abovestated reasons
this court is the correct court for filing this complaint.

## TABLE OF CONTENTS

| Section | Heading | Page |
|---------|---------|------|
| A | BASIS OF FEDERAL JURISDICTION | 1 |
| B | POINTS & AUTHORITIES | 3 |
| C | PARTIES | 7 |

## TABLE OF CONTENTS (cont'd)

| Section | Heading | Page |
|---------|---------|------|
| D | REQUEST FOR ASSIGNED COUNSEL | 8 |
| E | REQUEST FOR PLRA SCREENING BY MAGISTRATE JUDGE | 9 |
| F | CAUSES OF ACTION | 9 |
|   | COUNT I. Intercountry Adoption Act Fraud | 9 |
|   | COUNT II. Denial of 14th Am Parenting Rights | 11 |
|   | COUNT III. Discrimination Based on Sex | 18 |
|   | COUNT IV. Child Prison Visitation Right Denial | 19 |
|   | COUNT V. Cruel & Unusual Punishment | 19 |
|   | COUNT VI. Full Faith & Credit Denial | 20 |
|   | COUNT VII. Federal Supremacy Violation | 21 |
|   | COUNT VIII. Civil Conspiracy to Deprive | 21 |
|   | COUNT IX. Equal Protection Violation | 22 |
| G. | DAMAGES | 23 |
| H. | RELIEF REQUESTED | |
|   | I. Under Declaratory Judgments Act | 24 |
|   | II. Monetary Relief under §1983 | 24 |
|   | III. Miscellaneous Relief | 24 |
| J. | SUMMARY & PRAYER | 25 |

### APPENDIX

| A. | In Forma Pauperis petition |
|----|-----|
| B. | Addresses for Service |
| C. | Exhibits |

- - -

### B. POINTS & AUTHORITIES

AUTHORITY [Point]

### Federal Statutes

**U.S. CONST ART III.** [Only Art. III judges have power to enact criminal punishment under federal statutes]

**U.S. CONST ART IV.** [§1: States req'd to give full faith & credit to judicial orders of other state courts]

## B. POINTS & AUTHORITIES

### Federal Statutes
(cont'd)

U.S. CONST ART VI CL. 2 [Doctrine of Federal Supremacy]

28 USC § 1331 [Federal courts jurisdiction in federal issues]

42 USC § 1983 [Personal liability of individual persons acting under color of state law to deprive const. rights]

U.S. CONST 1st AM. [Right to petition]

U.S. CONST 5th AM. [Right to due process]

U.S. CONST 8th AM. [Cruel & unusual punishments prohibited]

U.S. CONST 14th AM. [Equal prot., right to parent]

CIVIL RIGHTS ACT OF 1964 [Prohibition against civil rights depriv-
ation on basis of sex by actors receiving federal assistance]

42 USC § 14901 et seq [Intercountry Adoption Act (hereinafter "IAA")
protecting rights of children and parents of international adoption]

28 USC §§ 631 et seq [Power of federal judge to assign magistrate]

28 USC § 1915(e) [Indigent assignment of counsel]

28 USC § 1738 [Full Faith & Credit Statute]

28 USC 1738A [Parental Kidnapping Prevention Act ("PKPA") and
Uniform Child Custody Jurisdiction Act ("UCCJA"); full faith &
credit must be given to child custody determinations]

27 LED 2D 935 [Constitutional prohibition against sex discrimination
in public accomodations]

18 USC § 1001 [Criminal liability for false statements in federal
proceeding]

42 USC § 14944(a)(2)(c) [Penalties for false statements pursuant
to international adoption]

28 USC § 2201(a) [Declaratory Judgments Act]

42 USC 1997(e)(d) [Prison Litigation Reform Act, review at threshold]

### Federal Cases

Sheppard v Welch 2005 US Dist LEXIS 15451, 7th Cir 2005 [Domestic
Relations Exception inapplicable in civil actions under § 1331]

### Federal Cases
(cont'd)

<u>Mireles v. Waco</u> 502 US 9, 11, 112 S Ct 286; <u>Maestri v. Jutkofsky</u> 860 F 2d 50 (2d Cir 1988); <u>Brewer v Blackwell</u> 692 F 2d 387, 397 (5th Cir 1982) [Judicial officer not immune for actions though judicial in nature, taken in absence of jurisdiction]

<u>Younger v Harris</u> 401 US 37 [Rooker Feldman Doctrine inapplicable when complaint does not seek to enjoin state court proceedings and no adequate remedy in state matter where harm is irreparable without federal court intervention]

<u>Meyer v Nebraska</u> 262 US 390 [14th Amendment provides right to parent to exercise authority in raising child]

<u>Cooney v Rossiter</u> 583 F 3d 867, 7th Cir 2009 [Plaintiff may assert conspiracy to deprive child custody in §1983 claim]

<u>Brokaw v Mercer County</u> 235 F 3d 1000, 7th cir 2000 [While private citizen not ordinarily liable under § 1983, conspiracy with government actors confers liability]

<u>Santosky v Kramer</u> 455 US 745, 102 S Ct 1388 [Fundamental, const-itutionally protected liberty interest at stake in child custody]

<u>Prince v Massachusetts</u> 321 US 158, 64 S Ct 438 [Private realm of family life enjoys constitutional protection]

<u>M.L.B. v S.L.J.</u> 1996 519 US 103, 117 S Ct [Due process Clause requires appointment of counsel where parental status of indigent at stake]

<u>Elk Grove Unified School Dist v Newdow</u> 542 US1 [Domestic Relations Exception divests court of power to issue divorce, alimony or child custody decrees (no such relief requested here)]

<u>Bowen v Gilliard</u> US 587 [When parent/child relationship severed each has lost something of incalculable value]

<u>Farmer v Brennan</u> 511 US 825 [Deliberate indifference to substantial harm violates 8th Amendment prohibition against cruel and unusual punishment]

<u>Parham v J.R.</u> 442 US 584 [Confrontation over intimate family relationships distresses adult parents]

<u>WilsoREElv Mutayoba</u> 2014 US Dist LEXIS 12049 7th Cir [Court has discretion to recruit counsel to represent indigent litigant in appropriate cases]

<u>Moore v City of East Cleveland</u> 431 US 494 97 S Ct 1932 [Relationship parent has with child oftentimes most important part of life]

<u>Wisconsin v Yoder</u> 406 US 205, 92 S Ct 1526 [Court protects sanctity of family]

**Federal Cases**
(cont'd)

Thornburg v Abbott 490 US 401 [There is no "iron curtain" separating the prisons of this country from the Constitution]

Creason v City of Washington 435 F 3d 820, 8th cir 2006 [Equal protection clause requires gov't to treat all similarly situated people alike]

Johnson v City of Minneapolis 152 F 3d 859, 8th Cir 1998 [To state Equal Protection claim plaintiff must establish that he was treated differently from others similarly situated]

Frontiero v Richardson 36 LED2D 583, 411 US 677 [Denial of access to public facilities on basis of sex prohibited under Civil Rights Act of 1964]

Troxel v Granville 530 US 57 [Heightened constitutional protection of right to exert control over raising child, by parent]

## Additional Authority

Handeland v Leventhal Case No 05 D 808, 19th Judicial Circuit Court, Lake County, Illinois; Judgment of Dissolution of Marriage entered Aug 18, 2008 ["This judgment shall be construed under the general laws of the State of Illinois irrespective of the later domicile or residence of (the parties)" and "This court (Illinois court) expressly retains jurisdiction over this cause for purpose of enforcing all terms of this judgment"]

Wisc Stat § 700.215 [Authority for imposition of constructive trust against personal real estate in equitable relief for unjust enrichment and other causes of action]

McIntyre v Cox 68 Wisc 2d 597, 601, 229 NW 2d 613, 666 (1975) [Authority for imposition of constructive trust citing Restatement of Restitution]

Selfish Gene, The, Dawkins, Richard, Oxford University Press [There is no greater anguish for parent than loss of a child]

U.S. v. Raddatz 65 LED2d, 447 US 667 [Only Article III federal judge has power to punish federal crime]

Patel v US Bureau of Prisons 515 F 3d 809, 8th Cir 2009 [Civil rights claim must be based on some prohibited form of discrimination]

Quillon v Wolcott 434 US 246, 98 S Ct 549 [Due process clause offended when state forces family breakup without showing unfitness]

Newport v Facts Concerts 453 US 247 [Punitive damages may be awarded to punish civil rights violations]

### Additional Authority
(cont'd)

Snowden v Adams 814 F Supp 2d854, 7th Cir [Compensatory damages may be awarded in due process claim]

King v Fed. Bureau of Prisons 415 F 3d 634, 639, 7th Cir 2005 [Prison visitation may not be impeded between parent and child without due process]

### C. PARTIES

1) Plaintiff Howard E. Leventhal (hereinafter "Plaintiff" or "Leventhal) is an inmate in federal custody presently housed at the minimum security Federal Prison Camp, Duluth, Minnesota. He was sentenced for white collar financial fraud offenses to 60 months incarceration under US v Leventhal, Case no 13-cr-695 (BMC) in the Eastern Dist of New York, on December 16, 2016. With various credits he is scheduled for release to community during the first half of 2018 and to supervised release in January 2019.

2) Defendant Barry Boline is a Court Commissioner in Ozaukee County, Wisconsin, in his individual capacity.

3) Defendant Mary Lou Mueller is Clerk of Court of Ozaukee County, in her individual capacity.

4) Defendant Paul Malloy is an Ozaukee County judge, in his personal capacity.

5) Defendant Ozaukee County Chief Executive (name unknown) is an official of Ozaukee County Wisconsin, in his individual capacity.

6) Defendants the Ozaukee County Board members (names unknown) are officials of Ozaukee County Wisconsin, sued here in their individual capacities.

7) Defendant Ozaukee Corporation Counsel (name unknown) is an official of Ozaukee County Wisconsin, sued here in his/her individual capacity.

8) Mary Handeland is Plaintiff's ex-spouse and a resident of Ozaukee County.

9) Defendant Christine Klotz is Handeland's natural sister and a resident of Cedarburg (Ozaukee County) Wisconsin.

10) Defendant Lorraine Marx is Handeland's natural mother and a resident of Ozaukee County Wisconsin.

11) Defendants Jane Probst, Kristina Ebbott and Elizabeth Groeschel are present or former attorneys for Handeland.

## D. REQUEST FOR ASSIGNED COUNSEL

1) Under 28 USC § 1915(e) this Court may authorize and assign counsel under appropriate circumstances to indigent litigants. Plaintiff qualifies as indigent, see In Forma Pauperis petition attached hereto.

2) Although Plaintiff is modestly competent as pro se litigants go, this case is a matter of extreme gravity - the sanctified connection between a father and his daughter, which has been defiled unconstitutionally by the Defendants. There is no room for error. The minor child will be 17 years old by the time this complaint is read by the Court, with only 1 year remaining in her minority. Defendants have conspired together to grossly alter the mindset and parental connection between father and daughter. If there is no competent case forwarded in court now - right now - daughter and father may be irreparably harmed and separated forever.

3) Under M.L.B. v. S.L.J. the Due Process clause requires appointment of counsel where parental status of indigent is at stake, as in this case. Under Bowen v Gilliard, when parent/child relationship is severed, each has lost something of incalculable value. No amount of money on Earth will be able to cure the harm done by

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

HOWARD E. LEVENTHAL,

        **Plaintiff,**

    **v.**                          **Case No. 18-C-181**

BARRY BOLINE,
MARY LOU MUELLER,
PAUL MALLOY,
OZAUKEE COUNTY CHIEF EXECUTIVE,
OZAUKEE COUNTY BOARD MEMBERS,
OZAUKEE CORPORATION COUNSEL,
MARY HANDELAND,
CHRISTINE KLOTZ,
LORRAINE MARX,
JANE PROBST,
KRISTINA EBBOTT, and
ELIZABETH GROESCHEL,

        **Defendants.**

---

## <u>DECISION AND ORDER</u>

Plaintiff Howard E. Leventhal, a federal prisoner who is representing himself, filed a complaint alleging claims against his ex-wife and a judge of the Ozaukee County, Wisconsin, Circuit Court (among other defendants). This order resolves Leventhal's motion to proceed without prepayment of the filing fee and screens his complaint.

### *Plaintiff's Motion to Proceed without Prepayment of the Filing Fee*

The Prison Litigation Reform Act ("PLRA") applies to this case because Leventhal was incarcerated at the time he filed his complaint. The PLRA gives courts discretion to allow plaintiffs to proceed with their lawsuits without prepaying the $350 filing fee, as long as they comply with certain requirements. 28 U.S.C. § 1915. One of those requirements is that the plaintiff pay an initial partial filing fee. On March 6, 2018,

Magistrate Judge David E. Jones ordered Leventhal to pay an initial partial filing fee of $19.18. Leventhal paid this amount, and therefore I will grant his motion to proceed without prepayment of the full filing fee. He must pay the remainder of the filing fee over time in the manner I explain at the end of this order.

*Screening of Plaintiff's Complaint*

Federal law requires that I screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). I must dismiss a complaint if the prisoner has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

Leventhal alleges that, in 2002, he and his then-wife, defendant Mary Handeland, adopted a child from China. The parties divorced in 2008, while they were domiciled in Illinois. A state court in Lake County, Illinois, adjudicated the divorce and child-custody matters. That court entered an order governing the parties' rights to placement and visitation with their child. Years later, Leventhal was convicted of the federal crimes for which he is now in custody. He alleges that, both before and after he was imprisoned, Handeland interfered with his visitation rights under the Lake County order.

At some point, Handeland moved to Ozaukee County, Wisconsin, with her daughter. In 2017, she filed a motion asking the Ozaukee County Circuit Court to take jurisdiction of the custody case. Judge Paul Malloy of that court found that Ozaukee County had jurisdiction over the custody matter because the child had resided in the county for more than six months. Later, Leventhal filed a motion with the Ozaukee court

2

asking for various forms of relief. On October 31, 2017, a court commissioner, Barry J. Boline, denied these motions.

On November 15, 2017, Leventhal commenced this action in the District of Minnesota. On February 2, 2018, that court transferred venue to this court. When the case arrived here, it was assigned to a magistrate judge. After the magistrate judge determined that the case should be dismissed, the case was reassigned to me for entry of a dispositive order.

Leventhal asserts several claims against his ex-wife and Ozaukee court officials. (He also sues other defendants, including members of his ex-wife's family, his ex-wife's attorneys, and other Ozaukee County officials; however, his claims against these defendants are so feeble that they can be dismissed without further discussion.) Leventhal's first claim is against his ex-wife. He alleges that she committed fraud during the process of adopting their daughter from China and therefore violated the Intercountry Adoption Act, 42 U.S.C. §§ 14901–14954. The remedy he seeks is to have his ex-wife's status as the child's adoptive mother revoked. (Compl. at p. 11, ¶ 7.) However, this is not a claim that exists under the Intercountry Adoption Act. The Act states that it is not enforceable through private suits except as specifically provided elsewhere in the Act. 42 U.S.C. § 14954. No specific provision of the Act gives an adoptive parent a cause of action against another adoptive parent for fraud. Therefore, this claim must be dismissed.

Leventhal next asserts a series of claims based on the Ozaukee court's exercising jurisdiction over the custody case and denying his motions regarding visitation and other matters. (Compl. at p. 12, ¶ 3 & pp. 20–21.) Leventhal alleges that,

3

in exercising jurisdiction over the case, the Ozaukee court violated the Parental Kidnapping Prevention Act, 28 U.S.C. § 1738B, which requires state courts to give full faith and credit to the child-custody decrees of other state courts. *See Thompson v. Thompson*, 484 U.S. 174, 183 (1988). However, the Parental Kidnapping Prevention Act cannot be enforced through a private cause of action. *Id.* Therefore, to the extent that Leventhal's claims are based on this Act, they must be dismissed.

Leventhal also asserts a claim against his ex-wife and Ozaukee court officials under the Due Process Clause of the Fourteenth Amendment. He asserts that his ex-wife's involving the Ozaukee court in the custody dispute, and that court's deciding to exercise jurisdiction over the dispute, had the effect of denying him his parental rights, which are protected by the Due Process Clause. More specifically, he alleges that the Ozaukee court's rulings in the case deprived him of visitation time with his daughter that he would have received under the Lake County placement order. (Compl. pp. 16–18, ¶¶ 14–17.) In related claims, Leventhal alleges that the Ozaukee court officials who entered the orders did so because they were biased against him because he is a man, in violation of the Equal Protection Clause, and also because they wanted to punish him for his federal crime, in violation of the Eighth Amendment. (Compl. at pp. 18–19, 19–20 & 22–23.) He seeks damages under 42 U.S.C. § 1983.

Here, I note that these claims raise questions under at least two jurisdictional doctrines. The first is the domestic-relations exception, under which a federal court will not exercise jurisdiction over child-custody disputes. *See Struck v. Cook County Public Guardian*, 508 F.3d 858, 859–60 (7th Cir. 2007); *Jones v. Brennan*, 465 F.3d 304, 306–08 (7th Cir. 2006). The second is the *Rooker-Feldman* doctrine, which prevents district

4

courts from exercising jurisdiction over cases that are essentially appeals from state court orders.  *See Lennon v. City of Carmel, Ind.*, 865 F.3d 503, 506 (7th Cir. 2017). Although both of these doctrines might apply to this case, I will focus only on *Rooker-Feldman* because it is dispositive.

The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005).  That's this case.  Before he filed his federal complaint, Leventhal lost the dispute over the proper forum for the custody case.  He now complains about injuries caused by the Ozaukee court's rulings, namely, the denial of visits with his daughter. He has gone so far as to sue the court officials who signed the orders he complains about. He argues that the Ozaukee court's rulings were either wrong or unconstitutional or void, and he seeks damages from the court officials.  Because these claims fall within the *Rooker-Feldman* doctrine, they must be dismissed for lack of jurisdiction.  *See Lennon*, 865 F.3d at 507 (*Rooker-Feldman* applies whenever the injuries for which a plaintiff seeks redress resulted from a state judgment, even if the state judgment was wrong or unconstitutional or void).

Even if I had jurisdiction over the § 1983 claims, I would have to dismiss them. The Ozaukee County judge and the court commissioner who entered the orders that Leventhal complains about clearly have absolute immunity from suits for damages. *See, e.g., Myrick v. Greenwood*, 856 F.3d 487, 488 (7th Cir. 2017).  To the extent Leventhal's ex-wife is a defendant to the § 1983 claims, the claims would have to be

5

dismissed because she is a private party, not a person who acted under color of state law, as required for liability under § 1983. *See, e.g., West v. Atkins*, 487 U.S. 42, 48 (1988). Leventhal contends that he may bring a § 1983 claim against his ex-wife based on authority holding that a private party who conspires with the government to deprive a plaintiff of his rights is deemed to act under color of state law. *See, e.g., Cooney v. Rossiter*, 583 F.3d 967, 940 (7th Cir. 2009). But Leventhal has not come close to alleging that his ex-wife conspired with Ozaukee court officials. True, he uses the word "conspiracy," but that's not enough. *Id.* at 940–41. He must plead facts suggesting that his ex-wife and the court entered into an agreement to deprive him of his rights. No such facts appear in the complaint. Instead, Leventhal alleges only that his ex-wife initiated a case in the Ozaukee court, and that the court decided certain matters in his ex-wife's favor. Because these allegations in no way suggest a conspiracy between Leventhal's ex-wife and court officials, Leventhal cannot proceed against his ex-wife under § 1983.

Leventhal also alleges a claim entitled "child prison visitation right denial." (Compl. at p. 19.) In this claim, Leventhal contends that the Constitution grants him a right to visit with his child while in prison. Leventhal cites *King v. Federal Bureau of Prisons*, 415 F.3d 634 (7th Cir. 2005), which was a case involving a constitutional challenge to prison regulations. Leventhal seems to think that his ex-wife's refusing to bring the child to the prison for visits is itself actionable under cases such as *King*. But of course it is not. If the prison were refusing to allow Leventhal's ex-wife to bring the child to the prison to see him, then Leventhal might have a claim against prison officials. But cases such as *King* do not suggest that Leventhal's ex-wife violated the Constitution

6

by refusing to bring their child to the prison for visits in the first place.  Again, Handeland is a private party, not a state actor, and therefore cannot violate Leventhal's constitutional rights.  Accordingly, this claim will be dismissed.

The discussion above shows that Leventhal's claims are frivolous, that is, that they lack an arguable basis in law or fact.  *See Felton v. City of Chicago*, 827 F.3d 632, 635 (7th Cir. 2016).  And this is not the first time that Leventhal has filed a frivolous federal complaint arising out of the child-custody dispute with his ex-wife.  He filed a prior suit in the Eastern District of New York alleging some of the same claims against his ex-wife that he alleges here, including claims under the Intercountry Adoption Act and the Parental Kidnapping Prevention Act.  *See Leventhal v. Paes et al.*, E.D.N.Y. Case No. 17-cv-2496.  The Eastern District of New York dismissed that suit as frivolous, finding that the suit was "a transparent attempt to harass a wide variety of people . . . including his ex-wife."  Order of May 10, 2017, at 4.  It appears to me that the present suit is an attempt by Leventhal to continue his campaign of harassment.  For these reasons, I will dismiss this suit with prejudice as frivolous, under 28 U.S.C. § 1915(e)(2)(B)(i).  The dismissal will be with prejudice even though I dismissed some of the claims for lack of subject-matter jurisdiction, which normally results in a dismissal without prejudice.  This is so because, when a suit is frivolous and intended to harass, the court may dismiss it with prejudice to prevent the plaintiff from burdening another court with the same frivolous suit.  *Georgakis v. Ill. State Univ.*, 722 F.3d 1075, 1078 (7th Cir. 2013).  Finally, I have considered granting Leventhal leave to amend his complaint but will not do so because it is clear that he does not have any non-frivolous

7

claims that could be asserted in federal court, and that granting leave to amend would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

*Conclusion*

**THEREFORE**, **IT IS ORDERED** that plaintiff's motion for leave to proceed without prepayment of the filing fee (Docket No. 2) is **GRANTED.**

**IT IS FURTHER ORDERED** that the complaint and this action are **DISMISSED** with prejudice as frivolous.

**IT IS FURTHER ORDERED** that the Clerk of Court document that Leventhal has incurred a strike for purposes of 28 U.S.C. § 1915(g).

**IT IS FURTHER ORDERED** that the agency having custody of the plaintiff shall collect from his institution trust account the $330.82 balance of the filing fee by collecting monthly payments from plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If plaintiff is transferred to another institution, county, state, or federal, the transferring institution shall forward a copy of this order along with plaintiff's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where plaintiff is confined.

A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. of App. P. 3, 4. This court may extend this deadline if a party

8

timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A).

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. *See* Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment.  The court cannot extend this deadline. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin, this 2nd day of May, 2018.


  s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge

9

C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :
                                                            :        **MEMORANDUM DECISION**
            - against -                                     :        **AND ORDER**
                                                            :
                                                            :        13-cr-0695 (BMC)
HOWARD LEVENTHAL,                                           :        18-cv-3470 (BMC)
                                                            :
                        Defendant.                          :
                                                            :
----------------------------------------------------------- X

**COGAN**, District Judge.

Defendant has filed a motion for habeas corpus relief under 28 U.S.C. § 2255, which he

subsequently amended and supplemented,[1] a motion for "alternative relief," and a motion to

"substitute" the Judge in his case. For the reasons below, each motion is denied.

## BACKGROUND

Defendant was the President, Chief Executive Officer, and Chief Technology Officer of

mHealth Technologies Corp., which developed technology for the mobile health industry.

In 2012, defendant began contracting with "factoring" businesses to which he would sell

in exchange for cash fraudulent multi-million-dollar accounts receivable from Health

Canada – which is the department in the Canadian government with responsibility for its national

public health – related to a home health tablet that his company was developing. Defendant also

flouted his fake contracts with Health Canada to induce high net worth individuals and other

lenders to invest in his company. Over the course of the defendant's scheme, he solicited at least

---

[1] Because of defendant's *pro se* status, the Court does not construe the amended motion or its addendum to replace
his original motion under § 2255. Rather, the Court will consider the arguments that defendant raises in each filing.
The Court refers to the three filings together as defendant's "amended motion."

$26 million from potential investors, and the actual loss that resulted from his fraud was more than $1.3 million.

Defendant was arrested on October 22, 2013, and on December 23, 2013, he pled guilty to wire fraud (Count 1) and aggravated identity theft (Count 2) in violation of 18 U.S.C. §§ 1343 and 1028A(a)(1), respectively.  Defendant's Guidelines range for Count 1 was 87 to 108 months and he faced a mandatory 24-month consecutive sentence on Count 2.  On December 6, 2016, I sentenced defendant to 36 months on Count 1 and 24 months on Count 2, to run consecutive, for a total sentence of 60 months custody.  I also ordered defendant to pay restitution of $1,350,819.78.

Defendant has been in custody since September 11, 2015, when I revoked his bond because he violated several of its conditions, including by attempting to defraud an individual out of $55,000 through false representations and omissions.  Defendant has less than five months left to serve on his 60-month sentence.

Defendant filed a direct appeal with respect to one of the special conditions of supervised release, but he subsequently withdrew that appeal.  Defendant has not otherwise filed a direct appeal of his sentence, although in his district of confinement, he has (unsuccessfully) filed a motion for habeas corpus relief under 28 U.S.C. § 2241 to challenge, among other things, some of the conditions of his confinement related to his medical care.  See Leventhal v. Rios, No. CV 17-5441, 2018 WL 3129004, at *2 (D. Minn. June 26, 2018).

However, defendant has filed several other lawsuits – including one against the prosecutor in this case, see Leventhal v. Paes, No. 17-cv-2496 (E.D.N.Y) – and as was discussed in Paes and during defendant's sentencing, plaintiff uses frivolous litigation as a weapon to

2

harass the people who upset him.[2]  As is demonstrated below, the instant motions do not have

any merit, but instead, serve as the next round of defendant's relentless attempt to lash out at

others through the judicial process.

## DISCUSSION

### I.     Recusal Motions

After filing his amended motion for habeas relief and motion for alternative relief,

defendant filed a motion to "substitute" the Judge in his case.  I construe this as a motion for

recusal.  This motion is denied.

Defendant has self-designated his amended motion for habeas relief an "emergency"

motion and has asked me to recuse myself if my "bandwidth" does not allow me to treat his

amended motion as an emergent matter.  Defendant is similarly situated to every other federal

prisoner who has filed motions for the same relief.  I will not prioritize defendant just because he

thinks his case is more important than the rest, nor will I recuse myself just because I did not

address defendant's several motions on his preferred timeline.

Part of defendant's amended motion also requests that I recuse myself, claiming that I

harbor a personal animus against defendant.  In support of his argument, defendant includes a

laundry list of his non-criminal conduct that was discussed during sentencing and assumes that I

am prejudiced against him because of that conduct.  Defendant's assumption is wrong.  During

sentencing, I must necessarily consider a defendant's other criminal and non-criminal conduct.

This is not only routine, but consideration of each defendant's history and characteristics is

---

[2] Defendant also has a pending appeal in the instant case.  He has appealed this Court's denial of his motion for a
reduction of sentence under the First Step Act, Pub. L. No. 115-391 § 603 (2018), and to compel decision on some
of the motions that are the subject of this decision.  Defendant's motion for a reduced sentence also stated that if
defendant received the relief sought, he would withdraw his § 2255 motion.  This latter, provisional "offer" caused
his appeal to be labeled as being from a decision on a § 2255 motion, and this Court therefore was contacted by the
Second Circuit Clerk to grant or deny a certificate of appealability.  We have explained to the Clerk that since none
of this Court's prior orders before this one disposed of defendant's § 2255 motion, there was no ability to grant or
deny a certificate of appealability.

statutorily required.  See 18 U.S.C. § 3553(a).  I have no doubt in my ability to hear and determine defendant's case in an impartial manner, see generally 28 U.S.C. § 455, so I will not recuse myself from deciding his motion.

## II.      Amended Motion for Habeas Relief

Under 28 U.S.C. § 2255(a), a federal prisoner may claim the right to be released if their sentence was "imposed in violation of the Constitution or laws of the United States, or [if] the court was without jurisdiction to impose such sentence, or [if] the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  Generally, "claims not raised on direct appeal may not be raised on collateral review unless the defendant shows cause and prejudice."  Massaro v. United States, 538 U.S. 500, 504 (2003).  But claims of ineffective assistance of counsel can be raised for the first time in a § 2255 motion.  See id.

Defendant raises several issues in his amended motion for habeas relief.  For the reasons below, each point that defendant makes fails.

### A.  Conditions of Confinement

Defendant contends that the conditions of his confinement violate the Eighth Amendment for two reasons.  First, defendant argues that his confinement has severed his relationship with his daughter and deprived him of his "parental authority," because he has not seen his daughter in three years or spoken to her in two years.  Defendant also argues that the Bureau of Prisons ("BOP") has denied him necessary medical care for a pre-existing medical condition that defendant had when I sentenced him.

Neither of these claims are cognizable on a § 2255 motion.  That is because release from prison is not an appropriate remedy for either of these alleged constitutional violations.  Cf. Jiminian v. Nash, 245 F.3d 144, 146-47 (2d Cir. 2001) ("A motion pursuant to § 2241 generally challenges the execution of a federal prisoner's sentence, including such matters as . . . prison

4

conditions.  In contrast, § 2255 is generally the proper vehicle for a federal prisoner's challenge to his conviction and sentence.").

Because of this, the venue for defendant's challenge to the conditions of his confinement is only proper in the District of Minnesota, because that is where he is confined.[3]  See Rumsfeld v. Padilla, 542 U.S. 426, 443 (2004) ("The plain language of the habeas statute thus confirms the general rule that for core habeas motions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement.").

The same is true for defendant's related argument that his due process rights were violated because I sentenced him under the belief that the BOP would be able to provide him with adequate medical care and it has not.  This is just another way of making the same argument – that his conditions of confinement violate the Eighth Amendment – which cannot be raised in a § 2255 motion.

### B.  Prosecutorial Misconduct

Defendant argues that the prosecutor in his case engaged in several forms of misconduct.  First, defendant claims that the prosecutor did not disclose his "knowledge" that the BOP would not adhere to defendant's medical care plan; second, the prosecutor did not forward internally defendant's FOIA request seeking communications between the prosecutor and the BOP; and third, the prosecutor did not produce pursuant to a second FOIA request his communications with defendant's ex-wife which defendant claims would have shown she was blackmailed into making the statements she made during defendant's sentencing.

The first argument is frivolous.  The prosecutor has no control over the conduct of the BOP.  Although defendant contends that the prosecutor must have thrown away the care plan

---

[3] I take judicial notice of the fact that defendant is being held at the Duluth FPC in Duluth, Minnesota.  See https://www.bop.gov/inmateloc/ (last visited April 15, 2019).

created by an examining physician in advance of sentencing, defendant's relief is once again against the warden in an action under § 2241 in the District of Minnesota for a failure to provide defendant with adequate medical care.  If defendant disagreed with the outcome of his prior § 2241 action in that court, his avenue of relief was to file an appeal, not raise his claims in this court in a § 2255 action.

As for the second and third arguments, I have already addressed defendant's FOIA requests when I dismissed his related lawsuit.  See Leventhal v. Paes, 16-cv-3677 (E.D.N.Y. July 27, 2016).  Defendant's avenue of relief was on direct appeal of that decision, not a § 2255 motion about his unrelated criminal matter.  Moreover, these allegations are nothing but conjecture and do not merit additional discussion.

Defendant also claims that a federal agent "terrorized" defendant's doctor and threatened him into making false statements in a medical opinion and that the prosecutor called federal Bankruptcy Judge Goldgar and "goaded" Judge Goldgar into "hyper-inflating and exaggerating" one of his opinions, which included a finding that defendant uses litigation as a retaliatory weapon and was discussed at defendant's sentencing (which, of course, defendant contends it should not have been).  Defendant includes no evidence to support these contentions, so I will not address them any further.

Finally, defendant claims that the Presentence Investigation Report ("PSR") was wrong to represent that the BOP has the resources to provide mental health treatment to defendant while he is incarcerated.  Once again, this is not the responsibility of the prosecutor.  Defendant must bring his claim against the warden who is holding him under conditions that defendant claims violate the constitution.

### C.  Breach of Plea Agreement

Defendant claims that the Government breached the condition in the parties' plea agreement that the Government would not seek to invalidate points for defendant's acceptance of responsibility in his Guidelines calculation.  Under the plea agreement, the Government agreed not to take a position concerning where within the Guidelines range defendant's sentence should fall and that it would not make a motion for an upward departure from that range.  But the plea agreement also provided that that if defendant subsequently engaged in conduct that was relevant to sentencing, the Government would not be bound by those provisions.  The plea agreement also provided that if defendant violated any provision of the agreement, the Government would be relieved of its obligations, explicitly including its obligation to move for a downward adjustment for acceptance of responsibility.

Because defendant attempted to defraud an individual of $55,000 while he was out on bond, it seems clear that the Government did not breach the plea agreement, but rather, it was relieved of its obligations by the terms of that contract because of defendant's breach.

### D.  Ineffective Assistance of Counsel

Defendant claims that his defense counsel was constitutionally ineffective.  To raise a meritorious ineffective assistance of counsel claim under Strickland v. Washington, 466 U.S. 668 (1984), defendant must show two things:  first, that defense counsel's performance was deficient (by identifying acts or omissions that considered under all the circumstances were "outside the wide range of professionally competent assistance"), and second, that counsel's deficient performance prejudiced his defense (by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").  Bennett v. United States, 663 F.3d 71, 84 (2d Cir. 2011) (quoting Strickland, 466 U.S. at 690-

7

94).  As the Second Circuit has explained, this is a "highly demanding" and "rigorous" test.  See id. (internal citations omitted).

Defendant has challenged several of defense counsel's decisions, actions, and omissions. As a general matter, it appears that defendant takes issue with the fact that counsel conducted himself according to the law as it is written, rather than the law that defendant wants to be in place.  My findings as to each of defendant's challenges are as follows.

- Counsel's revelation to defendant (allegedly in violation of a court order) that defendant's ex-wife was the Government's confidential witness at defendant's bond revocation hearing has nothing to do with the sentence defendant is challenging, nor could this knowledge have prejudiced defendant in any way with respect to the outcome of his sentencing.

- Counsel's failure to move for specific performance of the plea agreement after the Government asked me to withhold points for acceptance of responsibility in defendant's Guidelines calculation did not prejudice defendant, because as the transcript of defendant's sentencing reflects, counsel did address specific performance of the plea agreement.  Moreover, I expressly considered points for acceptance of responsibility and found on my own review of the facts that defendant's post-plea conduct made it clear that he had not accepted responsibility, so he was not entitled to an adjustment for that.  For the same reason, I would not have required specific performance of the plea agreement, because defendant himself breached it when he committed a fraud while out on bond.

- Counsel's failure to assert the applicability of Rule 5K2.0(a)[4] of the United States Sentencing Guidelines ("USSG") was not deficient performance nor did it have a prejudicial effect on the outcome, because during sentencing, I considered extensively the evidence of mitigating factors in defendant's case, and defendant has not indicated what other facts or circumstances to which counsel should have pointed that were not taken into consideration by the USSG and that would have warranted a further downward departure from the Guidelines range.

- Counsel's failure to access the Medical Information Bureau database, which defendant argues would have proven that defendant's medical condition exists, was

---

[4] Defendant also challenges counsel's failure to assert the applicability of Rule 5K2.0(b), but because that sub-section of the rule applies to downward departures in child crimes and sexual offenses, it was clearly appropriate for counsel not to address it during sentencing.

not deficient nor did it have a prejudicial effect on the outcome because there is and
has never been a dispute about the existence of defendant's medical condition, so
there was no need for additional proof on the matter. I very carefully considered
defendant's serious medical condition and it was an important factor in his
sentencing – had he been healthy, I have no question his sentence would have been
higher.

- Counsel's refusal to serve a subpoena on the BOP for anonymous medical records of
10 random inmates with a similar medical condition to defendant was not deficient
because there is no showing that a random selection of inmates' medical records
would have altered the Court's reliance on the representations that the BOP could
appropriately treat an individual with defendant's medical condition. These
representations were not taken at face value, as defendant claims. Defendant was
evaluated by an accredited medical professional who opined that the BOP could
adequately care for an inmate in defendant's position. Moreover, I would have
quashed this subpoena as unduly burdensome and irrelevant to the sentencing
proceeding.

- Counsel's failure to object to what defendant calls a separation of powers
violation – which purportedly occurred when the prosecutor dictated to the Probation
Department what should go in defendant's PSR – was not deficient performance nor
did it prejudice the outcome. Although defendant characterizes unidentified
communications between the prosecutor and Probation as a "mandate" regarding the
$26 million intended loss figure, there is no evidence to suggest such an "order"
occurred (or was obeyed). The prosecutor has no legal or practical authority to
compel the Probation Department to take any position on anything – the Probation
Department works for the Court, not the Government – and I have seen too many
cases to count where they disagreed. This was not one of them. Moreover, as the
statement of reasons explains, I felt that the intended loss figure skewed the
Guidelines range too high and sentenced defendant well below that range as a result.

- Counsel's failure to move for an evidentiary hearing on other relevant conduct and
the 18 U.S.C. § 3553(a) factors was not deficient, as evidenced by the fact that I
denied a similar motion that defendant filed himself. Moreover, because defendant
does not include in his § 2255 motion who the witnesses would have been or to what
they would have testified, he has not shown that this failure prejudiced him in any
way.

- Counsel's conduct of purportedly shipping defendant's personal records "into a black
hole," and deliberately destroying his personal property are not cognizable through a
§ 2255 motion because these are personal items and are in no way relevant to or

9

otherwise prejudice defendant's case.  (The same is true for defendant's related argument that counsel failed to raise as a mitigating factor at sentencing the fact that defendant "was deprived of every last article of personal property" because of his bond revocation hearing.)

- Counsel's failure to object at defendant's bond revocation hearing to the inadmissibility of audio recordings of "interrogations" taken after defendant was arrested was not deficient, because defendant has not explained the circumstances surrounding these "interrogations" and a review of the record suggests that the only tape played was one recorded by the individual whom defendant attempted to defraud (and not a member of law enforcement).  Defendant has not shown his Fourth Amendment rights were implicated.

- Counsel's failure to assert the "harshness" of defendant's presentence confinement in the Metropolitan Detention Center as a factor for me to consider in sentencing under § 3553(a) was not deficient because a review of the transcript of the sentencing proceeding reveals that counsel did in fact raise this issue.  It was addressed in conjunction with defendant's medical condition as a mitigating factor warranting a variance from the Guidelines range and in conjunction with how defendant would be treated while incarcerated.

- Counsel's failure to find and bring to my attention during sentencing cases of other criminal defendants who committed similar crimes as defendant who were sentenced to less time was neither deficient nor prejudicial because defendant had the benefit of a fulsome sentencing hearing, prior to which the parties made several submissions on a myriad of issues and considerations.  Sentencing a criminal defendant is necessarily an individualized endeavor, and this is particularly true in defendant's case because of several unique personal characteristics.  Although I have an obligation to avoid unnecessary disparities in sentencing, defendant's unique facts and circumstances can certainly warrant a different – or longer – sentence than those imposed on other white-collar criminals (especially considering defendant continued to commit crimes while he was out on bond).  Just because defendant disagrees with my decision does not mean his counsel was deficient for failing to mention every single instance in which a white-collar criminal was sentenced to less time than defendant, or that I would have sentenced defendant to less time if those cases had been cited to me.

- Counsel's failure to object to venue during sentencing was not deficient, because defendant admitted during his plea allocution that as a part of his fraudulent scheme, defendant sent a fake contract to a federal agent located in Brooklyn.

10

- Counsel's decision to edit the mitigation report submitted in advance of sentencing, specifically counsel's decision to remove "further elaboration on" defendant's post-traumatic stress disorder ("PTSD") diagnosis and "discussion of" defendant's father's death, which defendant claims triggered his criminal conduct, does not fall outside the realm of acceptable professional conduct, nor did it prejudice the outcome of defendant's sentencing proceeding.  Defendant's own sentencing memorandum brought these issues to the attention of the Court, and defendant cannot challenge counsel's strategic decision of how much to emphasize any given point in his own submission.  (For the same reason, defendant's related argument that counsel's failure to ensure that I was fully aware of the "triggering" nature of his father's death fails to rise to the level of either deficient performance or prejudicial effect under <u>Strickland</u>.)

- Counsel's failure to object during sentencing to my purported statement that defendant "has a serious medical condition which may require immediate response" was not deficient because the transcript shows that I never said that.  I assume that defendant is referring to my consideration of his "very serious medical condition" as a mitigating factor in determining the appropriate length of his sentence, but there can be no ambiguity – as is the basis for defendant's argument here – that I was referring to defendant's known medical condition in that instance, so there was no need for counsel to object.

- Counsel's failure to file "formally captioned or formatted motion[s] or statement[s] of objections" did not prejudice defendant, because I considered every document filed, whether or not it was formatted in the manner defendant thinks it should have been.

- Counsel's failure to bring to my attention "widespread BOP medical incompetence" could not have prejudiced defendant because there was extensive discussion and consideration of his medical condition and whether the BOP could treat him during incarceration.

- Counsel's failure to file a post-judgment motion for defendant's admittance into the Residential Drug Abuse Program has nothing to do with the constitutionality of defendant's sentence, so it cannot be raised in a § 2255 motion.  (The same is true for defendant's argument that counsel knew about but failed to inform defendant of the BOP's alleged violations of the Second Chance Act's mandates regarding halfway houses and home confinement.  Defendant states that had he known of these violations he would have filed his § 2255 motion sooner, but the BOP's alleged conduct at large has nothing to do with defendant's sentence, so the timing of his motion does not matter at all with respect to this argument.)

- Counsel's failure to object to a victim letter provided by Gene Schenberg – despite allegedly having knowledge that Mr. Schenberg is a "professional victim," embezzled $100,000 from defendant's company, is a disgruntled former employee, and is an "outlier and a nutcase" – was not deficient because defendant provides no support for the truth of any of these statements.  Moreover, defendant has not shown how counsel's failure to object to one victim statement would have prejudiced the outcome, given that the intended loss amount was calculated at over $26 million and actual loss was calculated at $1.3 million.

- Counsel's failure to inform me that, after one of defendant's fellow inmates filed a character reference letter on his behalf, the prosecutor called the inmate's lawyer and threatened him with "amplified punishment" unless he submitted a false letter claiming that his first letter was not authentic was not deficient because there is no evidence that this happened.  Nor, for that matter, does it have anything to do with the constitutionality of defendant's sentence.

- Counsel's failure to object to the fact that I purportedly did not consider defendant's PTSD at sentencing and counsel's failure to assert that his PTSD warranted a downward departure under USSG § 5K2.0 was neither deficient nor prejudicial, because all of defendant's medical concerns were raised and given adequate consideration during the sentencing process.

- Counsel's failure to object to my purported use of the tem "narcissist" during sentencing was not deficient because a review of the transcript reveals that that I mentioned that one of defendant's own experts concluded that defendant has narcissistic tendencies, which is a fact from the record and not my own characterization.  In any event, it is not error for a court, in evaluating a defendant's history and characteristics, to note such tendencies, with or without an expert report.

- Counsel's failure to raise as a mitigating factor during sentencing the fact that defendant must go through the process of exhausting his administrative remedies with the BOP before seeking judicial relief to resolve inmate issues was not deficient because that is the law, well known to this Court.

- Counsel's failure to follow up on defendant's offer to the Government to act as a cooperating witness to "entrap likely terrorists," despite the fact that the prosecutor seemed "willing[] to listen," has nothing to do with defendant's sentence and is not cognizable on his § 2255 motion.

- Counsel's failure to object to my intrusion on defendant's parental rights (and by extension, the interference with his ability to spend time with his daughter) during sentencing was not deficient performance (or any type of violation of defendant's

right to intimate association as a parent with his daughter) because it is the result of defendant's own decisions to engage in criminal conduct. Defendant committed a serious crime. He knew or should have known that he could be incarcerated as a result. Incarceration necessarily interferes with familial relationships. Defendant must deal with the consequences of his actions like any other defendant.

- Counsel's failure to object to my "erroneous dismissal" of defendant's separate FOIA lawsuit at sentencing has nothing to do with defendant's sentence or the case in which counsel represented defendant, so it cannot provide the basis for an ineffective assistance of counsel claim here.

- Counsel's failure to bring to my attention defendant's proposed alternative electronic means of deterrence, which defendant claims would have prevented him from committing additional crimes, was not deficient nor did it have a prejudicial effect on his sentence, because defendant does not explain these alternative means of deterrence. Moreover, whatever they are, they would not have adequately reflected the fact that defendant committed a serious crime for which incarceration was an appropriate and necessary punishment.

- Counsel's failure to investigate the testifying agent's allegedly false statements that he made under oath during defendant's bond revocation hearing was not deficient nor did it prejudice the outcome, because defendant provides nothing other than his assertion that the facts to which the agent testified were false, and because defendant cannot show that counsel did not investigate these matters in ways other than by calling the individuals identified in the agent's testimony (as defendant suggests he should have done).

- Counsel's failure to inform me that the Government was allegedly monitoring defendant's privileged attorney-client communications with counsel (an accusation which is supported only by defendant's own sworn affidavit attached to his amended motion) has nothing to do with the constitutionality of his sentence and is not properly raised here.

- Counsel's failure to raise the fact that defendant would frequently soil himself while in custody and suffer embarrassment in front of other inmates as a result, as well as counsel's failure to document approximately 60 (unspecified) instances where defendant was denied medical care, was neither deficient nor prejudicial because counsel, the Government, and I addressed at length defendant's medical condition and the BOP's ability to provide him with adequate care while incarcerated before and during sentencing. Defendant's complaint is against the warden holding him, not counsel. In addition, I specifically took the hardship that imprisonment would cause

defendant because of his medical condition into account when I sentenced him, including the specific manifestation to which he refers.

- Counsel's failure to "more energetically" object to what defendant characterizes as my failure to explore his ex-wife's grudge against him was neither deficient nor prejudicial because defendant's family structure and history were considered at length during sentencing.  Moreover, defendant's qualm seems to be with the fact that he was not given a moment to interact with his daughter, allegedly because his ex-wife questioned his ability to be a good father, but that has nothing to do with the constitutionality of defendant's sentence, so it is not relevant here.

- Counsel's failure to raise the fact that defendant would be transported to custody by the "BOP's standard 'Con-Air' meat grinder" was neither deficient nor prejudicial because counsel has no control over the BOP, and more importantly, because this issue was raised and addressed during sentencing.  Counsel went above and beyond that which was constitutionally required of him with respect to advocating for defendant's medical care and treatment while in custody.

- Counsel's failure to raise during sentencing the "force majeure effect of the 2008 market crash" on the need for defendant to commit the crimes that he did was not deficient because the economic crash impacted the entire country, and it was by no means an excuse to commit fraud.

- Counsel's failure to raise as a mitigating factor defendant's "overwhelming volumes of evidence" that the Attorney General has relinquished control over the BOP, which is now in control of the BOP's labor union, has nothing to do with the constitutionality of his sentence and is not properly raised in this motion, because defendant's objection relates to the BOP's purported refusal to use halfway houses.

### *E. Venue*

Defendant argues that venue was improper in this case.  Rather than the Eastern District of New York, defendant claims that his case should have been heard in the Northern District of Illinois, because adjudicating his case in this district severed his ability to have a relationship with his daughter.

Defendant waived his right to challenge venue in his plea agreement when he agreed not to file an appeal or otherwise challenge his sentence I imposed a sentence of 132 months or

below.[5]  He therefore cannot raise this claim in his § 2255 motion (nor, for that matter, can he raise it for the first time under § 2255, because it is procedurally barred for having not been raised first on direct appeal).

Even assuming, however, that defendant could raise this issue in his § 2255 motion, it has no merit because defendant admitted during his plea allocution that:

> In furtherance of my financing efforts, I made use of the interstate wires, which included sending an e-mail to an undercover FBI agent in the Eastern District of New York that attached bogus agreements between my company and Health Canada for the mobile electronic medical tablet.  On the bogus contracts I sent, I forged the signature of Glenda Yeates, the Canadian Deputy Health Minister, at the time, which I did without her permission or lawful authority."

I even followed up with defendant and asked, "The question is, in connection with this fraud did you mail any documents to Brooklyn?"  Defendant confirmed, after speaking with his lawyer (different from his counsel at sentencing), that he e-mailed documents to Brooklyn.

According to defendant's own version of events – which he stated under oath – venue was proper in the Eastern District of New York.  See Fed. R. Crim. P. 18.

### F.  Sentence Disparities

Defendant argues that his sentence was erroneous in light of United States v. Klein, No. 11-CR-255, 2011 WL 6779309 (E.D.N.Y. Dec. 27, 2011), in which Judge Weinstein sentenced a criminal defendant with a panoply of health issues who pled guilty to embezzlement and tax evasion to one day of imprisonment and three years of supervised release.

Defendant cannot challenge his sentence in the first instance on a § 2255 motion.  It must first be challenged on direct appeal, which defendant has not done.  See Massaro, 538 U.S. at 504.  To the extent defendant is precluded from challenging his sentence on direct appeal

---

[5] Separately, defendant also agreed to waive "all defenses based on . . . venue with respect to any prosecution that is not time-barred on the date that [the plea agreement] is signed in the event that . . . defendant violates [the plea agreement]."

because he waived that right in his plea agreement, defendant must accept the consequences of that decision.

Because none of the arguments that defendant raises in his § 2255 motion have merit, the motion is denied.

**III.     Motion for Alternative Relief**

Defendant has also moved for alternative relief under either the Declaratory Judgment Act or Federal Rules of Criminal Procedure 33(a) and (b)(1).  The bases for his motion are that a federal agent gave false testimony during plaintiff's bond revocation hearing, that the Government blackmailed defendant's ex-wife into giving false statements about him, and that the Government defrauded the Court by making false representations about the BOP's ability to care for defendant while he was incarcerated.  This motion raises some of the same grounds rejected above and recharacterization does not change the result.

## CONCLUSION

Accordingly, defendant's amended motion for habeas corpus relief [186, 195, 201], his motion for alternative relief [209], and his recusal motion [217] are DENIED.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**


Dated:  Brooklyn, New York
      April 17, 2019

                                       U.S.D.J.

August 18, 2017

Mr. Barry Boline
Family Court Commissioner
Ozaukee County Court
1201 S. Spring St
Port Washington, WI 53074

Howard Leventhal
Reg. No. 46376-424
Federal Prison Camp -- DULUTH
P.O. Box 1000
Duluth, MN 55814 (NEW ADDRESS)

RE: Handeland v Leventhal
    17-FJ-2
    Hearing Set: 8/29/17

Mr. Boline:

I must apologize in advance for addressing you in the following way. I have
made an extraordinary effort to be patient and tolerant of my ex-wife's antics
and histrionics however it is no longer possible for me to do so. This message
is really for her consumption but given that she has seen fit to completely
cut off communications with me, I have no alternative but to put the following
on the record.

I have been advised that Jane Probst claims to be withdrawing as Handeland's
attorney and that now the fourth in a series of lawyers incapable of dealing
with Mary will now become involved in this matter. Mary's traditional modus
operandi now will be to use this development, two weeks before a set hearing,
to further delay matters and extend the period of time in which I am cut off
from my daughter without any justification whatsoever even longer. My patience
is now fully exhausted and I am compelled to make all involved aware as follows:

With all due respect to you and the court sir, I will not tolerate a delay,
postponement or adjournment of the 8/29 proceedings and I will also not
tolerate being disconnected from my daughter after 7pm Central time on 8/29.

I have been forcibly isolated from my daughter for no rightful cause for 2
years in a pattern of behavior which extends back 15 years. Now it's just
easier for Handeland for obvious reasons. Mr. Stansbury has in his possession
22 reference letters which clearly and accurately articulate the kind of
father that I am - an exemplary father in every respect except the obvious one.

Set forth below is a set of requirements and conditions that must be brought
into effect by 7pm 8/29. If these minimal conditions are not brought into
effect by agreed order or any other method -- by 7pm on 8/29 and not one minute
later - I will irrevocably initiate a litigation campaign in federal and state
court, against Mary Handeland and all who support her inhumane actions in this
matter. Such a campaign, if it commences, will commence on 8/30/2017 and it
will never end while I am alive.

My requirements are quite de minimus and well within Handeland's reach, as follows:
1) Restoration of unimpeded, unmonitored, unpressured telephone contact between
my daughter and I; also requiring that Handeland obtain a Google Voice number to
forward to Amelia's phone directly, where the number I call is a local Duluth
number. Handeland knows how to do this and I know Duluth numbers are available.
Calls which cost me 21 cents/minute will then cost 2 cents/minute. 2) Email
communication direct to Amelia's individual email. 3) In-person visits once
per month with my 92 year old mother, Amelia's grandmother, in or near Palatine
Illinois. 4) In-person visits with me at Federal Prison Camp Duluth; no less

-1-

than 3 times before the end of 2017 and then once every two months until I am released to community confinement, sometime between Feb and April 2018.

Aleph Institute (www.Aleph-Institute.org), a faith-based inmate support group is attempting to locate suitable housing for me somewhere in the Grafton High School district. This search is not yet complete. In any case I will spare no effort to locate upon release no more than 10 miles away from Amelia's school and provide her with her own room and suitable spaces for homework, friends, recreation and a vehicle of her own, as soon as possible after my release.

Mr. Stansbury and Ms. Probst have copies of a draft statement of the legal grounds on which I will proceed on 8/30 if I am placed into a position of having no other choice. I strongly recommend that all involved and especially Mary's new counsel, read this statement, carefully. Again, I am reluctant and regretful for having to address the court in this way, and with no disrespect to you intended - there will be no flexibility on the deadline set here. This court is obviously free to rule in whatever way it deems just, appropriate and in the best interests of Amelia. Whatever the court's ruling, I will proceed as I have described here, on 8/30, in the event that the above conditions are not brought into effect.

REQUEST FOR COURT REPORTER
I respectfully request that a court reporter is provided by the court for the 8/29 proceeding, as I intend to take sworn testimony from Handeland as well as Lorraine Marx and Christine Klotz. As you are aware, I am not in a position to make arrangements myself for a private stenographer.

TRAVEL ARRANGEMENTS
I am mailing a brochure to Mr Stansbury regarding Agape' House, a cost-free lodging facility in Duluth for families of Duluth inmates during visiting weekends. Only women and (boys under 12) are allowed to stay there. There has never been an incident of improper behavior reported there and I am confident that Amelia will be more than comfortable there with whomever brings her to Duluth. Duluth Airport's runway is a long baseball throw away from my housing unit and there is a local bus terminal a short distance away. In short, there can be no cost-related excuse for failing to transport Amelia to see me, now.
---
I apologize again for having to address the court in this aggressive manner. I simply have no choice. There comes a time when abuse must stop and the line may be crossed no further. This time has already passed in this case and Handeland's abuses will not continue past 8/29/17 without application of any and every of the most aggressive forms of legal remediation at my disposal.

Respectfully,

Howard Leventhal

cc: Mary Handeland, Jane Probst, R.D. Stansbury, Court Clerk

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| MICHAEL H. MELTZER, | ) | No. 13 B 31151 |
| | ) | |
| Alleged Debtor. | ) | Judge Goldgar |

**ORDER (1) AWARDING ATTORNEY'S FEES AND COSTS,
(2) AWARDING PUNITIVE DAMAGES, (3) REQUIRING
THE SEALING OF ALL COURT RECORDS RELATING OR
REFERRING TO THE DISMISSED PETITION, (4) PROHIBITING
CONSUMER REPORTING AGENCIES FROM MAKING ANY
CONSUMER REPORT RELATING TO THE PETITION OR CASE,
AND (5) IMPOSING RESTRICTIONS ON FUTURE FILINGS
IN THE BANKRUPTCY COURT FOR THIS DISTRICT**

This dismissed involuntary case is before the court for a determination of the attorney's fees, costs, and punitive damages to be awarded alleged debtor Michael Meltzer as well as a determination of other relief.

In an earlier opinion, the court found the petition against Meltzer had been filed in bad faith and ruled he was entitled to (1) an award of attorney's fees and costs under section 303(i)(1) of the Bankruptcy Code, (2) an award of punitive damages under section 303(i)(2) of the Code, (3) the sealing of all court records relating to the petition under section 303(k)(1), and (4) an injunction under section 303(k)(2) barring consumer reporting agencies from making any consumer report relating to the petition. *See In re Meltzer*, 516 B.R. 504 (Bankr. N.D. Ill. 2014). The matter was continued for further briefing on the appropriate awards of fees, costs, and punitive damages, as well as on the propriety of an order imposing filing restrictions on petitioners Howard E. Leventhal and Malgorzata J. Kubiak.

For the reasons set forth in the court's opinion dated today, IT IS HEREBY ORDERED:

217

1. Pursuant to section 303(i)(1), Michael Meltzer is awarded $60,788.86 in attorney's fees and $105.17 in costs against petitioners Howard E. Leventhal, Malgorzata J. Kubiak, and Pegasus Electronics HK Ltd., jointly and severally.

2. Pursuant to section 303(i)(2), Michael Meltzer is awarded $120,000 in punitive damages against petitioner Howard E. Leventhal, $40,000 in punitive damages against petitioner Malgorzata J. Kubiak, and $20,000 in punitive damages against petitioner Pegasus Electronics HK Ltd.

3. Pursuant to section 303(k)(1), at the conclusion of all appeals in this case, the court must seal all the records of the court relating to the petition and all references to the petition.

4. Pursuant to section 303(k)(2), all consumer reporting agencies (as defined in section 603(f) of the Fair Credit Reporting Act, 15 U.S.C. § 1681a(f)) are prohibited from making any consumer report (as defined in section 603(d) of that Act) that contains any information relating to the petition in this case or to the case commenced by the filing of the petition. The clerk of the court must send a copy of this order to each of the major credit reporting agencies with this provision highlighted.

5. Howard E. Leventhal, Malgorzata J. Kubiak, and anyone acting on behalf of either or both of them, are enjoined from filing any document in the United States Bankruptcy Court for the Northern District of Illinois without first obtaining leave of the court through the following procedures:

a. Any document that Howard E. Leventhal, Malgorzata J. Kubiak, or anyone acting on behalf of either or both of them wishes to submit for filing must be delivered to the Clerk of the U.S. Bankruptcy Court, 7th Floor, Dirksen Federal Courthouse, 219 South Dearborn

Street, Chicago, Illinois. Only the clerk or a deputy the clerk has specifically designated for the purpose may accept these documents.

b. When Howard E. Leventhal, Malgorzata J. Kubiak, or anyone acting on behalf of either or both of them submits a document for filing, the clerk or designated deputy must accept the papers, stamp them "received," and forward them to the undersigned Bankruptcy Judge, or in his absence the Chief Judge of the Bankruptcy Court.

c. The undersigned Bankruptcy Judge, or in his absence the Chief Judge of the Bankruptcy Court, will examine the document submitted and determine whether it should be filed.

d. If Howard E. Leventhal or Malgorzata J. Kubiak seeks a waiver of any filing fee, the application for waiver must be forwarded to the undersigned Bankruptcy Judge, or in his absence the Chief Judge of the Bankruptcy Court, who will determine whether a waiver should be granted.

e. The clerk must create miscellaneous proceedings dockets with the titles "In re Howard E. Leventhal" and "In re Malgorzata J. Kubiak" and must assign to the dockets appropriate "MP" docket numbers. This order and any order entered pursuant to this order must be docketed in the appropriate miscellaneous proceeding docket depending on whether it concerns Howard E. Leventhal or Malgorzata J. Kubiak.

f. If an order is entered granting leave to file a document, the clerk must docket that order in the appropriate miscellaneous proceeding and must mail a copy of the order to the person submitting the document.

g. If an order is entered denying leave to file a document, the clerk must docket

-3-

that order in the appropriate miscellaneous proceeding, must mail a copy of the order to the person submitting the document, and must return with the order the document submitted.

 h.  The failure of Howard E. Leventhal, Malgorzata J. Kubiak, or anyone acting on behalf of either or both of them to comply with this order may, in the discretion of the undersigned Bankruptcy Judge, or in his absence the Chief Judge of the Bankruptcy Court, be deemed contempt of court.

 i.  These restrictions do not apply to the filing of a notice of appeal from this order or to designations of items for the record and statements of issues on appeal.

 j.  Five years from the date of this order, Howard E. Leventhal or Malgorzata J. Kubiak may move to have the filing restrictions in this order lifted.  The motion must be docketed in the appropriate miscellaneous proceeding and forwarded for decision to the undersigned Bankruptcy Judge, or in his absence the Chief Judge of the Bankruptcy Court. Whether to grant the motion rests with the applicable judge's discretion.

 6.  A copy of this order must be mailed to Leventhal, Kubiak, Pegasus, and counsel for Meltzer.

Dated: August 25, 2015

       _____
       A. Benjamin Goldgar
       United States Bankruptcy Judge

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

APR 20 2017

CLERK OF COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

Howard E. Leventhal )
       Plaintiff, )
       )
vs. )
       )
Winston M. Paes, )
Mary A. Handeland, )
Loretta Lynch, )
Christopher Delzotto, )  Civil Action No.: _17- 1167_
Lorraine Marx, )
Christine Klotz, )
Jane Probst, )
Charles Colodny, )
Gene Schenberg, )
AMG The Family Doctors, )
and Advocate Medical )
Group )
       Defendants )  Amount Claimed: $9,771,894.51

## COMPLAINT

NOW COMES PLAINTIFF Howard E. Leventhal, a non-attorney acting pro se
and prisoner in federal custody, hereby respectfully submitting this Complaint
under the Constitution of the United States, the Bill of Rights, the 1st, 5th,
8th and 14th Amendments, the Parental Kidnapping Prevention Act and Uniform
Child Custody Jurisdiction Act (28 USC Sec 1738A), 28 USC Sec 1367, the
Intercountry Adoption Act (42 USC Sec 14901), Bivens v. Six Unnamed Agents
403 U.S. 388, Illinois State Law, Common Law of Torts and other applicable
law. In support of this Complaint, Plaintiff states as follows:

### I. BASIS FOR FEDERAL JURISDICTION

1)  As his paramount claim Plaintiff asserts that the Defendants acted in
conspiracy to violate Plaintiff's rights and the rights of his child under
the federal Parental Kidnapping Prevention Act and Uniform Child Custody
Jurisdiction Act and the Intercountry Adoption Act. These claims alone are
a sufficient basis to establish subject matter jurisdiction in this Court.

2)   The principal forum and central nexus between Plaintiff and all of the
Defendants, is a federal criminal case in which all of the Defendants, acting
in conspiracy, violated panoply constitutionally guaranteed rights of the
Plaintiff; to wit: U.S. v. Leventhal, in the United States District Court for
the Eastern District of New York, Case No. 13-cr-695(BMC), which concluded on
December 19, 2016 with a Judgment of Conviction (excerpts attached hereto as
Non-Sealed Exhibit 1). This complaint however is not a habeas petition in any
form nor should it be construed under any interpretation as a direct attack
or collateral attack on the subject criminal judgment or case (hereinafter
the "Criminal Case"). Indeed, habeas action of any kind would tend to inflict
worse harm upon the Plaintiff than the harm for which redress is sought here.
This case seeks nothing more than monetary and injunctive redress personally
from a cast of actors, some acting under color of federal authority, some
private citizens, all acting to cause egregious, undue, unjust injury and harm
far in excess of the statutorily mandated loss of liberty in a criminal case.
For at least this cause alone, this Court has federal subject matter juris-
diction for the related constitutional deprivations.

3)   This Court has federal supplemental jurisdiction under 28 USC Sec 1367
because in a connected series of transactions related to the Criminal Case,
during the Criminal Case and falsely described as being prosecutorial in
nature, Defendants violated the Bill of Rights, the Parental Kidnapping
Prevention Act, the Uniform Child Custody Jurisdiction Act, Illinois State
Law, Wisconsin State Law, New York State Law, tort law and federal law
simultaneously, causing wilfull, wanton and undue harm to both the Plaintiff
and his closest loved ones.

Page 2

C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| HOWARD E. LEVENTHAL,<br><br>                                   Plaintiff,<br><br>       -against-<br><br>WINSTON M. PAES, MARY A. HANDELAND, LORETTA LYNCH, CHRISTOPHER DELZOTTO, LORRAINE MARX, CHRISTINE KLOTZ, JANE PROBST, CHARLES COLODNY, GENE SCHENBERG, AMG THE FAMILY DOCTORS, and ADVOCATE MEDICAL GROUP,<br><br>                                   Defendants. | **MEMORANDUM<br>DECISION AND ORDER**<br><br>17 Civ. 2496 (BMC) |

**COGAN**, District Judge.

Plaintiff Howard Leventhal, currently incarcerated in the Federal Correctional Institute in Pekin, Illinois, brings this *pro se* action pursuant to "the Constitution of the United States, the Bill of Rights, the 1st, 5th, 8th and 14th Amendments,[1] the Parental Kidnapping Prevention Act and Uniform Child Custody Jurisdiction Act (28 U.S.C. [§] 1738A), 28 U.S.C. [§] 1367, the Intercountry Adoption Act (42 U.S.C. [§] 14901), Bivens v. Six Unknown Named Agents [of Fed. Bureau of Narcotics, 403 U.S. 388 (1971)], Illinois State Law, Common Law of Torts[,] and other applicable law."  The Court grants plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 for the purpose of this Order and dismisses the complaint for the following reasons.

---

[1] Although Leventhal does not list 42 U.S.C. § 1983 by statute, his constitutional claims necessarily implicate § 1983 as it is the vehicle by which litigants vindicate their constitutional claims.

## BACKGROUND

In October 2013, the United States Attorney for the Eastern District of New York, acting through Assistant U.S. Attorney ("AUSA") Winston Paes, the first-named defendant in this action, unsealed a criminal complaint against Leventhal, charging him with wire fraud, in violation of 18 U.S.C. § 1343, and aggravated identity theft, in violation of 18 U.S.C. §§ 1028A(a)(1), 1028A(b), and 1028(c)(5).

The complaint alleged that Leventhal, as the president or managing officer of several entities, including mHealth Technologies Corp., formerly named Neovision USA, Inc. and Heltheo, Inc., entered into certain financing agreements with investors on the basis of false information, namely that his company had entered into a lucrative agreement with Health Canada, the department of the Canadian government with responsibility for national public health. To further his fraud, Leventhal provided the investors with a fraudulent agreement between his company and Health Canada and fabricated bank statements showing millions of dollars in transactions and payments from Health Canada.

In December 2013, Leventhal pleaded guilty to both counts. Leventhal was released on bail and subject to supervision in Chicago. On further investigation by the Government and after a hearing in September 2015, the Court revoked Leventhal's bail. The Government established at the hearing that Leventhal, while out on bail and through an alias, had created a purported non-profit entity, altered letters from elected officials, and used those letters to induce an investor to invest tens of thousands of dollars, much of which were used for personal expenses.

For a host of reasons, including the bail revocation and Leventhal's decisions to proceed counseled at times and *pro se* at others, Leventhal was not sentenced until December 2016, at which time the Court sentenced him to a total of five years in federal custody. Now as a federal

prisoner, he brings this lawsuit, principally against the AUSA that prosecuted him, in addition to several other defendants, alleging a mass of charges.

## DISCUSSION

The Prison Litigation Reform Act (the "PLRA") requires a district court to screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint, or any portion of the complaint, if the complaint is "frivolous, malicious, or fails to state a claim upon which relief may be granted."  28 U.S.C. § 1915A(b)(1); see also Liner v. Goord, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (noting that, under the PLRA, *sua sponte* dismissal of frivolous prisoner complaints is not only permitted but in fact mandatory). Similarly, pursuant to the *in forma pauperis* statute, the Court must dismiss an action if it determines that it "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

A complaint must plead "enough facts to state a claim to relief that is plausible on its face," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted); see also Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).  Thus, *pro se* complaints are "to be liberally construed," Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012), and interpreted "to raise the strongest arguments that they suggest," Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

Plaintiff brings this action pursuant to several statutes and laws, alleging (i) the unconstitutional denial of his right to intimate association with his adopted daughter; (ii) deliberate indifference to his health, life, and safety; (iii) denial of due process; (iv) denial of his right to privacy; (v) defamation; (vi) fraud; (vii) breach of contract; (viii) tortious interference; and (ix) intentional infliction of emotional distress.  In addition to the AUSA who prosecuted him, Leventhal names as defendants the lead FBI agent who investigated him, the former Attorney General, Leventhal's ex-wife, his ex-wife's mother and sister, his former physician, and a band of characters who had the misfortune of knowing Leventhal and getting on his bad side during the course of the criminal prosecution.

Not only is the complaint frivolous on its face, but it is also a transparent attempt to harass a wide variety of people, including individuals who have had to defend against Leventhal's abuse of the legal process in the past, including his ex-wife.  In essence, the complaint and Leventhal's affidavit allege that the AUSA, in conspiracy with the other defendants, orchestrated the above-named deprivations of Leventhal's rights.  In addition, he seeks a court order modifying and enforcing his visitation rights with his adopted daughter.

The details underpinning his frivolous conspiracy legal theory is nothing more than Leventhal's petty and irrational fury at the federal prosecutor who convicted him.  But such resentment cannot make up the basis of a claim alleging prosecutorial misconduct.  It is well established that a prosecutor acting "within the scope of his duties in initiating and pursuing a criminal prosecution is immune from a civil suit for damages under § 1983."  Shmueli v. City of New York, 424 F.3d 231, 236 (2d Cir. 2005) (internal quotations omitted).  "Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate."  Hill v. City of New

York, 45 F.3d 653, 661 (2d Cir. 1995) (internal quotations omitted).  "A prosecutor is . . . entitled to absolute immunity despite allegations of his knowing use of perjured testimony' and the 'deliberate withholding of exculpatory information," because "[a]lthough such conduct would be reprehensible, it does not make the prosecutor amenable to a civil suit for damages." Shmueli, 424 F.3d at 237 (internal quotation marks omitted).  Further, absolute immunity for prosecutorial acts can be defeated only if the prosecutor is alleged to have acted in the complete absence of jurisdiction, which is not the case here. Shmueli, 424 F.3d at 237.

The Supreme Court, in finding that prosecutorial immunity is absolute, reasoned that "suits against prosecutors for initiating and conducting prosecutions could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions." Burns v. Reed, 500 U.S. 478, 485 (1991) (internal quotation marks omitted).  This is exactly what has happened here.  Leventhal has funneled his resentment at getting caught, prosecuted, and convicted against the AUSA, without regard to the facts that Leventhal pleaded guilty and even recognizes in his complaint (and at sentencing) that he broke the law.  Nowhere is Leventhal's resentment more clear than in his complaint where, in the same breath, he compares the massacre of indigenous Americans and slavery as national mistakes "competing for top billing" with the decisions permitting the AUSA to emigrate to the United States from South Asia, naturalize, get his law license, and become an AUSA.  The Court will not permit Leventhal to harass the prosecutor, the former Attorney General, and the FBI agent who simply did their jobs.  Prosecutorial immunity protects the first two and qualified immunity, at a minimum, protects the FBI agent.

Nor will the Court permit Leventhal to sue the witnesses against him, whether they bore witness through their sentencing submissions, affidavits to the Court, or during hearings.  See

Rehberg v. Paulk, 566 U.S. 356, 367 (2012) ("[A] trial witness has absolute immunity with respect to any claim based on the witness'[s] testimony.").

Once the Court excises those allegations relating to Leventhal's sprawling prosecutorial misconduct conspiracy, which are dismissed as baseless, frivolous, or barred by some form of immunity, the remainder of the complaint relates to his custody battle with his ex-wife, which is also dismissed.  No matter how many inapplicable statutes Leventhal can marshal that touch on adoption or children, the "domestic relations exception . . . divests the federal courts of power to issue divorce, alimony, and child custody decrees." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 12 (2004), abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377 (2014).  And while there may be "rare instances . . . in which it is necessary to answer a substantial federal question that transcends or exists apart from the family law issue," this is not one of those cases.  Id. at 13.  This case is just another attempt by Leventhal to re-litigate a child custody order, with Leventhal seeking a "permanent order enforcing and mandating the visitation and communication provisions under [the custody dispute action], modified to suit [Leventhal's] current status as a prison inmate," in addition to family counseling sessions with his daughter.  The Court will not do that.

## CONCLUSION

Accordingly, the complaint, filed *in forma pauperis*, is dismissed for failure to state a claim.  See 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B).  The Court has considered whether to grant plaintiff further leave to amend his complaint and determines that amendment here would be futile.  See, e.g., Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (finding leave to replead futile where the complaint, even when read liberally, did not "suggest[] that the plaintiff has a claim that she has inadequately or inartfully pleaded and that she should therefore be given a chance to reframe").

6

The Clerk is directed to enter judgment, dismissing the complaint.  The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

_____
U.S.D.J.

Dated:   May 9, 2017
         Brooklyn, New York

C/M

Howard Leventhal
Reg No 46376-424
FCI Pekin Prison Camp
P.O. Box 5000
Pekin, IL 61555

May 7, 2017

RE: Leventhal v. Paes, et al
Case No. 17-cv-2496 (BMC)(LB)

Please file the enclosed in the above captioned matter.

Thanks very much,

Howard Leventhal

P.S. SEALED EXHIBITS: The enclosed exhibits contain individually identifiable personal medical information and should be placed in the record as sealed only.

Denied as frivolous. If defendant does not cease filing frivolous motions, he is going to be enjoined from filing anything without leave of court.
SO ORDERED: 5/16/17

Digitally signed by
Brian M. Cogan

U.S.DJ.

US DISTRICT COURT
★ MAY 15 2017 ★
BROOKLYN OFFICE

E.D.N.Y.-Bklyn
17-cv-2496
Cogan, J.

# United States Court of Appeals
FOR THE
SECOND CIRCUIT
_____

      At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 6ᵗʰ day of November, two thousand seventeen.

Present:
      Gerard E. Lynch,
      Susan L. Carney,
          *Circuit Judges*,
      Eric N. Vitaliano,*
          *District Judge.*

_____

Howard E. Leventhal,

          *Plaintiff-Appellant*,

      v.                                 17-1670

Winston M. Paes, et al.,

          *Defendant-Appellees.*

_____

Appellant, pro se, moves for leave to proceed in forma pauperis. Upon due consideration, it is hereby ORDERED that the motion is DENIED and the appeal is DISMISSED because it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also* 28 U.S.C. § 1915(e).

          FOR THE COURT:
          Catherine O'Hagan Wolfe, Clerk



_____

* Judge Eric N. Vitaliano, of the United States District Court for the Eastern District of New York, sitting by designation.

# MANDATE

E.D.N.Y.-Bklyn
18-cv-347
13-cr-695
Cogan, J.

## United States Court of Appeals
### FOR THE
### SECOND CIRCUIT

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of July, two thousand nineteen.

Present:

Debra Ann Livingston,
Raymond J. Lohier, Jr.,
Susan L. Carney,
*Circuit Judges*.

United States of America,

*Appellee*,

v.

19-787

Howard Leventhal,

*Defendant-Appellant*.*

Appellant, pro se, moves for leave to proceed in forma pauperis and to consolidate this appeal with the appeal docketed under 16-4298. Upon due consideration, it is hereby ORDERED that the motion is DENIED and the appeal is DISMISSED because it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also* 28 U.S.C. § 1915(e).

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

* The Clerk of Court is directed to amend the caption to conform to this order.

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Milton I. Shadur | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 1929 | **DATE** | 4/3/2009 |
| **CASE TITLE** | Howard Leventhal vs. Mary Handeland | | |

**DOCKET ENTRY TEXT**

Enter Memorandum Opinion and Order.  Accordingly, as 28 U.S.C. §1447( c) puts it, it plainly "appears that the district court lacks subject matter jurisdiction," and the case is ordered remanded to the state court system pursuant to that statutory provision.  It is further ordered that the certified coy of the remand order shall be mailed forthwith by the Clerk of this District Court.

■ [ For further detail see separate order(s).]

Docketing to mail notices.

| | Courtroom Deputy Initials: | SN |
|---|---|---|

IN THE CIRCUIT COURT OF THE NINETEENTH
JUDICIAL CIRCUIT - LAKE COUNTY, ILLINOIS

IN RE THE MARRIAGE OF:

MARY HANDELAND,

Petitioner,

and

HOWARD LEVENTHAL,

Respondent.

Authenticated/Filed
Ozaukee County Circuit

JAN 1 3 2017

Mary Lou Mueller
Clerk of Circuit Court/
Register in Probate
No.        05 D 808

)
)
)
)
)
)

FILED

FEB 25 2009

*Semyour Coffett*
CIRCUIT CLERK

## PRELIMINARY INJUNCTION        2017FJ2

This cause coming on to be heard for hearing on a preliminary injunction requested by

Mary Handeland pursuant to her Emergency Petition for Injunctive Relief; a temporary

restraining order having been issued on January 16, 2009; Howard Leventhal appearing in court

representing himself *pro se*; David Kerpel appearing on behalf of Mary Handeland, who is also

present in court; arguments having been presented, and the Court having reviewed the allegations

contained in the Petition, and having considered the arguments presented;

**The Court finds as follows:**

1.        That Howard Leventhal's intention to file lawsuits in each and every county of

this state was specifically designed to attempt to either impoverish Mary Handeland, or to coerce

her into dropping her enforcement action in the divorce case in Lake County.

2.        That Mary Handeland has a clear and ascertainable legal right, which is the

maintenance of her proceedings to collect support in this case and to enforce the terms of the

Judgment for Dissolution of Marriage that has been entered in this case.

3.        That there is an inadequate remedy at law in that Howard Leventhal has admitted

that he has not paid child support since the Judgment for Dissolution of Marriage was entered, and that Mary Handeland is unable to afford substantial attorney's fees.

4.  That Howard Leventhal's initial filing of the lawsuit in DuPage indicated an intent by Howard Leventhal to make it nearly impossible, if not extremely difficult, for Mary Handeland to defend herself.

5.  That money damages would not be sufficient because Mary Handeland would be prevented from carrying forth with her enforcement action in this case.

6.  The Court finds a likelihood of success on the merits, and the Court finds that the actions of Howard Leventhal in threatening to sue Mary Handeland in all 22 judicial circuits of the state of Illinois was intended to intimidate and to harass Mary Handeland.

7.  That the other actions threatened to be filed in each of the 22 judicial circuits of Illinois would in fact interfere with the progress of this action.

8.  That, in the interest of equity, the maintenance of a subsequent lawsuit which could have been brought before this Court, and is instead brought in a foreign state, serves as a gross wrong, and would result in fraud and oppression to Mary Handeland.

9.  Additional findings are set forth in the transcript of these proceedings.

**IT IS HEREBY ORDERED**:

A.  A Preliminary Injunction is hereby entered against Howard Leventhal, without bond, restraining Howard Leventhal, or any individual or entity on his behalf as set forth below.

B.  Any cause of action or lawsuit filed by Howard Leventhal against Mary Handeland that could have been brought in Lake County, Illinois, shall be brought in Lake County, Illinois.

C. If Howard Leventhal intends to file any cause of action or lawsuit against Mary Handeland in any County or any State, other than Lake County, Illinois, that Howard Leventhal must obtain leave of this Domestic Relations Court of the 19th Judicial Circuit – Lake County, Illinois, before filing any such cause of action or lawsuit.

D. Howard Leventhal is required to attach a copy of this injunction to any and all cause of actions or lawsuits he files against Mary Handeland in the future.

E. This Court will consider, upon further notice, awarding attorney's fees against Howard Leventhal and in favor of Mary Handeland in future cases filed by Howard Leventhal, as being an ancillary litigation to this divorce case and if brought to harass Mary Handeland.

F. Howard is hereby required to obtain leave of this court before filing any further pleadings in these dissolution proceedings.

ENTER:

<u>George D. Strickland</u>
JUDGE

Law Offices Of David S. Kerpel, LLC
Attorney #6256194
655 Deerfield Road – Suite 100
No. 408
Deerfield, IL 60015
Telephone: (847) 374-8257
Facsimile: (847) 374-8258
Attorney for Mary Handeland



AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

Leventhal

v.

Handeland

**JUDGMENT IN A CIVIL CASE**

Case Number: 08 C 7374

☐     Jury Verdict.  This action came before the Court for a trial by jury.  The issues have been tried and the jury rendered its verdict.

■     Decision by Court.  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that judgment is entered dismissing this case for lack of subject matter jurisdiction.

Michael W. Dobbins, Clerk of Court

Date: 1/20/2009

_____

/s/ Olga Rouse, Deputy Clerk

# GOVERNMENT
# EXHIBIT 7

FILED
06-21-2019
Ozaukee County, WI
Mary Lou Mueller CoCC
2019CV000221

**BY THE COURT:**

**DATE SIGNED: June 21, 2019**

Electronically signed by John R. Storck
Circuit Court Judge

---

**STATE OF WISCONSIN, CIRCUIT COURT, <u>OZAUKEE</u>**                                        **COUNTY**

☐ Amended

# INJUNCTION – Harassment
## (Order of Protection - 30711)

Case No. **2019CV221**

## PETITIONER (PERSON TO BE PROTECTED)

**Name of Petitioner** *(First, Middle, Last )*
Amelia Handeland

**Date of Birth of Petitioner**
11/17/2000

**-VS-**

## RESPONDENT/DEFENDANT

**Name of Respondent/Defendant** *(First, Middle, Last)*
Howard Leventhal

| SEX | RACE | DOB | HT | WT |
|-----|------|-----|-----|-----|
| M | WH | 11/04/56 | 5'6" | 170 |

Respondent's/Defendant's Street Address, City, State, Zip
825 N Christiana Ave
Chicago IL 60651

| HAIR COLOR | | EYE COLOR | |
|------------|--|-----------|--|
| Grey | | Brown | |

Please specify Petitioner's relationship(s) to Respondent/Defendant:
☐ spouse                    ☐ cousin              ☒ adoptive parent
☐ former spouse             ☐ sibling             ☐ grandparent
☐ person in dating relationship ☐ parent          ☐ child (biological/adoptive/step)
☐ current or former live-in ☐ step parent
    relationship
☐ Other:  [Be specific] _____

**Respondent's/Defendant's Distinguishing Features**
(such as scars, marks or tattoos)

☒ None known.

| CAUTION: *(Check all that apply)* | ☐ Respondent/Defendant has access to weapon(s).  Type of weapon(s): _____ |
|---|---|
| | Location of weapon(s): _____ |
| | ☐ Weapon(s) were involved in an incident [past or present] involving the petitioner. |

## THE COURT FINDS:
Findings are on the following page(s) of this injunction.

## THE COURT ORDERS:
Orders are on the following page(s) of this injunction.

## THIS INJUNCTION SHALL BE EFFECTIVE UNTIL June 21 2023
Not to exceed 4 years or 10 years under §813.125(4)(d), Wis. Stats.

CV-407, 05/16  Injunction (Order of Protection - Harassment)                                        §813.125, Wisconsin Statutes
**This form shall not be modified.  It may be supplemented with additional material.**

## NOTIFICATIONS/WARNINGS TO RESPONDENT/DEFENDANT:

This order shall be enforced, even without registration, and is entitled to full faith and credit in every civil or criminal court of any state, the District of Columbia, any U.S. Territory, and may be enforced by Tribal Lands (18 U.S.C. Section 2265; Wis. Stats. 813.128). Crossing state, territorial, or tribal boundaries to violate this order may result in federal imprisonment (18 U.S.C. Section 2262).

Federal law provides penalties for, and you may be prohibited from possessing, transporting, shipping, receiving, or purchasing a firearm, including, but not limited to, a rifle, shotgun, pistol, revolver, or ammunition, pursuant to 18 U.S.C. Section 922(g)(8). Additional notifications/warnings are on the following page of this injunction.

Violation of this order shall result in immediate arrest and is punishable by imprisonment not to exceed 9 months or a fine not to exceed $10,000 or both, payment of filing and service fees, and an order for GPS tracking.

## Only the court can change this Order.

**THE COURT FINDS:**

1. The petitioner or person on behalf of the petitioner filed a petition alleging harassment under §813.125, Wis. Stats.

2. This court has personal and subject matter jurisdiction. The respondent has been properly served and had an opportunity to be heard.

3. There are reasonable grounds to believe the respondent engaged in harassment with intent to harass or intimidate the petitioner as defined in §813.125, Wis. Stats., as stated in the court record.

* ☐ 4. There ☐ is  ☒ is not  clear and convincing evidence that the respondent may use a firearm to cause physical harm to another or to endanger public safety.

☐ 5. There is a substantial risk the respondent may commit 1st degree intentional homicide under §940.01, Wis. Stats., 2nd degree intentional homicide under §940.05, Wis. Stats., 1st, 2nd, or 3rd degree sexual assault under §§940.225(1), (2) or (3), Wis. Stats., or 1st or 2nd degree sexual assault under §§948.02(1) or (2), Wis. Stats., against the petitioner resulting in an injunction order for not more than 10 years.

☐ 6. The respondent was present in court and personally served with a copy of this order.

☐ 7. The respondent was present in court and personally served with a copy of the Order to Surrender Firearms and Notice of Firearm Surrender Hearing (CV-803) form.

☐ 8. The petitioner has requested the wireless telephone service provider transfer to the petitioner each telephone number(s) he/she or a minor child in his/her custody uses.

**THE COURT ORDERS:**

☒ 1. The respondent cease or avoid the harassment of the petitioner.

☒ 2. The respondent avoid the petitioner's residence and/or any premises temporarily occupied by the petitioner.

☒ 3. The respondent avoid contact that harasses or intimidates the petitioner. *Contact includes: contact at petitioner's home, work, school, public places, in person, by phone, in writing, by electronic communication or device, or in any other manner.*

☐ 4. The respondent refrain from removing, hiding, damaging, harming, or mistreating, or disposing of, a household pet.

☐ 5. The respondent allow the petitioner or a family member or household member of the petitioner acting on his/her behalf to retrieve a household pet.

☒ 6.  The respondent to avoid contacting the petitioner or causing any person other than a party's attorney or law enforcement officer to contact the petitioner unless the petitioner consents in writing.

☐ 7.  The sheriff to accompany the petitioner and assist in placing the petitioner in physical possession of his/her residence, if requested.

☐ 8.  The wireless telephone service provider to transfer, within 72 hours of receipt of the order, to the petitioner each telephone number(s) he/she or a minor child in his/her custody uses. **(See Wireless Telephone Service Transfer Order in Injunction Case (CV-437) form for more details.)**

☒ 9.  Other:  *[List specific prohibited conduct or conduct that is substantially similar to that noted in the Petition.]*
        The Respondent has used excessive litigtion to harrass and for no legitimate purpose. In Wisconsin the Respondent shall not commence litigation concerning the Petitioner without consent of the Court. In other jurisdictions the Respondent shall provide a copy of this Injunction to the Court at the time of commencement when the litigation concerns the Petitioner. The Repondent has used a Blog and a WebPage that is attached to the Petition for the purpose of harrasing the Petitioner and for no legitimate purpose. Within 7 days of this order the Respondent shall "take down" the Web Page and the Blog that is attached to the Petition. He shall not use the internet or social media to harrass the Petitioner.

☐ **THE COURT FURTHER ORDERS:**

   *[This order only applies if finding #4 above has been checked and the court has found by clear and convincing evidence that the respondent may use a firearm to cause physical harm to another or to endanger public safety.]

   1.  The respondent is prohibited from possessing a firearm until the expiration of this injunction.  Possession of a firearm is a Class G Felony punishable by a fine not to exceed $25,000 or imprisonment not to exceed 10 years, or both.  The respondent shall immediately surrender any firearm(s) that he or she owns or has in his or her possession to
       ☐ the sheriff of this county.
       ☐ the sheriff of the county in which the respondent resides: _____.
       ☐ another person [Name and Address] _____.
          **Note:**  Court shall complete the Notice of Firearms Possession Penalties (CV-432) form.

☐ 2.  The respondent shall surrender firearms pursuant to Order to Surrender Firearms and Notice of Firearm Surrender Hearing (CV-803) form.

☐ 3.  The respondent was not present in court and shall be served a copy of Notice of Firearm Surrender Hearing (CV-802) form.

If a party wants a de novo review of a court commissioner's decision, file a Motion for De Novo Hearing on a Temporary Restraining Order or Injunction, (CV-503) form.  Any order entered by a circuit court commissioner remains in effect until the judge in the de novo hearing issues a final order.

### THIS IS A FINAL ORDER FOR THE PURPOSE OF APPEAL IF SIGNED BY A CIRCUIT COURT JUDGE.

DISTRIBUTION:
1.  Court
2.  Petitioner
3.  Person filing on behalf of the petitioner
4.  Respondent
5.  Law Enforcement
6.  Other: _____

# GOVERNMENT
# EXHIBIT 8

**From:** Meg Kubiak <mjp-k@⋯⋯⋯⋯⋯⋯
**Date:** December 4, 2020 at 09:31:57 CST
**To:** ⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯⋯
**Subject: CHRISTMAS GIFT**

Amelia:

I hope you are well and school is meeting your expectations. You are urged in the strongest possible terms, to do the following three things immediately and completed before Christmas:

1) Read the yellow-highlighted portions of the attached court order

2) Watch this video: https://youtu.be/0M2Z8zGEMP4 (all 8 minutes, watch at least twice)

3) Meet me (only me), alone at Gurnee Mills for coffee, before Christmas

If you need transportation, I will send you roundtrip in a prepaid Uber. The choices you make in response to this message will have profound effects upon you and those close to you, for a very, very long time. You are an adult, smart and able to make your own wise and independent choices, which is what I advise you to do now. Your father dies again every day that he does not see you. I care about him and I care about you, so you must hear me out. Now.

Call me by voice only to make arrangements. See you soon.

Meg

847-⋯⋯⋯82

P.S. Amelia, you also will want to read the attached letters, to remind yourself of who and what is involved here. See attached.

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 6.3.3
### Eastern Division

UNITED STATES OF AMERICA

                Plaintiff,

v.                                 Case No.: 1:13–cr–00844
                                 Honorable Andrea R. Wood

Howard Leventhal

                Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Thursday, December 3, 2020:

      MINUTE entry before the Honorable Andrea R. Wood as to Howard Leventhal: Defendant's second motion for early termination of supervised release under 18 U.S.C. § 3583(e)(1) [35] is granted as unopposed. Consistent with 18 U.S.C. § 3583(e), the Court has considered the factors in 18 U.S.C. § 3553(a) and finds that his conduct and the interests of justice warrant early termination of Defendant Leventhal's supervised release. Accordingly, with no objections from the U.S. Attorney's Office or the U.S. Probation Department, the imposed term of supervised release as to Defendant Levanthal is hereby terminated and he is discharged. Status and motion hearing set for 12/4/2020 is stricken; parties need not appear. Mailed notice (dal, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

# GOVERNMENT
# EXHIBIT 9

**Hogan, William (USAILN)**

| | |
|---|---|
| **From:** | Howard Leventhal <hlev3@aol.com> |
| **Sent:** | Saturday, December 26, 2020 9:11 AM |
| **To:** | Hogan, William (USAILN) |
| **Subject:** | Social Security garnishment |

Be advised, if so much as $1 in social security funds, medicare or any related funds vanish from my account or my mother's, the very next person sued personally will be you.

# GOVERNMENT
# EXHIBIT 10

# What could you possibly have to lose by talking to your father?

emily.chang98 <emily.chang98@protonmail.com>                    Fri, Jan 1, 2021 at 4:55 PM
Reply-To: "emily.chang98" <emily.chang98@protonmail.com>
To:

Amelia:

What would you have to lose by talking to your father? The viewpoint you have today was formed entirely by others, for your consumption. Have you asked yourself why it is so important to them to completely isolate you from him? Who exactly are they protecting? Themselves, not you.

If you can find some way to spend a little time with him, the outcome might well be that your mother's life gets a lot less complicated and yours gets a lot more promising. And if not? What can you possibly lose by spending a few hours with him? The idea that he is some kind of threat to you is nonsense.

Think about this.

A Friend

Sent with ProtonMail Secure Email.