FILED

TL

1/6/2021

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

UNITED STATES,

      Plaintiff,

vs.

HOWARD LEVENTHAL,

      Defendant

Case No.: 13-cr-844

JUDGE ANDREA R. WOOD

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S MOTION TO RECONSIDER FOR FAILURE TO STATE A CAUSE OF ACTION, FOR RULE 11 SANCTIONS AND OTHER RELIEF

NOW COMES DEFENDANT Howard Leventhal, a non-attorney acting pro se hereby respectfully submitting this Motion to Dismiss Plaintiff's Motion to Reconsider for Failure to State a Cause of Action under Rule 12(b)(6), and to sanction attorneys for the Government for frivolous, false and misleading statements to the court as provided under Rule 11 and other relief. In support of this filing, Leventhal states as follows:

### PREFACE

1.    On December 3, 2020 this court kindly and mercifully discharged Defendant Howard Leventhal in this matter, thereby terminating Supervised Release under 18 U.S.C. § 3583(e)(1). In so doing the court also terminated the United States' Department of Justice ("DOJ") criminal jurisdiction over the Defendant in this matter; with finality and prejudice based upon Plaintiff's unreserved, unqualified, written and signed statement (Response, Dkt#39) of no objections to such discharge. Nothing whatsoever has changed since December 3, 2020 related in the slightest

JUDGE ANDREA R. WOOD - 1

way to the 3553(a) analysis required of the court to adjudicate such a discharge order. The Government's instant Motion to Reconsider ("MTR") cannot survive the Rule 12(b)(6) test for its failure to state a cause of action upon which the requested relief may be granted. Additionally, the MTR is sanctionable under Rule 11 for false and misleading statements to the court, because it was filed to harass and intimidate the Defendant and for no other actual motive. This instant government motion is only the most recent in the long history of abusive acts by the Government to this defendant's extreme detriment and nothing about this sort of tactic is new or surprising.

2.      Because there are no specific provisions in the Federal Rules of Criminal Procedure for Motions to Reconsider, this instant MTR must be adjudicated under the Federal Rules of Civil Procedure ("FRCP").  None of the Rules of Criminal Procedure authorizes a generic motion to reconsider; the criminal rules lack a counterpart to the motions authorized by Fed.R.Civ.P. 50(b), 52(b), or 59, though they do authorize some post-trial motions, such as a motion for acquittal, Fed.R.Crim.P. 29, that have features in common with motions under the civil rules. See also Fed.R.App.P. 4(b)(3) (providing that a timely, and authorized, post-trial motion in a criminal case defers the time for appeal until the motion has been resolved). But the proposition that "the criminal rules do not mention motions to reconsider" differs from the proposition that "all motions to reconsider are ineffectual." Motions may exist as a matter of general practice. And that's what the Supreme Court has held. The Justices have concluded that motions to reconsider in criminal prosecutions are proper and will be treated just like motions in civil suits. U.S. v. Rollins, 607 F.3d 500, 502 (7th Cir. 2010). The Fed R. Civ P. applies to the instant motion by the Government, Dkt 46.

3.      *United States v. Healy*, 376 U.S. 75, 84 S.Ct. 553, 11 L.Ed.2d 527 (1964), holds that motions to reconsider (in district courts) and petitions for rehearing (in courts of appeals) are

ordinary elements of federal practice that exist in criminal prosecutions despite their omission

from the Rules of Criminal Procedure. *U.S. v. Rollins,* 607 F.3d 500, 502 (7th Cir. 2010).

4.　　In *Keene Corp. v. International Fidelity Insurance Co*., 561 F. Supp. 656 (N.D.Ill. 1976),

aff'd, 736 F.2d 388 (7th Cir. 1984), the court gave a helpful summary of the law governing

motions to reconsider: Motions for reconsideration serve a limited function; to correct manifest

errors of law or fact or to present newly discovered evidence. Such motions cannot in any case

be employed as a vehicle to introduce new evidence that could have been adduced during

pendency of the (proceeding). *Rothwell Cotton Co. v. Rosenthal Co*., 827 F.2d 246, 251 (7th Cir.

1987).　*Not a single item of "new evidence" incorporated into the MTR and relevant in any way*

*to germane issues was in any way obscured from the Plaintiff.*　Rather, every single relevant item

about which the Plaintiff claims lack of awareness, was easily accessible to the Plaintiff's

attorneys in the ordinary course of daily business.　Dereliction of duty by the Assistant US

Attorney (see Exhibit A attached), an individual with a decade-spanning history of dereliction of

duty, substance abuse, witness tampering and misconduct is the one and only explanation for

such lack of awareness, if any actually existed, assuming *arguendo* that anything at all is true

about the Plaintiff's pending application. While the undersigned is as much an advocate of

second chances – for AUSAs or anyone else - as anyone might ever be, Leventhal is not so

charitable as to allow this AUSA to further perpetuate the endless, panoply abuses by the

Government in this matter.


**UNDER RULE 12(b)(6) MOTION TO RECONSIDER MUST BE DISMISSED**

5.　　Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a defense of "failure

to state a claim upon which relief can be granted" may be raised by motion in response to a

pleading. Fed.R.Civ.P. 12(b)(6). In considering a motion to dismiss under Rule 12(b)(6), a court must take all well pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. See *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969). The court must only consider those facts alleged in the complaint in considering such a motion. See *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994). A complaint should be dismissed if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). *Turton v. Sharp Steel Rule Die, Inc.*, CIVIL ACTION No. 01-2017, at *1 (E.D. Pa. July 19, 2001).

6. Courts must perform an analysis of 3553(a) factors when considering whether to grant early termination of supervised release. 18 U.S.C. § 3583(e)(1), which authorizes termination of a term of supervised release "at any time after the expiration of one year of supervised release," so long as certain factors set out in § 3553(a) are considered and the release "is warranted by the conduct of the defendant [on supervision] and the interest of justice." 18 U.S.C. § 3583(e)(1). The parties and the Probation Office do not dispute that this Court had the discretion to modify the defendant's term of supervised release when it did so on December 3, 2020. See *United States v. Harris*, 258 F. Supp. 3d 137, 142-43 (D.D.C. 2017) (Howell, C.J.) (discussing this issue and concluding that the "weight of authority confirms that § 3583(e)(1) authorizes termination of [a] statutorily mandated term of supervised release"); see also *United States v. King*, No. 03-cr-249 (BAH), 2019 WL 415818, at *4 (D.D.C. Feb. 1, 2019) (same); *United States v. Wesley*, 311 F. Supp. 3d 77, 79 n.1 (D.D.C. 2018) (Kollar-Kotelly, J.) (same). *United States v. Mauldin*, Criminal Action No. 18-371 (BAH), at *3 (D.D.C. June 1, 2020).

7.      In the entire 17 pages of the Government's pending Motion to Reconsider (Dkt 46) there is not a single word directly equating any newly raised issue enumerated under 3553(a) factors. The closest the Government gets to articulating anything remotely germane to 3553(a) factors are:

    a.  ALLEGED RELEASE EVALUATION. Pages 4 and 5 of the Motion quotes undated statements allegedly made by a Salvation Army RRC staff member. No such text has ever been shown to Leventhal prior to its inclusion in the instant Motion to Reconsider, now 18 months after Leventhal's release from the RRC. Even if every word of these assertions is true, they do not bear directly upon any 3553(a) factor and therefore are irrelevant, inadmissible and not germane to whether or not the discharge order should have been entered. The social worker who allegedly wrote the alleged assessment, Ms. Karen Kinte, is herself subject of a long, never-ending list of RRC resident complaints and had on her desk (while Leventhal was her client) a basket plainly in view full of mood-altering prescription medications.  It would be a completely unrealistic expectation of Leventhal to demand that he only be allowed to re-enter the community and be freed of Probation control, in the servile mode demanded by these people after purposefully living for nearly half a century at the opposite end of the spectrum, employing hundreds of people and conducting international business for decades. Demanding such an outcome would be outside the purposes of sentencing, outside the 3553(a) analysis scope and irrelevant.

    b.  ALLEGED VIOLATION OF NO-CONTACT ORDERS. As is widely known and understood, a prosecutor can indict a ham sandwich. Leventhal has not been found guilty of any crime in Wisconsin or anywhere else except in this case, ever once in his

life (except traffic). Moreover, the referenced orders are a product of acts of bribery of public officials in Wisconsin by Leventhal's ex-wife, a Republican party official, officer and campaign funds director - a truth which has been admitted by the Government for lack of denial.

    c.   These allegations do not tie directly to any 3553(a) factor even if true and valid; and therefore are not germane to the court's determinations related to its discharge order. It should be further noted that the court, Probation and the attorney for the Government were made fully aware of the ungrounded Wisconsin allegations prior to the July 30, 2020 hearing in this matter and wisely chose to ignore them.

8.    Here the Government seeks to relitigate the same closed issues again because it does not like what happened after discharge. Leventhal does not like what has happened after discharge either. However a true recounting of events subsequent to the discharge order does not provide any cause of action upon which the relief requested in the MTR may be granted. If the Government thinks Leventhal broke any federal laws after discharge it should produce evidence of same, indict Leventhal and try him for a crime. However Leventhal has broken no laws. All he has done is exercise his constitutional rights (now that oppression of such rights by the Government has finally come to an end) and exhibited extreme sadness at the wanton destruction by the Government of his relationship with his daughter – as any normal parent would. There is nothing to indict Leventhal about and no genuine cause of action expressed here. Nothing about the allegations of the Government's Motion to Reconsider are genuine causes of action as to 3553(a) factors and therefore provide no authentic legal grounds upon which the relief the Plaintiff seeks may be granted. The Motion to Reconsider should be dismissed for at least this cause alone.

## CAUSES TO DISMISS AND SANCTION UNDER RULE 11

9.     The attorney for the Government declares on page 11 of its Motion to Reconsider: "Nor were they aware that Leventhal's daughter too had been forced to seek an order of protection against him on June 21, 2019," an outright lie by Mr. Hogan.  Leventhal has filed records and copies of the bribe-lubricated Wisconsin proceedings with this court, with this AUSA and with Probation many times, over and over again. Copies of and references to all the Wisconsin orders are in both of Leventhal's motions for early termination.  If Mr. Hogan was unaware as he claims, he might consider drinking more coffee while working so he stays awake long enough to read documents put before him. Lawyers, even holy and exalted men like Hogan sporting Assistant US Attorney business cards, are not immune from prosecution for making false statements in federal proceedings under 18 U.S.C. § 1001. At the very least Mr. Hogan should be sanctioned under Rule 11 for not staying awake long enough to read anything at all in this matter before claiming "no knowledge" of the things he did not bother to read though placed directly in front of him.  Motions to reconsider are not made available to litigants who did not bother to do their duties and want a second chance after arising from slumber.

10.     Hogan goes on: "However, the government representatives have only become aware of these matters in the aftermath of the December 3 order," on page 11, also false. What has actually taken place here is that John Lausch the United States Attorney in this district was made abruptly aware of the Government's misconduct and Hogan's dereliction of duty in this matter and has jumped all over his employee Mr. Hogan to cobble together a filing designed to harass and intimidate Leventhal away from raising the misconduct issues further. Lausch was sent mail at his home to stimulate such awareness in an abrupt but perfectly proper way.

11.     Motions to reconsider were not designed to provide government attorneys with weapons for beating senior citizens over the head and frightening them into backing down from rightful claims, as is attempted here by the Government; "… motions for reconsideration are not "vehicle[s] for . . . taking a second bite at the apple," *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir.), as amended (2d Cir. 2012)" *Reyes v. Phx. Beverages, Inc.*, 13-CV-5588 (PKC) (VMS), at *2 (E.D.N.Y. Oct. 13, 2016).

12.     The US Attorney communicated unmistakably in its MTR (Doc. No. 46) that it did not bother to review the record or the judgment in this matter, before submitting the unequivocal, unqualified, signed statement of no objection to early termination of supervised release it submitted (Response, Doc No. 39).  FRCP Rule 11 requires that filings like Dkt 39 must be signed by the filing attorney or pro se party indicating the filer conducted some reasonable amount of due diligence.  Based upon the Government's Motion to Reconsider, the attorneys in this district who made filings in this matter during 2020 did not bother even to read the Judgment of Conviction, let alone perform any due diligence deeper whatsoever.  If the court is to even spend its time considering the instant motion to reconsider then the filers of Dkt 39 must be sanctioned for submitting a filing without conducting due diligence, as they have admitted. In other words, the Government admits that it performed either zero or insufficient due diligence and now wants a second bite of the apple because it was sleeping – a frivolous, uncompelling motive for granting a motion to reconsider.

13.     The Government cites not a single precedential case or existing law in which any court has ever rescinded an order for early termination of supervision. Rule 11 requires filers (especially sophisticated filers like government lawyers) to allege some existing applicable law

or a good faith argument for the extension, modification, or reversal of existing law in filing pleadings, see *Knipe v. Skinner*, 19 F.3d 72, 74 (2d Cir. 1994). It (the Gov't) here and now requests a draconian, unprecedented order of this court for no reasons other than it (the Gov't) was sleeping up until this point and that the US Attorney received a copy of a perfectly proper legal pleading at his home.  Exhaustive searches by the undersigned of Lexis, Thomson and Casetext under the search terms "rescind order for early termination of supervised release" and several variations of same, produces not a single federal case where such an order has ever been granted.

14.     The Government here alleges no clerical error. They made no scrivner's "mistake," or "inadvertence," they just did not bother to read the record.  Leventhal made numerous references before and during the July 30, 2020 early termination proceedings before this court that he strongly believed he has abundant causes for civil litigation, to which the court replied (paraphrasing from memory): "Mr. Leventhal, if you think you have cause for civil litigation, have at it." Moreover, AUSA Hogan opened the July 30, 2020 proceeding in this matter by complaining to the court that Leventhal attempted to avoid the litigation steps he (Leventhal) has now taken, by requesting a pre-litigation settlement conference with Hogan.  Mr. Hogan then suggested without having any medical training whatsoever that Leventhal was (paraphrasing) mentally unstable for making such a suggestion. Perhaps if Mr. Hogan had spent less time pretending to be a psychiatrist, he could have apportioned a few hours of his infinitely valuable time and headed off the litigation which has now been undertaken. Surely, Leventhal was ripe for such a diversion at that moment.

15.     The US Attorney has 24/7/365 free and unfettered access to the court's PACER system without cost. During every one of the roughly 260,000 minutes between the first point in Spring

2020 that the gov't became aware of Leventhal's wish for early termination and this court's grant of early termination on December 3, 2020, the US Attorney could have accessed PACER and with a few keystrokes, looked-into the record of this matter but did not - for no fault of the undersigned. Yet the AUSA seeks here to transfer its responsibility for dereliction of duty to Leventhal, because it will look better to his boss.

16.    "A motion to reconsider is "an improper vehicle to introduce evidence previously available or to tender new legal theories." *Bally Export Corp. v. Balicar, Ltd*., 804 F.2d 398, 404 (7th Cir. 1986)." *Dunklin v. Homes*, CAUSE No. 07-CV-128-WDS, at *2 (S.D. Ill. May 5, 2009). The "evidence" introduced with the Government's instant pending application was previously available. The Government advanced no oppositional legal theories whatsoever in its unequivocal Response (Dkt 39) which contained no objections of any kind and invited the court to issue the unopposed relief it issued. To the extent that the Government wishes to allege that any of Leventhal's acts after this court's order of Dec 3, 2020 amount to a federal crime, they should do so. Except petitioning the Government for redress of grievances and sending notices of filing to the current places of business of attorneys is not now nor has it ever been a crime.

17.    Every submission of "evidence" regarding anything which took place after the court's discharge order is inadmissible, irrelevant and must be stricken or disregarded.  Federal Rule of Evidence 401 defines relevant evidence as: [E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *Heyne v. Caruso*, 69 F.3d 1475, 1479 (9th Cir. 1995). Unless the Government proves that Leventhal deliberately concealed facts prior to this court's Dec 3, 2020 dismissal (which the Gov't has not alleged and Leventhal expressly denies), there is nothing whatsoever relevant or germane to compel the court's reconsideration

of its Dec 3, 2020 order about events which took place after December 3, 2020. All such submissions must be stricken.

18.     (Motions to consider are) effective yet quite circumscribed methods of "correct[ing] manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal Co.*,827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. International Fidelity Ins. Co.*,561 F. Supp. 656, 665-66 (N.D.Ill. 1982), aff'd,736 F.2d 388 (7th Cir. 1984)), amended on other grounds,835 F.2d 710 (7th Cir. 1987). There has been no manifest error of law or fact. Leventhal's motion for early termination was unopposed and no fraud or deliberate withholding by Leventhal has been alleged either. Case closed. Leventhal has no obligation to pry open the government attorney's eyes and force him to read the record.

19.     Motions to reconsider are extraordinary in nature and, because they run contrary to notions of finality and repose, should be discouraged. See *United States v. All Assets Equip. of West Side Bldg. Corp.*,843 F. Supp. 377, 384-85 (N.D.Ill. 1994) ("Motions for reconsideration are not a matter of routine practice in this jurisdiction."). This disfavored status is due largely to the fact that reconsideration of past rulings competes with an equally important, and equally discretionary principle known as the "law of the case" doctrine. Simply put, this doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messinger v. Anderson*, 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912) (Holmes, J.). Some formulations of this doctrine express a quite limited set of circumstances in which a court can review prior decisions. *E.g., Barrington Press, Inc. v. Morey*, 816 F.2d 341, 343 n. 2 (7th Cir.) ("The law of the case doctrine precludes reconsideration of a matter already decided `unless one of three exceptional circumstances exists: the evidence in a subsequent trial was substantially different; controlling authority has

since made a contrary decision of law applicable to such issues; or the decision was clearly erroneous and would work a substantial injustice.'"), cert. denied sub. nom *Morey v. Barrington Press, Inc*., 484 U.S. 906, 108 S.Ct. 249, 98 L.Ed.2d 207 (1987). There was no judicial error made here; the court proceeded exactly as the law provides and Leventhal made no effort to conceal any prior fact nor even the alleged facts newly raised now by the Government.

20. The "law of the case" in this instance, is the court's required 3553(a) analysis as to facts and conditions which existed on or before December 3, 2020. The Plaintiff has not presented a single item or fact allegation germane to this analysis or relevant to the issues before the court on December 3, 2020.

## NO NEW CRIME IS ALLEGED

21. One might rationally argue, that if Leventhal had for example, gone out and robbed a bank the week after discharge, committed an assault, executed a Ponzi scheme or burned a building down, that fairness and public interest required reconsideration of this court's discharge order. But no such thing happened or is even alleged. Leventhal has not violated the in-force Wisconsin no-contact orders or any other law since this court's Dec 3, 2020 order.

22. As to Malgorzata Kubiak's attempt to convince Leventhal's daughter to contact him, this was done out of Ms. Kubiak's concern about the relentless, debilitating, crippling emotional pain upon Leventhal inflicted by the Government itself for no rightful or proper cause, arising from the Government's deliberate destruction of Leventhal's relationship with his daughter Amelia. Ms. Kubiak is Amelia's ex-stepmother and has as much right to contact Amelia out of love and concern for father and daughter as anybody else. Demonizing this contact simply exemplifies the demented, perverse attempts here by the Government to conceal its own egregious

misconduct, by generating smokescreen after smokescreen over what is otherwise restorative behavior attempted to repair horrendous and undue injuries. "Shameful" would be the right choice of words to describe this sort of distortion and demonization, in the event there was even an ounce of shame in the minds of any of these people. Instead they proceed for self-righteous rear-end covering and no other real purpose.

23.     Leventhal, while barely ever leaving his home after this court's Dec 3, 2020 order, filed one lawsuit in one state court and three motions in this case, the particulars of which have not been denied by any party at this point. "Fusillade," the term used by the attorney for the government to describe Leventhal's filings is a completely outlandish characterization and even if valid, does not rise to any cause to grant the Government's pending application.

24.     Under the First Amendment "Congress shall make no law . . . abridging . . . the right of the people . . . to petition the Government for a redress of grievances." *Stern v. United States Gypsum, Inc.*, 547 F.2d 1329, 1342 (7th Cir. 1977).  Perhaps if these same parties opposing Leventhal's current actions had not resolutely stood in the way of every fully rightful attempt by Leventhal to reestablish contact with his daughter through many, many attempts over the past five years, these present actions to petition for redress would be unnecessary or overshadowed by the joy Leventhal would experience if allowed a few hours with his daughter. It is not a crime to attempt to resurrect a parent/child relationship. State court records are bursting at the seams with punitive rulings against fathers who act to avoid their parental responsibilities. What is that about? Nothing except generating legal fees apparently, as the Wisconsin court has absolutely proven in Leventhal's case.

25.     No new crime is alleged in the MTR and there is no compelling judicial interest in reversing the court's discharge. If future presiding judge(s) in any of the complained-of matters

are convinced that Leventhal is abusing his right to petition, they are free to exercise sanction power. This court is being recruited here to act as the business end of a baseball bat for these bullies and the court must not stand for it.

26.    Moreover, the government's statement: "… the government was unaware of Leventhal's lengthy pattern of abusive and harassing litigation when it responded to his early termination motion" (motion, page 8) is preposterous and false. Government lawyers cannot, when talking out of one side of their mouths represent themselves all inclusively as "the Government," and then when it suits their purposes claim to be some tiny, isolated backwater of the Government. "The Government" is an all-inclusive term and given the certain truth that "The Government's" self-owned and operated PACER system is a perfect repository of all the information which "The Government" claims it was unaware – this claim is patently false in its face.

27.    "The Government" as a body politic was abundantly aware of the entire history in this matter. That one of its soon-to-retire employees was not awake enough or diligent enough to make himself aware also, speaks to this employees' own failings, not Leventhal's. If it is true that Mr. Hogan was unaware, he admits then to gross dereliction of duty and should be sanctioned for that as well.

**MOTION IS UNTIMELY AND A NULLITY**

28.    The current COVID 19 exceptional pandemic circumstances and standing adaptive orders provide certain advantages to litigants simultaneously with all its disadvantages. One of these advantages is the ability for every party to have access to the court's electronic filing system 24 hours per day, 7 days per week, 365 days per year. Weekends and holidays are moot and no longer form barriers to filing times of any rightful filer in any meaningful way. The allowances

in filing deadlines for weekends and holidays are moot and no longer applicable and will remain inapplicable until court procedures return to normal.

29.     The Government's deadline to file its instant motion was December 3, 2020 plus 30 days, or January 2, 2021. The filing was made two days late on January 4, 2021. "Timely notice of appeal is mandatory and jurisdictional, meaning that "if an appellant does not file his notice of appeal on time, we cannot hear his appeal." *Varhol v. National R.R. Passenger Corp.*, 909 F.2d 1557, 1561 (7th Cir. 1990) (en banc)." *Hope v. U.S.*, 43 F.3d 1140, 1142 (7th Cir. 1994). The Government's filing of its Motion to Reconsider is untimely. It neither requested nor received leave of the court to file after the deadline. The filing is a nullity and should be dismissed.


**THE GOVERNMENT'S ULTERIOR MOTIVES AND BAD FAITH**

30.     "An ulterior motive must be to benefit "some unrelated interest" " *In re Bataa/Kierland LLC*, 476 B.R. 558, 565-66 (Bankr. D. Ariz. 2012). The Government's instant motion admits its own bad faith and ulterior motives on its face. The MTR has nothing whatsoever to do with anything this court considered in its December 3, 2020 findings. The MTR is motivated by the unrelated interest which "the Government" (actually, a group of employees of the gov't) has in shielding its employees and colleagues from fully deserved civil and criminal liability which they themselves have generated for themselves through their rampant, wanton misconduct as has taken place to Leventhal's extreme and undeserved detriment since the beginning of this matter.

31.     What "the Government" should actually be doing rather than filing its frivolous MTR, is investigating Leventhal's allegations instead of trying, without any medical training whatsoever, to paint Leventhal as "nuts." See for example, the Exhibit B email message to AUSA Hogan,

ignored. Instead, Mr. Hogan forwards the ongoing obstruction of justice conspiracy alleged by Leventhal by filing the instant MTR.

32.     Federal Rule of Civil Procedure 11 provides that every pleading must be signed by at least one attorney of record and further states that, in "presenting to the court a pleading . . . an attorney . . . certifies that[,] to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purposes . . .; (2) the claims . . . are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support . . .; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed.R.Civ.P. 11(a), (b). The rule further provides that a party filing a motion for sanctions must do so separately from any other motion and must describe the specific conduct that it alleges violates Rule 11(b). Id. at (c)(2). "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule[.]" Id. at (c)(1).

33.     The Seventh Circuit has observed that courts "may impose Rule 11 sanctions for arguments `that are frivolous, legally unreasonable, without factual foundation, or asserted for an improper purpose.'" *Indep. Lift Truck Builders Union v. NACCO Materials Handling Grp., Inc*., 202 F.3d 965, 968-69 (7th Cir. 2000) (quoting *Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998)). The Supreme Court has instructed that Rule 11 "requires a court to consider issues rooted in factual determinations" and has explained, as an example, that, "to determine whether an attorney's prefiling inquiry was reasonable, a court must consider all the circumstances of a

case." *Cooter Gell v. Hartmarx Corp.*, 496 U.S. 384, 401 (1990). *Axiom Insurance Managers Agency v. Indemnity Ins. Corp.*, No. 11 C 2051, at *5-6 (N.D. Ill. Sep. 1, 2011).

34.     As it comes to the Government's response (Dkt No. 39) prior to this court's issuance of its discharge order in this matter, the Government has already admitted that its attorney made no reasonable prefiling inquiry. Yet it seeks here to be rewarded for this dereliction and be issued yet a new tool by this court (re-inserting Leventhal into Government control) with which to beat Leventhal over the head for having the temerity to complain about being ground into dust wrongly. The government admits that there is no actual cause for filing its MTR except to suppress Leventhal's access to courts, right to redress of grievances and God-given right to spare no effort to reconnect with his daughter. The Government is further afraid that allowing Leventhal to reconnect with his daughter will provide a pathway to proof of Leventhal's misconduct allegations against its colleagues. None of this represents "good faith" causes for filing the MTR. The MTR is filed for resolutely improper purposes.

35.     The Government's Motion to Reconsider was filed to harass, delay, or needlessly increase the cost of litigation, in violation of Rule 11(b)(1); the Motion's contentions were unwarranted under existing law, in violation of Rule 11(b)(2); and the Motion contained factual allegations unsupported by evidence, in violation of Rule 11(b)(3). *Zinner v. Olenych*, Civil Action No. 2:14cv163, at *4-5 (E.D. Va. Jan. 22, 2016).  Moreover the motion is designed to enlist this court in creating an on-demand weapon with which to harass and intimidate Leventhal in the future where it comes to other unrelated matters and therefore is not a proper basis upon which to grant the requested relief.  In short, the Government requests that this court "sets up" Leventhal so that even the most minor alleged infraction in the future may be used by the Government to either threaten Leventhal with prison or actually imprison him, thereby further

denying his rights because allowing Leventhal to enjoy the benefit of his constitutional rights will ultimately give rise to civil damages judgments and criminal judgments against colleagues of the attorney for the government.

36.     Leventhal has applied to this court for a Special Prosecutor to investigate his allegations of misconduct in this matter; allegations admitted by the Government through its absence of denial. It goes without saying that the Government does not want its colleagues, associates in Probation or their employees to be found guilty of the allegations made by Leventhal. Among its reasons for filing its instant motion, is to harass Leventhal into abandoning his application for a Special Prosecutor. For at least this reason alone the Government's Motion to Reconsider must be dismissed under Rule 11(b)(1).


**MOTION TO RECONSIDER SHOULD NOT BE GRANTED WHERE MOVANT SEEKS SOLELY TO RELITIGATE A DECIDED ISSUE**

37.     Under *Shrader v. CSX Transportation, Inc.,* 70 F.3d 255, 257 (2d Cir. 1995). "a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."

38.     There is one and only one objective by the Government in filing of its MTR: to relitigate this court's final December 3, 2020 order. As a practical matter the Government itself actually decided the issue in Leventhal's favor by filing its Dkt 39 Response which endorses and effectively requests entry of this court's uncontested order to discharge.

39.     There is no cause or authentic legal basis upon which to grant any relief requested in the Government's Motion to Reconsider. The MTR must be dismissed.

JUDGE ANDREA R. WOOD - 18

**RELIEF SOUGHT**

40.     Mr. Leventhal, a senior citizen who checks and tests his own maintenance of cognitive function every day, is loathe to suggest that AUSA Hogan, who is five years older than Leventhal and has a lengthy history of substance abuse, disbarment and DOJ termination, should be sanctioned for all of the sanctionable acts Hogan undertook in filing the instant MTR. However, these cavalierly undertaken improper acts have knowingly forwarded an abominably destructive obstruction of justice conspiracy with Hogan's knowledge, to the extreme detriment of Howard Leventhal and his daughter. The undersigned leaves it to the Court's sound judgment to decide whether or not to sanction Hogan.

41.     Regardless, the Government's MTR provides no cause to grant the relief requested and is filed solely to harass and intimidate Leventhal. For the above stated causes, the MTR must be dismissed.

**CONCLUSION**

42.     Defendant Howard Leventhal could not possibly want less to ever enter a courtroom again, ever speak to a lawyer again, ever write another legal pleading or do anything remotely related to these activities.  However these proceedings have left him with undue, egregious, irreparable, intolerable physical and spiritual harm which must be somehow rectified.  It will not be possible for Mr. Leventhal to function again in any normal way until and unless those individuals who wrecked this undue harm upon him – fix the sacred and holy thing they have broken in some most minimal way.  Instead of lifting a finger to do so, they have filed a frivolous, preposterous, muscle-flexing, legally ungrounded motion: their instant motion to

reconsider, Dkt No. 46.  If they instead spent just a tiny fraction of their energy and boundless intellects trying to fix what they broke, none of this would be necessary.

**NOW THEREFORE** Defendant respectfully requests orders of this court:

1.  Striking every reference in the MTR to any and all allegation of facts and events alleged to have taken place after December 3, 2020; and

2.  Dismissing the MTR entirely; and

3.  Considering the question of whether Assistant U.S. Attorney William Hogan should be sanctioned for the sanctionable conduct set forth above and herein.

Respectfully submitted,

_____
Howard Leventhal
Defendant pro se                    Date: January 6, 2021

# EXHIBIT A

## Leventhal's Initial Response to

## Government's MTR

Howard Leventhal
1205 E Prairie Brook Dr D1
Palatine, IL 60074
ph 262-997-8570
email: HLEV3@AOL.COM

January 4, 2021

RE **13-cr-844, US v LEVENTHAL**
PRELIMINARY RESPONSE TO GOV'T'S
MOTION DOCKET#: 46

Honorable Judge
Andrea R. Wood
United States District Court

*Via Email to Courtroom Deputy and to Temporary E-Filing email*

Your Honor:

## THE CERTAIN NEED FOR A SPECIAL PROSECUTOR

Missing entirely in the Gov't's motion to reinstate Supervised Release in my case, is a single word of denial of any of the allegations I have made – twice – in this case about prosecutorial and other misconduct in this matter. It is unsurprising that the Government sidesteps the allegations I have raised about such misconduct; and instead attempts to enlist this court to further conceal such misconduct. They resort to diagnosing my mental state without having qualifications to do so and while ignoring the legal certainty that all of the allegations I have made in my various filings are admitted by them. There could be no greater need for a special prosecutor - as I have requested - to deal with the issues I have raised, than right now.

## AUSA HOGAN'S HISTORY OF MISCONDUCT

It is also unsurprising that Mr. Hogan, the government's attorney in this matter, could not care less about allegations of misconduct. In fact misconduct for him is just part of the job. He was disbarred and fired by the Department of Justice twenty years ago for incredible disconnection from the rule of law, not unlike the misconduct committed to my extreme detriment in this matter, see Chicago Tribune article attached.

## NO ATTEMPT WAS MADE TO CONCEAL THE RECORD

It is certain that the US Attorney's office of the Northern District of Illinois has access via this court's PACER system, to the entire record of my case in both the Eastern District of New York and the Northern District of Illinois. The government was on certain notice of my intent to seek early termination of supervised release for six months prior to this court's order of December 3, 2020. That Mr Hogan is lazy, incompetent, relegated to minor matters by his superiors due to his own history of misconduct and did not want to consume his valuable time to research the record is his fault - not mine. He and the US Attorney filed an unqualified statement of "no objection" to early termination of my supervised release and applied their signatures to it with full, complete, unfettered access to the record. Nothing about this merits reconsideration and even if I had wanted to conceal the record, doing so is impossible.

## "DOXING"

Mr Hogan is apparently confused about the definition of "doxing." Doxing is publishing information in open forums like Twitter for example. The individuals who I served are all working at home. They certainly take no pause when publishing anybody else's name and address in their public filings and to the best of my knowledge, there is no law which prohibits filing notices of motion in the court's public record including the work address of those served, which in this case, is their home addresses, which I obtained from commonly available public sources.

## "UNHINGED"

While almost everything written in the government's motion to reconsider is either irrelevant or meritless, one part of it is most certainly true: I am "unhinged." I am unhinged because I have not seen my beloved daughter for five years now, by design of the very individuals whom the government now seeks to hand over control of me again. Does this sound crazy or incredible? I agree, it is both. Except it is true and the Gov't has admitted it.

I am unhinged because I have been repeatedly told to just "take it and shut up." I am unhinged because I was physically tortured in prison by deliberate, malicious, negligent acts of these very same people; torture which has injured me with lasting medical consequences, none of which were denied by the Government either. What exactly is expected of me? To send these people thank-you notes and Christmas cards? They expected me to lose my mind and after only partially succeeding, they petition you now to make it worse.

I could go on and on regarding what exactly I am unhinged about, as I have in my civil RICO complaint in state court; none of the allegations of which have been denied either. I am unhinged about raising these issues over and over again over the last five years, being ignored and never provided with a moment of opportunity to test any of the facts before a jury. I am unhinged because all these people who have gained financially by inflicting this egregious harm upon me and my daughter, <u>now apply to this court to assist them to further obstruct justice</u> and further deny my right to seek redress for their misconduct.

What am I not unhinged about? About being convicted of a crime and about owing restitution to the victims. Just about the only thing written in my judgment of conviction not fabricated of whole cloth by the Government, was the actual loss and the names of the victims.  It should be noted that even though some of the victims submitted damaging statements about me to the court during sentencing – I have never either written a single unpleasant or unkind word about any of them, nor sought redress against any of them, nor to I plan to do so. Why? Because for the most part, their submissions were true and did not seek to deny my rights, eviscerate my parenthood and incinerate me unduly with fabrications, like the Government did.

Neither I nor those people who enter federal court in the future should be forced to accept all of this undue abuse and just "take it and shut up." That's why I am unhinged. It is not in my nature to just take it and shut up, nor will it ever be in my nature or practice to simply walk away from my daughter in furtherance of the for-profit obstruction of justice conspiracy which took place here.

## ASSIGNED COUNSEL

Buried in one of my three recent motions is a request for assigned counsel. Rather than a federal defender, I would appreciate it, if at all possible, to be assigned a CJA Panel lawyer who is not entirely dependent upon the Government for his or her income. Please.

## REQUEST FOR EX-PARTE CONFERENCE

I respectfully request that the court kindly allow me a thirty-minute ex-parte online conference with the court, before the court call set for Friday at 11am if at all possible please. I propose to discuss an issue that does not bear directly on matter material to the various applications before the court. Many thanks for your kind consideration.

Respectfully,

Howard Leventhal

# Two decades after scandal, prosecutor testifies in defense of El Rukn case

By JASON MEISNER

CHICAGO TRIBUNE |

DEC 09, 2016 AT 7:50 PM

William Hogan Jr.'s career as a federal prosecutor has long been linked to the landmark El Rukn trials that ended in controversy two decades ago over allegations that cooperating witnesses had used drugs in jail, stole sensitive prosecution papers and had sex in government offices.

At the time a rising Justice Department star, Hogan was fired from his job after the bombshell allegations surfaced. But he fought hard to clear his name, and two years later was ordered reinstated to his post at the U.S. Attorney's Office by an administrative judge who found no convincing evidence of wrongdoing on Hogan's part.

Now, some 20 years later, Hogan took the witness stand in a federal courtroom Friday to tell a jury about his stewardship of an El Rukn prosecution that decimated the gang's leadership. Hogan's testimony came in the trial over a lawsuit alleging former El Rukn general Nathson Fields was framed by Chicago police in a notorious 1984 double murder.

Using a sometimes contentious tone, Hogan, 65, now in his 36th year as a federal prosecutor in Chicago, denied he had any knowledge of the drug use or sexual misbehavior by several cooperating witnesses. Either way, he said, "it had nothing to do with the prosecutions." Hogan said the prosecution

documents that were found in a cell at the Metropolitan Correctional Center had been inadvertently snatched up by cooperating witness Derrick Kees during a visit to Hogan's office. The documents were recovered a short time later and did not contain anything that would have affected the witnesses' testimony, he said.

[story continues at: https://www.chicagotribune.com/news/breaking/ct-el-rukn-trial-william-hogan-met-20161209-story.html ]

# EXHIBIT B

**Email message from Leventhal to Hogan**

| | |
|---:|:---|
| **From:** | hlev3@aol.com, |
| **To:** | william.hogan@usdoj.gov, |
| **Subject:** | Complaint |
| **Date:** | Thu, Dec 24, 2020 6:33 am |
| **Attachments:** | ComplaintLeventhalvHandelandetal.pdf (6908K) |

---

Mr Hogan:

Please see attached. Write it off all you want by saying "this guy is nuts," as anticipated - among the very first FedEx packages that will be received by the next Attorney General, is this complaint and a cover letter. With no expectation that you will accommodate, I nonetheless request that you investigate these allegations.

- Howard Leventhal