UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
|     Plaintiff, ) | |
| ) | 13 CR 844 |
| ) | |
| v. ) | Honorable Andrea R. Wood |
| ) | |
| HOWARD LEVENTHAL, ) | |
|     Defendant. ) | |

**REPLY TO GOVERNMENT'S MOTION TO RECONSIDER
EARLY TERMINATION OF SUPERVISED RELEASE**

NOW COMES HOWARD LEVENTHAL, by and through his attorney, QUINN A. MICHAELIS, and respectfully requests that this Honorable Court deny the government's Motion to Reconsider Early Termination of Supervised Release. In support, Mr. Leventhal states as follows.

    I.    **BACKGROUND**

On March 5, 2016, The Northern District of Illinois accepted transfer of jurisdiction over Mr. Leventhal's supervision from the Eastern District of New York. (Doc. 11). As part of that transfer, the docket in this case was updated with the docket sheet from the Eastern District of New York with Mr. Leventhal's EDNY case number, and the complete judgment in a criminal case originally entered in the EDNY on December 19, 2016. (Doc. 11). On page 41 of this document are the special conditions of supervised release ordered by the EDNY: "5. The defendant cannot commence any civil litigation, nor seek to reopen any closed civil cases, without the Court's permission, which will be granted if the Court determines that

1

there is a colorable basis for the proposed claim." (Doc.11 at 41). This section of the paperwork is then followed by an "Amended Judgement in a Criminal Case," which includes the exact same language preventing Mr. Leventhal from commencing any civil litigation without the court's permission. (Doc. 11 at 53).

On May 11, 2020, Mr. Leventhal filed a motion for early termination of supervised release.. (Doc. 15). On May 28, 2020,the government to respond to Mr. Leventhal's motion.. The government argued against early termination, citing the fact that Mr. Leventhal had not completed a full year of supervision and that he had violated a non-contact order in Wisconsin. The Court denied Mr. Leventhal's request for early termination without prejudice after Mr. Leventhal had completed one year of supervised release. (Doc. 33).

Then, on November 4, 2020, Mr. Leventhal filed a second motion for early termination. The government filed a one-page response stating that it did not oppose Mr. Leventhal's request. (Doc. 39). On December 3, 2020, this Court granted Mr. Leventhal's request for early termination as unopposed by the government. (Doc. 41).

## II. ARGUMENT

### a) The government's motion to reconsider should be denied because it has waived the claims it now seeks to litigate on reconsideration.

As the government noted in its initial motion, a motion to reconsider is an available remedy in a criminal case. "Motions to reconsider serve a limited function; to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.

1987) (*quoting Keene Corp v. International Fidelity Ins. Co.,* 561 F.Supp. 656, 665 (N.D.Ill. 1982). Motions to reconsider are "not an appropriate forum for rehashing previously rejected arguments." *Sikora v. AFD Indus., Inc.,* 18 F.Supp. 2d 841, 822 (N.D. Ill. 1986). "Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time." *Keene Corp* 561 F.Supp at 666.

The rules and procedures used to consider motions to reconsider depend on whether the motion is brought under Federal Rules of Civil Procedure 59 or Rule 60. "When a motion to alter or amend judgment under Rule 59(e)…is filed more than 10 days after entry of judgment [, it] automatically becomes a Rule 60(b) motion." *Talano v. Northwestern Medical Faculty Foundation*, 273. F.3d 757, 762 (7th Cir. 2001) (*citing Hope v. United States*, 43 F.3d 1140, 1143 (7th Cir. 1994)). Motions under Rule 60(b) "must be shaped to the specific grounds for modification or reversal found in 60(b)—they cannot be general pleas for relief." *United States v. Deutsch*, 981 F.2d 299, 301(7th Cir. 1992). Thus, under Rule 60(b):

> the court may relieve a party … from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

FED. R. CIV. PRO. 60(b).

Relief pursuant to a motion to reconsider brought under Rule 60(b) "is an extraordinary remedy and is granted only in exceptional circumstances." *Dickerson*

3

*v. Bd. Of Educ.,* 32 F.3d 1114, 1116 (7th Cir. 1994). "Attorney failures, for instance, provide no basis for avoiding a judgment under Rule 60(B)." *Russell v. Delco Remy Div. of General Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995) (*citing United States v. 7108 West Grand Ave.* 15 F.3d 632, 635 (7th Cir. 1994).

    The government's motion to reconsider is not tailored to any of the grounds specified by Rule 60(b). Instead, the government requests relief based on information that was available, and in some instances available for years prior to Mr. Leventhal's motion for early termination, but that the government was "not aware of" when it advised the court that it did not oppose Mr. Leventhal's motion. The government blames its unawareness on the fact that when Mr. Leventhal's supervision was transferred to the Northern District of Illinois, his PSR was not transmitted to the US Attorney's office or the Probation office in this district. The government claims that it was unaware of the sanctions levied against Mr. Leventhal by multiple courts including this district, and that it was further unaware of Mr. Leventhal's litigious background, but provides no reason why it could not discovery any of this information during the initial litigation.

    The government's contentions do not amount to "newly discovered evidence." As noted above, information about the special conditions of release were publicly available on this docket in this case for over four years. The notice that Mr. Leventhal is a restricted filer within the Northern District of Illinois was publicly available on the district court's website since 2015[1]. Certainly the unusual

---

[1] https://www.ilnd.uscourts.gov/RestrictedFilers.aspx

condition of supervised release and Mr. Leventhal's placement on the Court's list of restricted filers would have put the government on notice as to Mr. Leventhal's litigious nature.

Additionally, the government notes in its motion for reconsideration that on June 15, 2020, before Mr. Leventhal's second motion for reconsideration was filed, that Mr. Leventhal field a motion for sanctions against various attorneys, including AUSA Hogan. Surely becoming a named defendant in a *pro se* lawsuit alerted the government that Mr. Leventhal had the type of history of which the government now claims it was unaware. *Do you want to mention here that the government had an opportunity to review the PSR, especially when Mr. Leventhal filed a lawsuit against Mr. Hogan.

The government further claims that it was unaware of Mr. Leventhal's harassing behavior towards his ex-wife and daughter leading to multiple orders of protection, despite being made aware of an active arrest warrant for Mr. Leventhal for having violated an order of protection. The violation report filed before the government's initial response to Mr. Leventhal's first motion for early termination not only specifically mentioned that Mr. Leventhal had violated the no-contact order, but listed the case number for his case in Wisconsin. The active warrant for violating the no contact order was one of the original bases of objection to Mr. Leventhal's first motion for early termination. This was not newly discovered evidence. Moreover, the government obtained and submitted the orders of

5

protection against Mr. Leventhal from Ozaukee County—Mr. Leventhal's criminal case history in Wisconsin is publicly available online[2].

All of the exhibits the government submitted in support of the motion to reconsider, with the exceptions of Exhibits 8, 9, and 10, were available at the time Mr. Leventhal filed his Motion for Early Termination, and could have been discovered had the government exercised the same due diligence in considering its response to Mr. Leventhal's Motion that it has exercised in preparing its Motion to Reconsider. The fact that the government had the opportunity to discover all of this information when it was invited by the court to respond to Mr. Leventhal's motion for Early Termination, but did not attempt to discover that information, is not an "exceptional circumstance." *See 7108 West Grand Ave.,* 15 F.3d at 633 ("Claimants in this forfeiture proceeding pose the question whether their former attorney's gross negligence in presenting their interests entitle them to another opportunity to litigate. The answer is No."). Not only does the government claim to have been unaware of information that was publicly available for months to years before it agreed to Mr. Leventhal's early termination, but was actually already aware of much of the information it now claims not to have known.

Furthermore, the government argues that Mr. Leventhal's behavior after his supervised release was terminated should be considered as a basis for reinstating his supervised release (Gov Exhibits 8, 9, 10). The government provides no case law to support its position that an individual must be bound in perpetuity by the

---

[2] All Wisconsin state court records are publicly available at https://wcca.wicourts.gov/

6

conditions of a terminated period of supervised release because no such case law exist. Such an idea offends the very notions of the Constitution of the United States. The remedy the government suggests, to punish Mr. Leventhal for acts that were committed while he was no longer on supervised release, dances dangerously close to an ex post facto application of the conditions of supervised release.

 Finally, the government supplemented its Motion to Reconsider Early Termination of Supervised Release with a new allegation that Mr. Leventhal was being dishonest with the court when he stated that he had abandoned his previous behavior. As proof the government alleges that Mr. Leventhal created a new website containing false information about his former attorney in the EDNY, Steve Zissou. Even taken as true that the website was created by Mr. Leventhal, which is not conceded here, the Whois information about that website shows that the website was last updated on January 1, 2021—before Mr. Leventhal's numerous statements to the Court regarding his changed behavior. (See Exhibit). To hold this against Mr. Leventhal as some kind of proof of his false change of heart is as untimely as the rest of the government's claims.

 The government had multiple opportunities to raise the above issues in opposition to Mr. Leventhal's motion for early termination. In some instances the government raised these issues but ultimately abandoned them. In other instances, the government had ample opportunity to discover publicly available information (or information that was contained on this very docket) that supported these issues and now wants a second chance to correct its own lack of due diligence. And failing

that, the government hopes to ignore Mr. Leventhal's due process rights by using his post-termination-of-supervised-release behavior as a basis to reinstate his supervised release. The government has had two separate opportunities to address the issues it now raises in further detail in its motion to reconsider. None of these arguments raise to the level of an "exceptional circumstance" entitling the government to reconsideration. The government's motion should be denied.

### b. reinstating Mr. Leventhal's supervised release would be a violation of the Double Jeopardy Clause of the United States Constitution.

A defendant is entitled to an expectation of finality of his sentence, particularly when that sentence has been served. *United States v. Bishop*, 774 F. 2d 771, 775 (1985), *see also Crist v. Bretz*, 437 U.S. 28, 33 (1978)(" A primary purpose served by [the double jeopardy rule] is akin to that served by the doctrines of *res judicata* and collateral estoppel—to preserve the finality of judgments.") *United States v. Scott*, 437 U.S. 82, 92 (1978)(" the primary purpose of the Double Jeopardy Clause was to protect the integrity of a final judgment."). In discussing the difference between a termination of supervised release and the revocation of supervised release, the Supreme Court noted the "termination" of supervised release provided for in 18 U.S.C. § 3582(e) "is an unequivocal provision for ending the term of supervised release without the possibility of its reimposition or continuation at a later time." *United States v. Johnson*, 529 U.S. 694, 704 (2000).

8

The Double Jeopardy Clause provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The guarantee against double jeopardy encompasses three separate constitutional protections. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Id.* at 717, 89 S.Ct. 2072.

The protection against multiple punishments for the same offense was discussed in great detail in the seminal case on the matter, *Ex Parte Lang*, 85 U.S. 163 (1873). In *Lang*, the defendant was sentenced to one year of imprisonment and a fine of $200 for stealing mailbags from the post office. The maximum penalty under the statute of conviction was a sentence of no more than one-year imprisonment *or* a maximum fine of $200. The defendant's $200 fine was paid the day after sentencing and was then deposited with the United States Treasury. Six days after sentencing, the defendant was returned to court on a writ of habeas corpus, his judgement was vacated, and he was resentenced to a one-year term of imprisonment.

The Court began with the proposition,

> If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence. And though there have been nice questions in the application of this rule to cases in which the act charged was such as to come within the definition of more than one statutory offence, or to bring the party within the jurisdiction of more than one court, there has never been any doubt of its

9

entire and complete protection of the party when a second punishment is proposed in the same court, on the same facts, for the same statutory offence.

There, the Court reasoned that once the defendant paid his fine of $200, and it had been deposited with the US Treasury, the defendant had endured one of the alternative mechanisms of punishment available under the statue of conviction, and therefore the lower court's authority over the defendant had ceased:

> We are of opinion that when the prisoner, as in this case, by reason of a valid judgment, had fully suffered one of the alternative punishments to which alone the law subjected him, the power of the court to punish further was gone.
> The record of the court's proceedings, at the moment the second sentence was rendered, showed that in that very case, and for that very offence, the prisoner had fully performed, completed, and endured one of the alternative punishments which the law prescribed for that offence, and had suffered five days' imprisonment on account of the other. It thus showed the court that its power to punish for that offence was at an end. Unless the whole doctrine of our system of jurisprudence, both of the Constitution and the common law, for the protection of personal rights in that regard, are a nullity, the authority of the court to punish the prisoner was gone. The power was exhausted; its further exercise was prohibited. It was error, but it was error because the power to render any further judgment did not exist.

*Ex Parte Lange*, 85 U.S. 163, 176 (1873)

In a similar case from 1943, a petitioner was held in contempt of court and sentenced to 6 months imprisonment, and a $500 fine. *In re Bradley*, 318 U.S. 50, 51 (1943). Similar to the sentence in *Lange,* the petitioner's sentence could only be imprisonment *or* fine, and the petitioner paid his $500 fine shortly after being taken into custody. *Id.* at 51-52. Relying on *Lang*, the Supreme Court held,

> the petitioner had complied with a portion of the sentence which could lawfully have been imposed. As the judgment of the court was thus executed so as to be a full satisfaction of one of the alternative penalties of the law, the power of the court was at an end… It follows that the subsequent amendment

10

> of the sentence could not avoid the satisfaction of the judgment, and the attempt to accomplish that end was a nullity. Since one valid alternative provision of the original sentence has been satisfied, the petitioner is entitled to be freed of further restraint.

*Id.* at 52.

In a more recent case from our own circuit, the appellate court was tasked with determining whether a tax penalty was sufficiently punitive as to constitute a "punishment" for double jeopardy purpose. The Seventh Circuit found that the particular tax penalty in *Dye v. Frank* was akin to a criminal punishment, one that had been levied against the defendant before his criminal prosecution, and therefore the defendant had already been punished once for the same crime for which he was currently being imprisoned. *Dye v. Frank*, 355 F. 3d 1102 (7th Cir. 2004).

Here, Mr. Leventhal received an early termination of supervised release under 18 U.S.C. §3583(e)(1). His supervised release was terminated and he was discharged. He was entitled to rely on the finality of that judgment. Now the government seeks to reinstate that which has been "end[ed]… without the possibility of its reimposition or continuation at a later time." *Johnson*, 529 U.S. at 704. Once the term of supervised release was terminated, Mr. Leventhal had "fully performed, completed, and endured one of the alternative punishments which the law prescribed for that offence" and therefore "the court's power to punish for that offense was at an end." *Dye v. Frank*, 355 F.3d at 108 (quoting *Ex Parte Lang*, 85 U.S. at 176, and *In re Bradley*, 31 U.S. at 52). To reimpose supervised release after its termination would punish Mr. Leventhal a second time once he has completed

11

his sentence—a violation of the Double Jeopardy Clause. The government's motion to reconsider should be denied.

### III. CONCLUSION

The government has not provided sufficient information to satisfy the strict requirements of Rule 60(b): the evidence it presents now has either been previously presented in the first objection to Mr. Leventhal's motion for early termination and abandoned, or is only "newly discovered" because the government failed to exercise the barest of minimum of due diligence in reviewing the docket in this case. Further, there are other avenues, outside of reimposition of supervised release, to address Mr . Leventhal's behavior, post-termination— avenues the government has repeatedly told the Court it is exploring.

Further, Mr. Leventhal's supervision is terminated. To reimpose supervised release after termination would run afoul of the Double Jeopardy Clause. As such, the Government's motion for reconsideration must be denied.

Respectfully submitted,

<u>s/ Quinn A. Michaelis</u>
Attorney for HOWARD LEVENTHAL

Quinn A. Michaelis
73 W. Monroe, Suite 106
Chicago, IL 60603
(312) 714-6920

<u>**CERTIFICATE OF SERVICE**</u>

I, Quinn A. Michaelis, an attorney, certify that in accordance with Fed. R. Crim. P. 49, Fed R. Civ. P. 5, LR5.5, and the General Order on Electronic Case Filings (ECF), the following document:

<u>**REPLY TO GOVERNMENT'S MOTION TO RECONSIDER
EARLY TERMINATION OF SUPERVISED RELEASE**</u>

was served on February 23, 2021, to all parties of record via the CM/ECF system.


<u>s/ Quinn A. Michaelis</u>

Quinn A. Michaelis

Attorney for HOWARD LEVENTHAL
73 W. Monroe, Suite 106
Chicago, IL 60603
312-714-6920

13