UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 13 CR 844 |
| v. | |
| HOWARD LEVENTHAL | Judge Andrea R. Wood |

### GOVERNMENT'S REPLY REGARDING MOTION
### TO REINSTATE SUPERVISED RELEASE

The UNITED STATES OF AMERICA, by its attorney, JOHN R. LAUSCH, JR.,

United States Attorney for the Northern District of Illinois, hereby submits its reply

regarding its motion to reinstate defendant Leventhal's supervised release.

## I.     This Court Has The Authority To Grant The Motion

Defendant Leventhal acknowledges in his response brief that this Court has

the jurisdiction and authority to grant the government's motion to reinstate his

supervised release: "As the government noted in its initial motion, a motion to

reconsider is an available remedy in a criminal case." R. 63 at 2 (Def's Br.).[1]

Leventhal is wrong, however, that the motion to reconsider is governed by

Federal Rules of Civil Procedure 59 or 60. *Id.* at 3-4. This is a criminal case involving

post-sentencing supervised release issues and the civil rules do not apply. *See United

States v. Segal*, 918 F.3d 898, 902-03 (7th Cir. 2019) (criminal rules generally apply

to sentencing-related issues). Rather, as set forth in the government's opening brief,

---

[1] The docket in this case is cited as "R. __," followed by the document number. Leventhal
captioned his brief a "Reply" but it is really a "Response" to the government's motion, while
this brief is the government's "Reply."

a motion to reconsider a substantive ruling by a district court in a criminal case is properly brought if filed within the permissible time for filing an appeal. *See* R. 46 at 2-3, *citing United States v. Healy*, 376 U.S. 75, 84 S.Ct. 553 (1964); *United States v. Rollins*, 606 F. 3d 500, 504 (7th Cir. 2010); *United States v. Dieter*, 429 U.S. 6, 97 S. Ct. 18 (1976) (a district court can properly reconsider its substantive orders regarding both law and fact in a criminal within the time for filing an appeal). Leventhal has cited no law to the contrary because there is none. His arguments regarding the civil rules simply do not apply.

## II.     The Government Has Not Waived Its Request

Next, Leventhal argues that the government waived its position that supervised release should be reinstated because some of the information relied upon in seeking that reinstatement was available before the government did not object to supervised release being terminated. R. 63 at 3-6. Even assuming that is true, that does not amount to a waiver. In fact, the government *did* object to Leventhal's initial petition for early termination precisely because of the information described in his response brief, but Leventhal lied to this Court in his second petition and thereby obtained the relief he sought.

Waiver occurs when a party knowingly and voluntarily agrees to give up its rights or fails to object to a condition despite knowing of it. As the Seventh Circuit succinctly described it in *United States v. Sumner*, 265 F.3d 532, 537 (7th Cir. 2001):

> Waiver is the intentional relinquishment or abandonment of a known right. *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). It differs from forfeiture, which is simply the failure to make a timely assertion of a right. *Id*. . . . A common

> distinction we draw between waiver and forfeiture is that waiver comes about intentionally whereas forfeiture occurs through neglect. *Id.*

*See also United States v. Gabriel*, 831 F.3d 811, 814 (7th Cir. 2016) (defendant waived objections to supervised release conditions where, after receiving advance notice of proposed conditions, defense said it had no objections to conditions); *United States v. Bloch*, 825 F.3d 862, 873–74 (7th Cir. 2016) (same, except for one express objection); *United States v. Lewis*, 823 F.3d 1075, 1082–83 (7th Cir. 2016) (same). However, waiver cannot occur when one party deceives or lies about salient facts and thereby induces another to take an action it would not have had it known the truth. But that is exactly what happened in this case—Leventhal lied to and deceived the Probation Officer and this Court in order to induce early termination of supervised release. That is a fraud on this Court, not "the intentional relinquishment or abandonment of a known right" by the government.

In fact, what happened in this case is the opposite of an actual waiver. The government certainly did not know or agree that Leventhal would engage in the violation of Wisconsin court orders of protection or the abuse and harassment of his former wife and daughter and others the moment supervised release was terminated. Nor did it fail to object to such conduct when it was aware of it. In fact, both the Probation Officer and government counsel *did* object to Leventhal's first petition for early termination *on those exact grounds*. Thus, on May 6, 2020, U.S. Probation Officer Nichols filed a report with this Court advising that "On May 2, 2020, the undersigned was informed by the Grafton, Wisconsin, Police Department that the

offender violated a Court Order by contacting his ex-wife via email and by mailing her a gift card." R. 12. The report further reflects that when admonished that this behavior was not acceptable, Leventhal promised the Probation Officer that he would reform his conduct and get mental health counselling to try and better cope with his adult daughter's restraining order against him:

> Mr. Leventhal admitted to contacting his ex-wife via email. Mr. Leventhal understands that this type of behavior is not acceptable. Mr. Leventhal's current situation and the specific behavior described above were focused on in detail. In response to this violation, short-term and long-term consequences of engaging in this type of behavior were discussed and Mr. Leventhal appears to understand the importance of being more mindful in the future. In addition, Mr. Leventhal has agreed to participate in mental health counseling to help better cope with being unable to see his adult daughter due to a restraining order against him. Mr. Leventhal has been strongly encouraged to strategize with his treatment provider a better way to handle this current situation and to come up with a plan of action so this can be used in the future to prevent new violation behavior.

*Id.* Based on these explicit assurances by Leventhal, USPO Nichols advised this Court that he was not recommending any action at that time but would monitor Leventhal's conduct in this regard and bring any future such conduct to this Court's attention. *Id.* This Court accepted that recommendation that same day. R. 13.[2]

On May 11, 2020, Leventhal filed a *pro se* petition for early termination of his supervised release pursuant to 18 U.S.C. § 3583(e)(1). R. 15. Government counsel consulted with Probation Officer Nichols and, based on his recommendation, objected to Leventhal's petition. R. 21. As the government specifically stated in its response,

---

[2] Subsequently, Leventhal made the same assurances to this Court in a status conference call on July 30, 2020. R. 33, 34.

"The government objects to Leventhal's request for early termination of his supervised release, for the same reason the Probation Officer did in his May 7 Special Report—Leventhal has not completed a year of his supervised release and has violated a court order in Wisconsin by contacting his ex-wife." *Id.* at 2-5. This Court denied Leventhal's petition. R. 33.

On November 4, 2020, Leventhal filed a renewed early termination motion. R. 35. The next day, this Court directed a response by the government. R. 38. Government counsel therefore again consulted with USPO Nichols and this time was informed that since Leventhal had not violated any conditions of supervised release since the May 2 email incident involving his former wife, USPO Nichols did not oppose early termination of his supervised release. Accordingly, on November 16, 2020 the government advised this Court that "after consultation with the United States Probation Department, (it) does not oppose defendant Howard Leventhal's renewed motion for early termination of his supervised release on its one-year anniversary date of December 11, 2020, pursuant to 18 U.S.C. § 3583(e)(1), which permits this Court to terminate a term of supervised release after the expiration of one year of supervision if satisfied that such action is warranted by the conduct of an offender and is in the interest of justice." R. 39. On December 3, 2020, this Court granted Leventhal's second petition for early termination. R. 41.

In this case, the government certainly did not knowingly agree that Leventhal would or could violate the Wisconsin orders of protection or engage in abusive behavior toward his former wife, daughter, and others when it advised this Court

that it did "not oppose . . . early termination" if the Court was "satisfied that such action is warranted by the conduct of an offender and is in the interest of justice." To the contrary—the government's non-opposition was based on USPO Nichols's advice that Leventhal had kept his promises the prior May to avoid unacceptable behavior regarding his former wife and daughter, the very opposite of knowingly waiving such compliance, let alone agreeing that Leventhal would immediately engage in conduct that would violate those conditions if early termination were granted.

The fact is that Leventhal lied in May 2020 and thereafter when he promised to abide by the Wisconsin orders of protection. The day after the termination order was entered Leventhal used another former wife to violate the order of protection his 20-year-old daughter had obtained in June 2019 by sending her an email threatening both her and her mother. R. 46 Ex. 5 (Email). Those lies clearly were intentional and premeditated. And they were exacerbated 10 days later when Leventhal filed his 134-page lawsuit against dozens of people, including his former wife, thereby again directly violating her order of protection—a lawsuit that clearly took many weeks if not months to prepare. *See* R. 42 Ex. A (Lawsuit). Those deceptions can scarcely be said to have been knowingly consented to by the government and therefore Leventhal's actions waived.

The essence of this case is that Leventhal lied directly to this Court's own expert agent, USPO Nichols, and this Court in order induce this Court to grant early termination of his supervised release so he could immediately begin his campaign of

abuse and harassment.[3] The remedy for those lies to this Court and its agent should be the reinstatement of Leventhal's supervised release, which this Court clearly has the power to order and is certainly in the interests of justice.

## III. Leventhal's Post-Termination Conduct Proves His Lies Were Intentional

The government's opening brief spelled out the abusive and harassing conduct Leventhal engaged in immediately after his supervised release was terminated in order to demonstrate that he carefully planned those attacks while still on supervised release and lying to this Court about his intentions. R. 46 at 12-15.

The government subsequently learned of additional acts of harassment by Leventhal and filed a supplemental motion describing some of them on February 22, 2021, including that Leventhal set up multiple web sites on December 29, 2020 containing the personal information of government officials and private parties. R. 62. Since then, the government has learned that the web hosting company will not remove the web sites without a court order.

In two recent telephonic status conference calls Leventhal went to great lengths to promise this Court he intends to turn over a new leaf by stopping all harassment of his former wife and other persons such as those he has sued in meritless lawsuits, including the one filed in the Circuit Court of Cook County on December 15, 2020. Leventhal once again swore to this Court that he has seen the

---

[3] As the Probation Office's website states, "The United States Probation Office is part of the United States Court for the Northern District of Illinois." Its Mission is "To create a safer community by providing the court and supervising authorities with pertinent facts, objective analysis and recommendations to assist in sentencing and supervising convicted offenders." http://www.ilnp.uscourts.gov/index.html.

error of his ways, realizes that he needs mental health treatment, and will stop the conduct that led to the filing of the motion to reinstate his supervised release. However, those assurances are again clearly false. Leventhal's response brief merely shrugs off the government's complaints about the harm these slanderous and vituperative websites pose to those named in them as "untimely." R. 63 at 7. He could, of course, remove them if he actually intended to abide by his recent assurances to this Court about changing his ways and reforming his behavior. That he has not done so despite the government's supplemental filing speaks volumes about his true intentions and reflects again his original fraud upon this Court.

## IV. Conclusion

For the foregoing reasons, the government again respectfully requests this Court to reconsider its December 3, 2020 order and to reinstate defendant Leventhal's supervised release.

Respectfully submitted,

JOHN R. LAUSCH, JR.
United States Attorney

By:  */s/ William R. Hogan, Jr.*
WILLIAM R. HOGAN, JR.
Assistant United States Attorney
219 South Dearborn Street, Room 500
Chicago, Illinois 60604