UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

UNITED STATES,

    Plaintiff,

vs.

HOWARD LEVENTHAL,

    Defendant

Case No.: 13-cr-844

JUDGE WOOD

FILED
7/21/2021
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

JG

# DEFENDANT'S MEMORANDUM AS TO RECENT MISCONDUCT BY THE ATTORNEY FOR THE GOVERNMENT

**NOW COMES DEFENDANT** *pro se* providing this memorandum as to a clearly false statement made to the court by the attorney for the government during status hearing on July 20, 2021 and a related series of acts of misconduct. In support, Defendant states as follows:

1. Defendant is compelled to provide the following information to the court to assist with its deliberations as to the pending motion by the Attorney for the Gov't to reinstate supervision in this matter; and further to help the court assess whether this same attorney should be allowed any further control or input over this matter.

2. During the telephonic status hearing which took place in this matter on July 20, 2021 beginning at 11am, Attorney William Hogan alleged on the record, in no uncertain terms, that the Defendant had registered an internet domain name in Hogan's personal name. This allegation is false and a product of the typical lackadaisical, imprecise defamatory style and comportment in which Hogan has conducted himself through numerous junctures and events in this matter, to Defendant's extreme and undue detriment.

JUDGE WOOD - 1

3. Attached as Exhibit 1 is the product of a "WHOIS" search of the type which can be performed at no cost by any Internet user, of the domain name WILLIAMHOGAN.COM. As can be confirmed independently by numerous alternate methods, this domain name was first registered in the year 2000, thirteen years before the undersigned had any contact with the criminal justice system and twenty years before any acquaintance with Hogan. Given Mr. Hogan's long history of misconduct, unethical behavior, employment termination, disbarment, and spewing falsehoods like this one[1], (see Exhibit 2) before any array of courts and judges unknowable, it should come as no surprise that more than a few of those who have fallen into Hogan's "gunsights" might want to raise public awareness about Hogan's misconduct as a caution for others exposed to Hogan's customary, law-blind, oppressive treatment.

**DECLARATION ATTACHED AS TO HOGAN'S PARTICIPATION IN CONSPIRACY TO FALSIFY WISCONSIN EXTRADITION**

4. Also attached is support (Exhibit 3) as to AUSA Hogan's role in fabricating and falsifying the "felony fugitive" warrant abused by both Hogan and the Ozaukee County District Attorney – to achieve the end purposes that Hogan so far has failed to produce in this court. The Wisconsin D.A. admits in this memorandum document which he publicly filed, that his own sworn statement asserting under oath that Leventhal committed some act in Wisconsin and then fled as a fugitive to Illinois – **<u>is false</u>**.

5. Hogan violated, at minimum, 18 USC § 1001 federal false statements and 18 U.S. Code § 1343 - Fraud by wire, radio, or television – through his participation in this conspiracy, which was done for the purpose of preserving Hogan's reprehensible and contemptible career, a personal purpose for which he enjoys no immunity. Hogan, as he has admitted before this court,

---

[1] https://www.chicagotribune.com/news/ct-xpm-1996-05-02-9605020024-story.html "U.S. FIRES TOP PROSECUTOR IN RUKN CASE."
JUDGE WOOD - 2

engaged the US Marshal Service using these false representations to arrange Leventhal's false arrest and did so while projecting extreme yet concealed contempt toward this court, during the telephonic status conference on January 8, 2021. Marshals were stationed by Hogan outside Leventhal's home during this status conference and when the court refused to jump through the hoops Hogan demanded on that day, Hogan commanded the Marshals to carry out Leventhal's false arrest.

6. Hogan participated in this criminal conspiracy motivated by his certain wish to plaster over his role in early termination of Leventhal's supervised release – over which he obviously was castigated by certain present and former co-defendants in *Leventhal v. Handeland et al*, the RICO Act lawsuit which Leventhal had no choice other than to abandon, to preserve the pitiful remains of his former life – precisely the outcome Hogan intended to produce – and then produced.

7. Mr. Hogan has proven in this case and over time that extraordinarily little of the lax, unfounded blather he asserts before the court can or should be taken at face value. The undersigned provides this evidence as illumination to help the court foresee the high potential for additional unbounded misconduct and unethical behavior before this court in this matter, should the court grant the Government's groundless motion to reinstate supervised release.

RESPECTFULLY SUBMITTED,
DEFENDANT pro se

_____
Howard Leventhal          Date: 7/21/2021
179 W. 21st St.
Oshkosh, WI 54902

JUDGE WOOD - 3

**EXHIBIT 1**




7/20/2021 — WHOIS search results

# GoDaddy

## Search the WHOIS Database

williamhogan.com [Search]

### WHOIS search results

Domain Name: WILLIAMHOGAN.COM
Registry Domain ID: 46244344_DOMAIN_COM-VRSN
Registrar WHOIS Server: whois.enom.com
Registrar URL: http://www.enomdomains.com
Updated Date: 2020-11-06T09:12:04Z
**Creation Date: 2000-12-05T17:47:44Z**
Registry Expiry Date: 2021-12-05T17:47:44Z
Registrar: eNom, LLC
Registrar IANA ID: 48
Registrar Abuse Contact Email:
Registrar Abuse Contact Phone:
Domain Status: clientTransferProhibited https://icann.org/epp#clientTransferProhibited
Name Server: NS1.AUTHORSGUILD.NET
Name Server: NS3.AUTHORSGUILD.NET
Name Server: NS4.AUTHORSGUILD.NET
DNSSEC: unsigned
URL of the ICANN Whois Inaccuracy Complaint Form: https://www.icann.org/wicf/
>>> Last update of whois database: 2021-07-20T16:41:52Z <<<
For more information on Whois status codes, please visit https://icann.org/epp
NOTICE: The expiration date displayed in this record is the date the registrar's sponsorship of the domain name registration in the registry is currently set to expire. This date does not necessarily reflect the expiration date of the domain name registrant's agreement with the sponsoring registrar. Users may consult the sponsoring registrar's Whois database to view the registrar's reported date of expiration for this registration.
TERMS OF USE: You are not authorized to access or query our Whois database through the use of electronic processes that are high-volume and automated except as reasonably necessary to register domain names or modify existing registrations; the Data in VeriSign Global Registry

Contact Us

https://www.godaddy.com/whois/results.aspx?checkAvail=1&domain=williamhogan.com  1/5

JUDGE WOOD - 4

**EXHIBIT 2**

Hogan's Termination and Disbarment History

JUDGE WOOD - 5

# U.S. FIRES TOP PROSECUTOR IN RUKN CASE

By **Matt O'Connor, Tribune Staff Writer**
CHICAGO TRIBUNE

MAY 2, 1996

After a lengthy internal investigation of its tainted prosecution of El Rukn street gang leaders in Chicago, the U.S. Justice Department has fired the lead attorney in the case, it was disclosed Wednesday.

Assistant U.S. Atty. William Hogan Jr., once hailed as the star prosecutor who convicted more than 50 Rukns and effectively dismantled the notorious street gang's leadership, later came under intensive judicial criticism for the way he did it.

He has been on a paid leave of $98,500 annually since the summer of 1993 while awaiting the outcome of the investigation by his superiors.

Hogan's lawyer, after learning the Tribune had been told of his client's dismissal by other sources, said Wednesday that Hogan will appeal the decision and will demand a public hearing that could continue to embarrass the U.S. attorney's office here.

Hogan, 44, a prosecutor for almost 14 years, has strenuously denied allegations of misconduct since they first exploded in hearings in federal court in late 1992, soon after the conclusion of a series of El Rukn trials.

Dozens of the defendants subsequently won new trials or negotiated lenient prison terms after several judges concluded prosecutors knowingly used perjured testimony and concealed drug use by key government witnesses who were former gang "generals."

Last summer, after a lengthy probe by two FBI agents, the Justice Department's Office of Professional Responsibility, which investigates allegations of wrongdoing by federal prosecutors, recommended that Hogan be fired. In an 800-page response and some 10,000 pages of exhibits, affidavits and transcripts, Hogan contested the findings.

Carl Stern, the Justice Department's spokesman in Washington, declined to comment Wednesday on Hogan's status. But other sources said David Margolis, an associate deputy attorney general, formally notified Hogan of his firing in a letter last month.

If Hogan follows the plan announced by his attorney to contest the action, he would be mounting a defense on two legal fronts.

In January, the Illinois Attorney Registration and Disciplinary Commission, which investigates complaints of misconduct by attorneys licensed in the state, also accused him of wrongdoing in the Rukn prosecution. If those charges are sustained, he could lose his license.

Hogan's lawyer, Shelly Kulwin, insisted Margolis, in his dismissal letter, misstated critical facts and made speculative conclusions in deciding Hogan knew of the drug use by two key witnesses and concealed it from the defense.

In the 1992 court hearings, Hogan's credibility was hurt when Lawrence Rosenthal, who was a government lawyer at the time but was not on the Rukn prosecution team, said he alerted Hogan to the positive drug tests by imprisoned El Rukn government witnesses in 1989, two years before Hogan claimed to have known about them.

Hogan hoped Rosenthal's credibility had been damaged when another federal prosecutor, Dean Polales, stepped forward last year and told the FBI he had almost the identical conversation with Rosenthal in 1989. That raised the suggestion that Rosenthal had told Polales, not Hogan, of the drug use by witnesses.

Margolis, in his letter rejected other allegations that imprisoned El Rukn government witnesses had sex or were passed drugs during visits with relatives in the U.S. attorney's office, Kulwin said.

Hogan will now take his case to the federal Merit System Protection Board, where federal employees can appeal their firings as a last resort, Kulwin said.

"Basically, he's been convicted in these hearings and in this opinion and in the media without ever having any trial at all," Kulwin said.

Despite the disclaimer, the Justice Department and four federal judges, including now-Chief Judge Marvin Aspen, have all reached the same conclusion: that Hogan covered up important evidence and the favors granted key witnesses. The judges ordered new trials in the cases they had presided over.

In addition, a federal appeals court panel last month ordered a fifth judge to reconsider whether other El Rukn defendants convicted in the case deserve new trials.

Copyright © 2021, Chicago Tribune

**EXHIBIT 3**

Ozaukee County District Attorney Adam Gerol's Publicly Filed Admission as to Falsified "Felony Fugitive" Warrant – a falsification devised by AUSA Hogan in conspiracy with Gerol

JUDGE WOOD - 6

FILED
04-20-2021
Ozaukee County, WI
Mary Lou Mueller CoCC
2021CF000016

| STATE OF WISCONSIN | CIRCUIT COURT | OZAUKEE COUNTY |
|---|---|---|

STATE OF WISCONSIN

        Plaintiff,

vs.

HOWARD E LEVENTHAL
DOB: 11/04/1956

        Defendant.

DA Case No.: 2021OZ000037
Court Case No.: 2021CF000016;
2020CM000172; 2019CM000312;
2019CM000302

**STATE'S RESPONSE TO CLAIMS REGARDING DEFECTS IN DEFENDANT'S EXTRADITION**

**Defect in the extradition.**

Mr. Leventhal's presence in the State of Wisconsin was obtained through Wis. Stats § 976.03, the Uniform Criminal Extradition Act. A defendant can be extradited to a requesting state if they are fugitives from justice or have committed acts in one state resulting in a crime in another. Wis. Stats §§ 976.03 (5), (6). The second alternative became part of the Act in 1970. State ex rel. Welch v. Hegge, 54 Wi.2d 482, 195 N.W.2d 669 (1972).

Here, the wrong box was checked in the submission for the Governor's Warrant. There are two alternatives on the form for soliciting the apprehension of a fugitive to face criminal charges in the requesting state:

☒ The defendant is a **fugitive** as he or she was personally present in the State of Wisconsin at the time the crime was committed.

☐ The defendant is a **non-fugitive** as he or she was not personally present in the State of Wisconsin at the time the crime was committed, but committed acts that resulted in a crime in Wisconsin.

It was the second box that should have been checked. That said, this mistake is not jurisdictional and the same outcome would have occurred had this box been checked correctly.

The place to challenge any irregularities in the extradition is in the asylum state. State ex rel. Foster v. Uttech, 31 Wis.2d 664, 143 N.W.2d 500 (1996). This is embodied in Wis. Stats § 976.03 (10), and in Illinois' 725 ILCS 225 (10). I do not know if this claimed defect was litigated in Illinois when Mr. Leventhal was apprehended. Had it been, it should have been pursued through the Illinois courts.

Had the positions been reversed, and the matter raised in Wisconsin following a similar defect in Illinois' paperwork, there likely wouldn't have been an issue. The issue was posited, rhetorically, in State ex rel. Welch v. Hegge, 54 Wis.2d 482, 488, 195 N.W.2d 669 (1972):

> While the question of whether petitioner is a 'fugitive from justice' is not raised by petitioner or the state, for the sake of completeness, we note the applicability of the revised uniform extradition act which became effective in Wisconsin on July 1, 1970, about three months before the issuance of the governor's warrant in this case. In the absence of express statutory provision, it could be argued that extradition lies only for 'fugitives from justice,' and one who acts in one state, thereby committing a crime in another state, is not to be considered as a 'fugitive from justice' of the state in which the crime took place. 8 However, the revised uniform extradition act, in sec. 976.03(6), Stats., specifically provides:
>
> 'Extradition of persons charged with having committed a crime in the demanding state by acts done in this or some other state. The governor of this state may also surrender, on demand of the executive authority of any other state, any person in this state charged in such other state as provided in sub. (3) with committing an act in this state, or in a third state, intentionally resulting in a crime in the state whose executive authority is making the demand; and the provisions of this section not otherwise inconsistent shall apply to such cases, notwithstanding that the accused was not in that state at the time of the commission of the crime, and has not fled therefrom.' (Emphasis supplied.)
>
> Because (1) the sole issue raised by petition for writ of habeas corpus was that of 'mistaken identity;' (2) alibi or questions as to guilt or innocence were beyond the scope of inquiry in this habeas corpus proceeding; and (3) sec. 976.03(6), Stats. authorizes extradition for acts in this state, intentionally resulting in a crime in the demanding state, the trial court properly denied habeas corpus.

Hegge, 54 Wis.2d at 488-9. This concept was later discussed in State v. Ritter, 74 Wis.2d 227, 246 N.W.2d 552 (1976) where the court said:

> … Sec. 976.03(10) provides that a person arrested shall be taken forthwith before a judge of a court of record in this state. The judge shall inform him of the demand made for his surrender and of the crime with which he is charged, and of his right to demand and procure legal counsel.
>
> If the prisoner or his counsel desires to test the legality of the arrest, the judge shall fix a reasonable time within which an application for a writ of habeas corpus may be made. Habeas corpus tests the legality of the detention under the governor's warrant of the asylum state.
>
> The cases generally recognize that a court in a habeas corpus proceeding testing the legality of the detention may examine into the following four questions:
>
> (1) Are the extradition papers in order and properly authenticated?
>
> (2) Was a crime substantially charged under the law of the demanding state?
>
> (3) Is the petitioner the person named in the extradition papers (identity)?

>		(4) Was the petitioner present in the demanding state at the time of the alleged offense (fugitive status)?
>
>		Commonwealth ex rel. McGowan v. Aytch (1975), 233 Pa.Super. 66, 334 A.2d 750. Note, Extradition Habeas Corpus 74 Yale L.J. 78 (1964).
>
>	The first and second questions are questions of law. The third and fourth questions are questions of fact. Brode v. Power (1974), 31 Conn.Sup. 412, 332 A.2d 376. The second question--namely, whether a crime is charged--is the issue presented in this case. Such a challenge generally goes to the validity of the governor's warrant and not to procedural irregularities in the trial court of a sister state. State ex rel. Welch v. Hegge (1972), 54 Wis.2d 482, 487, 195 N.W.2d 669.
>
>	Detention under a governor's warrant is only prima facie valid, and the underlying documents may be examined to see if they can serve as a valid basis for a governor's rendition warrant. State ex rel. Foster v. Uttech (1966), 31 Wis.2d 664, 671, 143 N.W.2d 500. The face of the documents in this case does not reveal the possibility that no crime was charged. However, the courts of the asylum state may take judicial notice of statute of the demanding state to determine whether a crime has been charged.

Ritter, 74 Wis.2d at 231-232.

Element (4) is a concept referred to as "Fugitivity." National Manual on Extradition and Interstate Rendition, National Association of Extradition Officials, June 2018, p.72. The Manual clearly states that the concept has subsequently been expanded to include individuals who were never in the demanding state, but committed acts in the asylum state that resulted in crimes in the demanding state. While the Manual advises that the demand should reference which theory the defendant is being demanded under, it cites to In Re Vasquez, 705 N.E. 606, 428 Mass. 842 (1999) for the proposition that where a governor's warrant falsely stated that a defendant was a fugitive, the error was cured by the presence of supporting papers that clarified this fact. National Manual at 73.

Vasquez is instructive. In Vasquez the State of Oregon requested Massachusetts arrest and return a man to answer a charge of criminal nonsupport. He argued that the Oregon Governor's Warrant was invalid because it :

>	recites that he is a "fugitive from the justice of [Oregon] and has taken refuge in this Commonwealth." It is undisputed that the petitioner has never been in Oregon and, therefore, that the statement that he is a fugitive from that State cannot be accurate.

Vasquez, 705 N.E.2d at 607. Rejecting this contention, the Supreme Court of Massachusetts wrote:

>	… Moreover, even if he had made the claim below, it would afford him no relief because the technical defect in the warrant is cured by the supporting papers supplied by the Governor of Oregon, which allege that the petitioner, "while outside the boundaries of [Oregon] committed an act intentionally resulting in said crime in [Oregon]." See, e.g., Harris, petitioner, 309 Mass. 180, 183, 34 N.E.2d 504 (1941); Grubbs v. State, 363 So.2d 121, 122 (Ala.Crim.App.1978) (where rendition warrant defective, court may look to supporting papers); Harrison v. State, 38 Ala.App. 60, 64, 77 So.2d 384 (1954); Papas v.

    Brown, 88 Ill.App.3d 471, 476, 43 Ill.Dec. 568, 410 N.E.2d 568 (1980); Clayton v. Wichael, 258 Iowa 1037 1042, 141 N.W.2d 538 (1966) (statement in Governor's warrant that defendant was fugitive "must be disregarded as surplusage" and resulted in no prejudice to defendant extradited under statute similar to statute employed in instant case). The allegation in the supporting papers provides a sufficient basis for extradition under G.L. c. 276, § 13, which states: "The governor may also surrender, on demand of the executive authority of any other state, any person in this commonwealth charged in such other state ... with committing an act in this commonwealth, or in a third state, intentionally resulting in a crime in ... the demanding state." The provisions of § 13 are incorporated by reference into G.L. c. 209D, § 8-801(c), under which the petitioner is being extradited. 1 Thus, the arrest and restraint of the petitioner do not violate G.L. c. 209D, § 8-801. 2 Nor do they violate any other statutory provisions pertinent to [428 Mass. 845] his extradition. General Laws c. 276, § 14, requires that the request for extradition from the demanding State be in writing and allege one of several circumstances, including that the person sought to be extradited "committed in this commonwealth or in a third state an act intentionally resulting in a crime in the demanding state." The requisition supplied by the Governor of Oregon certifies in writing that "the accused while outside the boundaries of this State committed an act intentionally resulting in said crime in this State." Thus, both requirements of § 14 have been fulfilled.

Vasquez, at 608. Here, while the wrong box may have been checked, the criminal complaint which accompanied it established the proper legal basis for Mr. Leventhal's extradition. As stated in the criminal complaint:

    The envelope contained the defendant's return address and was postmarked on August 26, 2019 in Schaumburg, Illinois where the defendant resides. (p.4)

    And:

    Despite the injunction, and Leventhal living out of state, Leventhal was able to recently discover that AJH was employed at Noodles, Inc. in the Village of Grafton. Leventhal then send an email to the Grafton location's email address which was addressed to MJH. (p.4)

Had this issue been raised in Illinois, Leventhal would still have been extradited pursuant to 725 ILCS 225/6:

    (725 ILCS 225/6) (from Ch. 60, par. 23)
    Sec. 6. Extradition of persons not present in demanding state at time of commission of crime.
    The Governor of this State may also surrender, on demand of the Executive Authority of any other state, any person in this State charged in such other state in the manner provided in Section 3 with committing an act in this State, or in a third state, intentionally resulting in a crime in the state whose Executive Authority is making the demand.
(Source: Laws 1955, p. 1982.)

A scrivener's error does not undermine an otherwise lawful basis for the extradition. Even had the claim been raised in Illinois, the State would have been given the opportunity to cure the problem and check

the correct box. National Manual, p. 75. The National Manual cites Matter of Gruber v. Morgenthau, 273 A.D.2d 135, 709 N.Y.S.2d 184 (N.Y. App. Div. 2000):

> … the corrected papers clearly sought discretionary extradition of a person not present in the demanding State at the time of the crime pursuant to CPL 570.16 and established that petitioner was charged with a crime in Oregon which would constitute a crime in New York and that he was the person named in the request for extradition (see, Michigan v Doran, 439 US 282; People v Hinton, 40 NY2d 345; compare, People ex rel. Bernheim v Warden, 95 Misc 2d 577).

Any defects in the production of the defendant for trial are not jurisdictional. Legal defects in the process of returning a fugitive will not deprive the demanding state of jurisdiction or otherwise affect its ability to prosecute the defendant.

**Request for other information.**

Mr. Leventhal raises another claim and seeks relief regarding my failure to respond to his 'freedom of information act' request. I'll confess that among his many filings I likely missed this. Despite not being a statutory Open Records Request, I still would have responded. My answer would have been that I have never received a contribution, either financial or 'in kind', for any of my elections or campaigns. I have never received a contribution from any person, organization or advocacy group and have self-funded all of my political activities.

**Efforts to influence the jury pool.**

The court granted my motion and has now limited Mr. Leventhal's efforts to solicit reporters and media to his plight. In retrospect though, I am asking the court to modify its order prohibiting him from talking to anyone else about the case. I am asking the court to prohibit him from telling anyone the victim's names, contact information, or anything that would lead to that information.

Date Signed: 04/20/21
Electronically Signed By:
Adam Y. Gerol
District Attorney
State Bar #: 1012502